## IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF MARYLAND
### (Southern Division)

| | |
|---|---|
| **KEVIN AND JEIMY FLOURNOY**<br>6845 Mountain Lake Pl<br>Capitol Heights MD 20743<br><br>*On their behalf and on behalf of three*<br>*classes of similarly situated persons*<br><br>Named Plaintiffs,<br><br>v.<br><br>**RUSHMORE LOAN MANAGEMENT**<br>**SERVICES LLC**<br>2711 Centerville Rd.<br>Wilmington, DE 19808<br>Serve on:<br>CSC-Lawyers Incorporating Service<br>Company<br>7 St. Paul Street, Suite 820<br>Baltimore, MD 21202<br><br>**U.S. BANK NATIONAL ASSOCIATION**<br>**AS TRUSTEE FOR RMAC TRUST,**<br>**SERIES 2016-CTT**<br>6011 Connection Drive, 5th Floor<br>Irving, TX 75039<br>Serve on:<br>The Corporation Trust, Inc.<br>2405 York Road, Suite 201<br>Lutherville-Timonium, MD 21093<br><br>Defendants. | Case No. _____<br><br><br><br><br><br><br>JURY TRIAL DEMANDED |

## CLASS ACTION COMPLAINT

Plaintiffs Kevin and Jeimy Flournoy ("Mr. and Mrs. Flournoy" or "Named Plaintiffs"),

through their undersigned counsel file this Class Action Complaint pursuant to FED. R. CIV. P. 23,

on their individual behalf and on behalf of three classes of similar persons against Defendants

1

Rushmore Loan Management Services, LLC ("Rushmore") and U.S. Bank National Association, As Trustee For The RMAC Trust, Series 2016-CTT ("RMAC")  and say in support:

I.    **INTRODUCTION**

1.        In an unfair and deceptive scheme, starting in 2016, Rushmore took advantage of Mr. and Mrs. Flournoy when they experienced loss of employment and fell behind on their mortgage. While Mr. and Mrs. Flournoy were attempting in good faith to work with Rushmore to bring their mortgage account current, Rushmore deceptively added dubious "corporate advances" and other fees as the loan was approaching current status. Despite numerous demands, Rushmore would not identify to Mr. and Mrs. Flournoy the purpose of the corporate advances imposed against their mortgage account with RMAC.

2.        In addition to the suspect corporate charges imposed on their account, Rushmore constantly provided Mr. and Mrs. Flournoy conflicting, monthly statements, blamed Mr. and Mrs. Flournoy for paying the wrong sums at the improper time, filed an unlawful foreclosure action, then charged and collected from Mr. and Mrs. Flournoy fees that were purportedly based on the unlawful foreclosure action. Further, Rushmore disguised the attorney's fees related to the foreclosure as "recoverable corporate advances" or just "corporate advances."

3.        As related to the Class allegations, Rushmore knowingly and improperly imposed and collected certain loan charges—i.e. property inspection fees—against the mortgage loan accounts of Mr. and Mrs. Flournoy and the putative class members they represent as part of its regular and routine mortgage servicing practices in the State of Maryland. These fees are expressly barred by Maryland law which governs each mortgage contract of the Plaintiffs and putative class members.

2

4.      As a result, Rushmore's actions have unlawfully and knowingly infected Mr. and Mrs. Flournoy's and the putative class members' mortgage accounts by wrongfully demanding costs it is not entitled to collect.

5.      Since these unlawful fees are also included in payoff statements sent by Rushmore, the payoff demands sent by Rushmore to Mr. and Mrs. Flournoy and certain of the putative class members are not accurate.  But Rushmore is under a duty at law to provide borrowers with accurate payoff statements.  15 U.S.C.A. § 1639g; 12 C.F.R. § 1026.36(c)(3); MD. CODE REGS. 09.03.06.13.  Notwithstanding these duties Rushmore has (i) used false, deceptive, or misleading representations or otherwise has used unfair or unconscionable means in connection with the collection of the FDCPA Class Members and the named Plaintiffs' mortgage debts through payoff statements which contain sums not lawfully dur under Maryland law.

6.      Maryland law specifically provides that "a lender may not impose a lender's inspection fee in connection with a loan secured by residential real property."  COM. LAW § 12-121(b). *See also Taylor v. Friedman*, 344 Md. 572, 584 (1997)("For the foregoing reasons we conclude that the legislative history does not so clearly demonstrate a purpose to limit the prohibition of § 12–121 to closing costs as to override the plain language of the statute").  In this case as the assignee of maker of the loans of the Named Plaintiffs and putative class members, RMAC now stands in the shoes of the maker of the lender and and Rushmore is its authorized agent to act on its behalf.

7.      Under Maryland law the inspection fees charged by Rushmore to the mortgage accounts of Named Plaintiffs and the putative class members' constitute "interest" as that

term is defined in COM. LAW § 12-101(e) and therefore also constitutes "usury" as that term is defined in COM. LAW § 12-101(k).

8.    The Office of the Commissioner of Financial Regulation ("OCFR"), as the agency specifically authorized to enforce and regulate Maryland's mortgage lending laws, is entitled to deference for its interpretation of those laws. *Comm'r of Fin. Regulation v. Brown, Brown, & Brown, P.C.*, 144 A.3d 666, 675 (2016).  Over the course of the former and current administration, OCFR's analysis of the core issue has not wavered and supports the position advanced by Mr. and Mrs. Flournoy in this action (i.e. that RMAC as the successor assignee stands in the shoes of its assignor(s) and Rushmore as RMAC's authorized agent may not impose inspection fees pursuant to COM. LAW § 12-121) as evidence as follows:

9.   as follows:

    a.   OCFR issued an Industry Advisory on January 7, 2014 informing its licensees, including Rushmore, that it was not permitted to impose inspection fees on mortgage borrowers.

    b.   On April 20, 2017 the OCFR issued a Summary Cease and Desist Order to Ocwen Loan Servicing LLC ("Ocwen") and its affiliates on various issues including Ocwen's unfair and deceptive practice, like the practices of Rushmore subject to this action, which improperly assessed inspection fees against the accounts of borrowers in violation of COM. LAW § 12-121, including accounts of borrowers owned by others.  *See* Ocwen C&D Order at ¶¶ 79-83.  Ocwen recently agreed, on February 23, 2018, to a resolution of the OCFR C&D Order and agreed to reimburse borrowers for the improper assessment and collection of inspection fees

by: (i) cash refunds for fees paid, (ii) crediting accounts where the fee was assessed but not paid, and (iii) refunding interest incurred when Ocwen capitalized the illegal inspection fees onto borrowers' accounts as part of a modification that increased the unpaid principal balance. *See* Ocwen Settlement Agreement at ¶ 26 (available at https://www.dllr.state.md.us/finance/consumers/pdf/ocwencd.pdf).

10.     On May 14, 2018, the Consumer Protection Division in the Office of the Attorney General for the State of Maryland ("CPD") agreed to an Assurance of Discontinuance with Nationstar Mortgage LLC ("Nationstar Assurance"). In the Nationstar Assurance CPD found that the mortgage servicer had violated the bar to the assessment of inspection fees in COM. LAW. § 12-121 and such violations constituted violations of the Maryland Consumer Protection Act, COM. LAW. § 13-101, *et seq.*

11.     Finally, as a licensed Maryland mortgage servicer/lender, Rushmore knowingly agreed to "a duty of good faith and fair dealing in communications, transactions, and course of dealings with a borrower in connection with the advertisement, solicitation, making, servicing, purchase, or sale of any mortgage loan." MD. CODE REGS. 09.03.06.20.

12.     Rushmore has proximately caused damages and losses to the Plaintiffs and the class members by assessing and demanding sums from Mr. and Mrs. Flournoy and the putative class members which are not lawfully due. Also, Rushmore has been unjustly enriched and it should not be permitted to retain the benefit of its illegal activities. Finally, Mr. and Mrs. Flournoy and the putative class members are also entitled to statutory damages.

II.     THE PARTIES

13.    Mr. and Mrs. Flournoy are residents of Capitol Heights, Maryland in Prince George's County.  Their loan subject to these proceedings is a consumer loan. It is a loan that was used primarily for personal, family or household purposes.

14.    Defendant Rushmore Loan Management Services LLC ("Rushmore") is Delaware Limited Liability Company that is registered to do business in Maryland and is licensed as a mortgage lender/servicer by the OCFR. Rushmore also regularly conducts business in Maryland and Prince George's County, Maryland.

15.    Rushmore is a "debt collector" as defined by the FDCPA at 15 U.S.C. § 1692a(6).

16.    U.S. Bank National Association, As Trustee for The RMAC Trust, Series 2016-CTT ("RMAC") is a trust that was created for the purpose of acquiring defaulted mortgage loans.  U.S. Bank serves as its named trustee but has no control of the day to day activities of RMAC which is instead controlled by another on behalf of a group of investors for distressed, mortgage assets.

## III. JURISDICTION AND VENUE

17.    Declaratory and injunctive relief are available pursuant to 28 U.S.C.A. §§ 2201-2202, CTS. & JUD. PROC. § 3-401, *et seq.,* and Fed. R. Civ. P. 23(b)(2).

18.    Venue in this Court is proper in that the Defendants transact business within Prince George's County in relation to Prince George's County residents as part of their debt collection/mortgage servicing practices and includes conduct complained of which occurred in Prince George's County, Maryland.

19.    This Court has jurisdiction of this matter based upon (i) federal question jurisdiction (28 U.S.C. § 1331) and supplemental jurisdiction (28 U.S.C. § 1367(a)).

### III.    FACTS RELATED TO MR. AND MRS. FLOURNOY'S INDIVIDUAL CLAIMS

20.    On or about February 1, 2016, the servicing rights of Mr. and Mrs. Flournoy's mortgage were transferred to Rushmore. At that time, Mr. and Mrs. Flournoy's mortgage loan was already in default at that time due to loss of employment income.

21.    On or about March 7, 2016, ownership of the Flournoy Mortgage was transferred from Bank of America to RMAC. Mr. and Mrs. Flournoy's mortgage loan at that time was already in default due to loss of employment income.

22.    In March of 2016, Mr. and Mrs. Flournoy's regular monthly payment was $989.40.

23.    On May 12, 2016, Rushmore sent Mr. and Mrs. Flournoy a letter notifying them that their mortgage was in default and offering a reinstatement payment plan. The letter stated that $10,963.02 was needed to reinstate the mortgage, and "This amount includes all delinquent payments, late charges, foreclosure fees, attorney fees and costs, real property taxes, property insurance premiums, and valid liens against the property that we have paid to protect our interest in your property, and other expenses that we have actually paid to protect our interest in your property, which is the collateral for your loan." The letter concealed all details of how much of the $10,963.02 was past-due principal and interest, and how much was the various fees and costs.

24.    Mr. and Mrs. Flournoy received a similar letter dated February 9, 2017, except the amount to reinstate rose to $24,013.82. The February 9, 2017 letter included the same language about the amount to reinstate including fees and costs, and the letter again concealed how much of the $24,013.24 was past-due principal and interest, and how much was the various fees and costs. The $24,013.24 statement shocked Mr. and Mrs. Flournoy

7

because the January 2017 mortgage statement stated that only $13,029.63 was due, and the February 2017 mortgage statement stated that only $13,746.50 was due.

25.     In or around February of 2017, Mr. and Mrs. Flournoy's household income increased and they asked Rushmore for assistance in redeeming a current status on their mortgage.

26.     On February 9, 2017, Rushmore offered Mr. and Mrs. Flournoy a repayment plan that Mr. and Mrs. Flournoy relied upon and signed the same day. Rushmore also counter-signed the repayment plan on February 9, 2017. This repayment plan stated that $24,013.82 was owed, even though the January 2017 mortgage statement stated that only $13,029.63 was due, and the February 2017 mortgage statement stated that only $13,746.50 was due.

27.     Even though Mr. and Mrs. Flournoy received two mortgage statements from Rushmore in February of 2017 that varied by more than $10,000, in an effort to mitigate the situation, Mr. and Mrs. Flournoy continued to try and work with Rushmore to bring their account current to the best of their ability and made payments to Rushmore to demonstrate their reliance to its representations to them.

28.     Per the February 2017 repayment plan, Mr. and Mrs. Flournoy made a $3,000 down payment on February 24, 2017 and paid an additional $1,752 on March 31, 2017.

29.     Mr. and Mrs. Flournoy continued to make payments pursuant to Rushmore's repayment plan in further reliance to its representations to them, but based on Rushmore's pattern of churning unlawful and otherwise improper fees to the Flournoy's account, Mr. and Mrs. Flournoy struggled to bring their mortgage account current.

30.     Due to frustrations with Rushmore's inconsistent billing and phantom fees, and the fact that Rushmore accused Mr. and Mrs. Flournoy of defaulting on their payment plan,

8

Mrs. Flournoy filed complaints with the Better Business Bureau (BBB) and Consumer Financial Protection Bureau ("CFPB") on or about May 31, 2017.

31.     Rushmore responded to the BBB and CFPB complaints in a June 9, 2017 letter, which it intended the Flournoys to rely as well as the CFPB, where it completely ignored the inconsistent billing issues and only recited what it purported to be the Flournoys payment history and repayment plans. The only part of the response letter that seemed like it may have addressed the excessive fees and inconsistent billing issues is where it stated: "On May 25, 2017, Rushmore sent you a letter advising that the investor had agreed to reinstate the Repayment Plan, However, the foreclosure process had resumed and additional fees had been added to the loan." Not only did the June 9, 2017 response letter fail to mention how much those foreclosure fees were, it also failed to state the basis for how these were calculated and from where they were authorized to be imposed.

32.      Even though Rushmore refused to inform Mr. and Mrs. Flournoy of any specifics relating to recoverable corporate advances and foreclosure fees and continued to conceal that information from Mr. & Mrs. Flournoy, based on Rushmore's June 9, 2017 response letter, on information and belief, a significant portion of recoverable corporate advances is actually disguised attorney's fees that were not reasonably imposed on Mr. & Mrs. Flourney's account.

33.     Attached to the June 9, 2017 response letter was the May 25, 2017 unsigned repayment plan which stated $5,204.82 in "corporate advances."

34.     Also in Rushmore's June 9, 2017 BBB and CFBP response, Rushmore stated that "Rushmore resumed the foreclosure proceedings which resulted in additional foreclosure fees." Upon information and belief, Rushmore deceptively disguised the foreclosure "fees"

and related attorney's fees as "recoverable corporate advances" and "corporate advances" on their statements.

35.    Even though Rushmore did initiate foreclosure proceedings against the Plaintiffs in November of 2016, those proceedings cannot justify the $7,069.78 in "recoverable corporate advances" claimed in Mr. and Mrs. Flournoy's July 2017 mortgage statement (and many other mortgage statements). The relevant foreclosure case had little or no activity.

36.    In fact, Rushmore had no right to commence the November 2016 foreclosure case since it had not exhausted all loss mitigation options available to Mr. & Mrs. Flournoy before commencing the action and under Federal and State law it therefore had no right to commence the case and therefore impose on the Flournoy's mortgage account with attorney fees.

37.    Rushmore's statement in its June 9, 2017 BBB and CFBP response that it "resumed the foreclosure proceedings" was also untrue because Rushmore never took any further action in it's foreclosure case against Mr. and Mrs. Flournoy after January 23, 2017, further supporting Plaintiffs' contention that the attorneys' fees disguised as recoverable corporate advances are excessive, unearned, unreasonable, and unlawful.

38.    On October 11, 2017, Mr. and Mrs. Flournoy received a statement from Rushmore stating that they owed $1,433.74 on their mortgage account. Because Mr. and Mrs. Flournoy made a payment of $1,963.00 only days prior, they thought that they had finally caught up with their mortgage. Shortly thereafter, Mr. and Mrs. Flournoy made a payment of $720 which at the time was their "regular" monthly payment amount (of principal and interest). One month later, on November 9, 2017, Mr. and Mrs. Flournoy received a

statement from Rushmore stating that they owed $8,503.52 to "reinstate" the mortgage account. According to the statement, $7,069.78 of the reinstatement was attributable to "Recoverable Advances." The November 9, 2017 statement devasted both plaintiffs and caused them frustration, and anger, and that despite their best efforts Rushmore was simply going to churn its accounting of their loan to impose more penalties and fees on their account.

39.     In 2017, even though their regular monthly payment was less than a thousand dollars, Mr. and Mrs. Flournoy made monthly payments of $1,752 and $1,963 pursuant to two different Rushmore payment plans. On February 24, 2017 Mr. and Mrs. Flournoy paid $3,000 as a "down payment" on one payment plan, then on May 30, 2017, Mr. and Mrs. Flournoy paid another $3,000 for another "down payment" on the next payment plan. Mr. and Mrs. Flournoy struggled to make these extra payments, but they trusted that Rushmore was dealing with them in good faith. In October of 2017, with Mr. and Mrs. Flournoy saw that they owed under $2,000, they believed that all their hard work was paying off, only to be crushed by another large, unexplained, and unlawful "fee" which increased their November 2017 payment to a staggering $8,503.52.

40.     On January 12, 2018, Mr. and Mrs. Flournoy sent a payment of $1,706.27 to Rushmore. That payment was returned by Rushmore.

41.     After January 12, 2018, Mr. and Mrs. Flournoy received a statement dated January 11, 2018 from Rushmore stating that $3,685.07 was due by February 1, 2019. In reliance to the representation, Mr. and Mrs. Flournoy paid $3,685.07 on February 1, 2019, but that payment was returned by Rushmore.

11

42.     On or about January 31, 2018, in an effort to utilize the protections afforded to consumers by Congress, Mr. and Mrs. Flournoy wrote to Rushmore pursuant to 12 CFR §1026.36(c)(3) requesting a payoff statement. Included in this request, Mr. and Mrs. Flournoy also requested an explanation of the $7,069.78 of "corporate advances" Rushmore claimed was due from them.

43.     Rushmore received that correspondence by certified mail at the address it designated to Mr. and Mrs. Flournoy and other borrowers to receive such correspondence.

44.     On or about February 12, 2018, Rushmore provided an incomplete response to Mr. and Mrs. Flournoy's January 31, 2018 correspondence indicating that it had not performed a reasonable investigation. Rushmore did not address the "corporate advances" at all in their responses.  Further, the February 12, 2018 response letter represented a right to collect from Mr. & Mrs. Flournoy the following fees:

        Recoverable Corporate Advances: 85.00

        Estimated Fcl Fee: 750.00

        Estimated Fcl Cost: 425.00

45.     The sums sought in the previous paragraph were not authorized fees and charges to Mr. and Mrs. Flournoy's mortgage account by Rushmore.  Further, these fees included $85.00 in property inspection fees imposed by Rushmore in violation Maryland law but Rushmore labeled those fees as "recoverable corporate advances."

46.     Upon information and belief based on the foregoing and the inconsistent statements provided by Rushmore to Mr. and Mrs. Flournoy, Rushmore has charged and represented to Mr. and Mrs. Flournoy that they owe for expenses and costs that Rushmore never incurred, and further, Rushmore inflated the costs that Rushmore actually did incur.

12

47.     On February 23, 2018, Mr. and Mrs. Flournoy called Rushmore in an attempt to bring their account current. A Rushmore agent finally accepted a payment of $3,807.66 to bring the Flournoys' account current.  Included in this payment were sums Rushmore allocated to property inspection fees which it was not entitled to impose or collect under Maryland law.

48.     Rushmore is the current mortgage servicer for Mr. and Mrs. Flournoy's mortgage loan which is owned by RMAC.  Rushmore became the mortgage servicer of Mr. and Mrs. Flournoy's loan on or about February 1, 2016 was the loan was in default.  As the authorized servicer for RMAC, Rushmore acts consistent with its agreements with other mortgage loan owners in all respects as it did with Mr. and Mrs. Flournoy.

49.     Rushmore's February 12, 2018 response to Mr. and Mrs. Flournoy's  January 31, 2018 payoff request included a $85.00 fee for "Recoverable Corporate Advances." Mr. and Mrs. Flournoy were confused and concerned because they saw that fee total thousands of dollars before, and they don't know how much of it they paid, nor what the fee was for.

50.     On April 6, 2018, Mr. and Mrs. Flournoy send a Request for Information pursuant to 12 CFR § 1026.36(c)(3), which asked what the $85.00 property preservation fee was for. Mr. and Mrs. Flournoy's attached a mortgage statement from January 20, 2017 which had a $85.00 fee for "Prop Preservation," and the Request for Information asked whether they have to pay property preservation fees.

51.     Pursuant to 12 C.F.R. § 1024.36(d), Rushmore was obligated to provide a written response to Mr. and Mrs. Flournoy's April 6, 2018 Information Request within 30 business days, or May 7, 2018.

52.     On May 17, 2018, Rushmore sent an untimely response to Mr. and Mrs. Flournoy's
April 6, 2018 Request for Information, which stated that the $85.00 corporate advance "is
a processing fee for property registration because the account was in foreclosure."
Rushmore attached a copy of an invoice from Safeguard Properties, a company that has a
contract with Rushmore to provide inspection services upon Rushmore's request.

53.     Upon Rushmore's request, Safeguard Properties inspects properties and follows a
script provided by Rushmore, reporting back to Rushmore information like grass length,
yard debris, and other information reflecting the general condition of the property.

54.     In addition to the January 20, 2017 mortgage statement that clearly states an $85.00
was for "Prop Preservation," Mr. and Mrs. Flournoy also have a June 6, 2017 Customer
Account Activity Statement that includes at least 16 "property preservation" fees that range
from $1.50 to $90.00. Each of these fees is a property inspection fee charged in violation
of Maryland law.

55.     Mr. and Mrs. Flournoy's mortgage account is not satisfied.

                    CLASS ALLEGATIONS

56.     This action is properly brought on behalf of a **State Law Class** under FED. R. CIV.
P. 23. Named Plaintiffs propose the **State Law Class** be defined as follows:

> Those persons in the State of Maryland for whom Rushmore has acted as a
> mortgage servicer on behalf of another, including RMAC, within the three
> years before the commencement of this action, and has charged their
> mortgage accounts with property inspection fees and costs.

57.     This action is also properly brought on behalf of a **FDCPA Class** under FED. R.
CIV. P. 23. Named Plaintiffs propose the **FDCPA Class** be defined as follows:

Those persons in the State of Maryland whom Rushmore (on its behalf and on behalf of RMAC and others) (i) acquired the mortgage servicing when the loan was in default and (ii) provided a Payoff Statement which sought to collect directly or indirectly property inspection fees in the one year before the commencement of this action.

58.        This action is also properly brought on behalf of a **Usury Class** under FED. R. CIV.

P. 23. Named Plaintiffs propose the **Usury Class** be defined as follows:

Those persons in the State of Maryland (i) for whom Rushmore has (i) acted as a mortgage servicer on its behalf and on behalf of RMAC and others and others, and (ii) has charged their mortgage loan accounts with property inspection fees and costs and (iii) the mortgage loan accounts had not been satisfied more than six months before the commencement of this action.

59.        The members of the **State Law Class**, **FDCPA Class, and Usury Class** are capable of being identified without difficult managerial or administrative problems.  Rushmore tracks all information about correspondence sent to borrowers electronically and is able to identify particular categories of borrowers from its electronic systems.  In addition, RMAC and other mortgage owners also tracks certain records related to borrowers electronically and is able to identify particular categories of borrowers from its electronic systems. RMAC and other mortgage owners also require Rushmore (and Rushmore utilizes) standard forms and procedures related to the assessment of property preservation expenses.

60.        The **State Law Class**, **FDCPA Class, and Usury Class** members are sufficiently numerous that individual joinder of all members is impractical.  According to public records, Rushmore has reported to the Office of the Commissioner of Financial Regulation that it is the servicer for hundreds of mortgage loans throughout the State of Maryland in the last three years preceding the commencement of this action.

61.    There are questions of law and fact common to the **State Law Class**, **FDCPA Class, and Usury Class** which predominate over any questions affecting only individual members of the **State Law Class**, **FDCPA Class, and Usury Class** and, in fact, the wrongs alleged against Rushmore by the **State Law Class**, **FDCPA Class, and Usury Class** members and the remedies sought by **State Law Class**, **FDCPA Class, and Usury Class** members against Rushmore are identical, the only difference being the exact monetary sum to which each **State Law Class**, **FDCPA Class, and Usury Class** member is entitled to receive from Rushmore and/or RMAC.

62.    The common issues related to the **State Law Class** members include, but are certainly not limited to:

a.    Whether Rushmore is entitled to demand property preservation and/or inspection fees on the mortgage accounts of the **State Law Class**;

b.    Whether this Court may declare that Rushmore's practices and policies concerning the assessment of property preservation fees against the mortgage accounts of the **State Law Class** members violate COM. LAW § 12-121(b) and *Taylor v. Friedman*, 344 Md. 572, 584 (1997).

c.    Whether Rushmore threatened or took actions against the **State Law Class** members, including actions under the color of law or which were otherwise unfair and deceptive, that it had no right to take under state law;

d.    Whether Rushmore intended to defraud the **State Law Class** members by knowingly misrepresenting that it was entitled to assess property preservation fees against the mortgage accounts of the **State Law Class** members;

16

e.  Do the inspection fees charges by Rushmore on behalf of RMAC on the Named Plaintiffs' and **State Law Class** members' accounts constitute "interest" as that term is defined in COM. LAW § 12-101(e) and therefore also constitute "usury" as that term is defined in COM. LAW § 12-101(k); and

f.  Whether Rushmore should be ordered to disgorge money and profits that it has wrongfully collected based upon the improper assessment of property preservation and/or inspection costs on the mortgage accounts of the **State Law Class** members since such fees are not permitted in Maryland.

63.  The common issues related to the **FDCPA Class** include, but are certainly not limited to:

a.  Whether Rushmore's inclusion of property/inspection preservation fees against the mortgage accounts on payoff statements made by it on behalf of RMAC made the **FDCPA Class** members' payoff statements inaccurate.

b.  Whether Rushmore and/or RMAC may be liable to **FDCPA Class** members pursuant to 15 U.S.C.A. § 1692e by providing inaccurate payoff statements which included sums claimed to be due from the **FDCPA Class** members for property inspection fees which are not lawful under Maryland law.

c.  Whether Rushmore and/or RMAC may be liable to **FDCPA Class** members pursuant to 15 U.S.C.A. § 1692f by providing payoff statements that deceptively labeled attorney's fees as "corporate advances."

d.  What is the net worth of Rushmore and RMAC for the purpose of determining statutory damages owed to the RMAC Class members.

17

64.      The common issues related to the **Usury Class** members include, but are certainly not limited to:

    a.  Whether Rushmore is entitled to demand property preservation and/or inspection fees on the mortgage loan accounts of the **Usury Class**;

    b.  Whether Rushmore is entitled to demand property preservation and/or inspection fees on the mortgage loan accounts of the **Usury Class** on behalf of RMAC and others;

    c.  Whether this Court may declare that Rushmore's practices and policies concerning the assessment of property preservation fees against the mortgage loan accounts of the **Usury Class** members violate COM. LAW § 12-121(b) and *Taylor v. Friedman*, 344 Md. 572, 584 (1997);

    d.  Do the inspection fees charges by Rushmore on behalf of RMAC on the Named Plaintiffs and **Usury Class** members' accounts constitute "interest" as that term is defined in COM. LAW § 12-101(e) and therefore also constitute "usury" as that term is defined in COM. LAW § 12-101(k); and

    e.  Whether Rushmore and/or RMAC are liable for statutory damages pursuant to the **Usury Class** members pursuant to COM. LAW § 12-121(a)(1)(ii) for each instance in which Rushmore has imposed upon the **Usury Class** members.

65.      Named Plaintiffs' legal and equitable claims are typical and the same or identical for each of the member of the **State Law Class**, **FDCPA Class, and Usury Class** and will be based on the same legal and factual theories identified *supra*.

66.      Rushmore's and RMAC's defenses (which defenses are denied) would be typical and the same or identical for each of the member of the **State Law Class**, **FDCPA Class, and Usury Class** and will be based on the same legal and factual theories.

67.      The Named Plaintiffs will also fairly and adequately represent and protect the interests of the **State Law Class**, **FDCPA Class, and Usury Class** members.  Named Plaintiffs have retained counsel experienced in consumer class actions including actions involving unlawful collection and mortgage servicing practices.  Named Plaintiffs do not have any interests which might cause them not to vigorously prosecute this action or are otherwise adverse to the interests of the members of the **State Law Class**, **FDCPA Class, and Usury Class**.

68.      Certification of the **State Law Class**, **FDCPA Class, and Usury Class** under FED. R. CIV. P. 23(b)(2) for the injunctive and declaratory relief sought and under (b)(3) for the damages claims  in that common questions predominate over any individual questions and a class action is superior for the fair and efficient adjudication of this controversy.  A class action will cause an orderly and expeditious administration of claims by the **State Law Class**, **FDCPA Class, and Usury Class** members, and economies of time, effort and expenses will be fostered and uniformity of decisions will be insured.

69.      The only individual questions concern the identification of the **State Law Class**, **FDCPA Class, and Usury Class** members who are entitled to any sums and profits that Rushmore is ordered to disgorge as the fruit of its unlawful activities or share in any statutory and actual damages permitted by law against Rushmore and/or RMAC. This information can be determined by a ministerial examination of the Defendants' business

records or other sources, which are admissible as an exception to the hearsay rule and as a statement by a party.

70.       Named Plaintiffs' claims are typical of the claims of the **State Law Class**, **FDCPA Class, and Usury Class** members.

71.       Plaintiffs will fairly and adequately protect the interests of all **State Law Class**, **FDCPA Class, and Usury Class** members in the prosecution of this action. The Named Plaintiffs are similarly situated with, and has suffered similar injuries as, the members of the **State Law Class**, **FDCPA Class, and Usury Class** they seek to represent. The Named Plaintiffs (i) feels that they has been wronged, (ii) wish to obtain redress of the wrong, and (iii) wants Defendants stopped from enriching themselves from illegal fees or otherwise perpetrating similar wrongs on others.

72.       The **State Law Class**, **FDCPA Class, and Usury Class** members have suffered damages, losses, and harm similar those sustained by the Named Plaintiffs and described above.

## COUNT I

**(Individual and Class Declaratory Judgment and Injunctive Related to the Named Plaintiffs' and State Law Class Members' Mortgage Accounts)**

73.       Named Plaintiffs incorporate the foregoing allegations.

74.       Named Plaintiffs seek a declaration on their individual behalf and on behalf of the **State Law Class** members that the Defendants Rushmore and RMAC are not entitled to charge and/or collect lender's inspection fees in connection with the loans of the **State Law**

**Class** members and Named Plaintiffs which are secured by residential real property. Com. Law § 12-121(b). *See also Taylor v. Friedman*, 344 Md. 572, 584 (1997).

75.        Defendants Rushmore and RMAC should also be enjoined from attempting to charge, demanding and/or collecting lender's inspection fees in connection with the loans of the **State Law Class** members and Named Plaintiffs which are secured by residential real property.

76.        Alternatively, Named Plaintiffs seek a declaration that Defendants Rushmore and RMAC are not entitled to the assistance of any Maryland court to enforce any claim lender's inspection fees in connection with the loans of the **State Law Class** members and Named Plaintiffs which are secured by residential real property.

WHEREFORE, Named Plaintiff and **State Law Class** pray that this Court:

a.        Certify this case as a class action with the Named Plaintiffs as class representatives and their attorneys as class counsel on behalf of the **State Law Class** members described herein;

b.        Order and enter a declaratory judgment that Defendants Rushmore and RMAC are not entitled to demand, charge and/or collect lender's inspection fees in connection with the loans of the **State Law Class** members and Named Plaintiffs which are secured by residential real property.

c.        Order appropriate injunctive relief against Defendants Rushmore and RMAC to prevent further violations of law or providing benefits to each from their illegal assessments of inspection fees upon the Named Plaintiffs and **State Law Class** members, including a preliminary and permanent injunction;

c.      Order the Defendant Rushmore to disgorge all inspection costs and fees it has collected from the Named Plaintiffs and **State Law Class** members along with prejudgment interest on any amounts awarded to **State Law Class** members;

d.      Alternatively, Order and enter a declaratory judgment that Defendants Rushmore and RMAC are not entitled to the assistance of any Maryland court to enforce any claim lender's inspection fees in connection with the loans of the **State Law Class** members and Named Plaintiffs which are secured by residential real property;

e.      Award reasonable attorney's fees, litigation expenses and costs;

f.      Order appropriate declaratory relief; and

g.      Provide such other or further relief as the Court deems appropriate.

## COUNT II
### (Individual and Class Claim for Unjust Enrichment on behalf of the State Law Class and Named Plaintiffs Against Rushmore)

77.     Named Plaintiffs incorporate the foregoing allegations.  This claim for common law unjust enrichment is brought by Named Plaintiffs on behalf of the **State Law Class** against Defendant Rushmore only.

78.     Defendant Rushmore was not entitled to receive any benefit (including profits) or payments from the Named Plaintiffs and **State Law Class** members because of any so-called property inspection fees or preservation fees assessed to or capitalized to the accounts of the Named Plaintiffs and the **State Law Class** members.  Notwithstanding this prohibition, Seterus has knowingly and willfully received and demanded benefits from its

illegal and improper assessment and collection of such fees which is a crime under Maryland law. COM. LAW § 12-122.

79.     Maryland law recognizes that a claim for unjust enrichment is permitted in instances like this one where even though a claim may be covered by a contract between the parties where (i) one party breaches the contract (by charging sums now lawfully charged), (ii) the contract does not fully address a subject matter such as one party's illegal, criminal activity or (iii) there is evidence of fraud or bad faith when a party acts contrary to the law. *Cty. Comm'rs of Caroline Cty. v. J. Roland Dashiell & Sons, Inc.*, 358 Md. 83, 100 (2000).

80.     At all times relevant and material to this action in the three years before the commencement of this action, Rushmore has known or should have known that is was not permitted to claim it was entitled to access or collect inspection fees from the Named Plaintiffs and the **State Law Class** members since the class is clearly stated on this point and its own regulator has so instructed it.

81.     Due to its knowledge, as described above, Rushmore had an appreciation that it was not entitled to receive the benefits it was collecting from the Named Plaintiffs and **State Law Class** members that flow from the property inspection fees it assessed on their accounts and sought reimbursement from RMAC and other mortgage owners for the expense.

82.     The acceptance and retention by Rushmore of any sums received as a result of the illegal property inspection fees charged by it against the Named Plaintiffs' and **State Law Class** member accounts under such circumstances is inequitable since Rushmore did not have the legal right to even demand or collect such payments in the first instance in the

manner it sought to collect them—this conclusion is just and proper even though Rushmore might have otherwise collected the alleged fees in any other state since Maryland has for nearly two decades not permitted the assessment of such fees and Rushmore was notified more than three years ago by its regulator that it was not entitled to charge such fees.

83.     The amounts accepted and charged by Rushmore from the Named Plaintiffs and the **State Law Class** members are liquidated amounts.

WHEREFORE, Named Plaintiffs and **State Law Class** members pray that this Court:

a.     Certify this case as a class action with the Named Plaintiffs as class representatives and their attorneys as class counsel on behalf of the **State Law Class** members described herein;

b.     Grant a money judgment and order Defendant Rushmore to disgorge and pay to the **State Law Class** members all amounts it has collected from the State Law Class members and the benefits it has realized as a result of collecting illegal fees in a sum in excess of $75,000.00;

c.     Award prejudgment interest on the amounts collected by Defendant Rushmore;

d.     Award reasonable attorney's fees, litigation expenses and costs to the extent allowed by law; and

e.     Provide such other or further relief as the Court deems appropriate.

## COUNT III
**(Individual and Class Claim pursuant to the Maryland Consumer Debt Collection Practices Act, COM. LAW, § 14-201, *et seq.* ("MCDCA") and the Maryland Consumer Protection Act, COM. LAW, § 14-201, *et seq.* ("MCPA") on behalf of the State Law Class members and the Named Plaintiffs Against Rushmore Only Concerning Rushmore's Assessment of Illegal Inspection Fees)**

84.     Named Plaintiffs incorporate the foregoing allegations. This claim for state statutory claims under the MCPA and MCDCA is brought by Named Plaintiffs on behalf of the **State Law Class** against the Defendant Rushmore only.

85.     Defendant Rushmore is engaged in the business of collecting consumer debts secured by real property. In furtherance of that business Rushmore claimed, directly and indirectly, that they were entitled to assess, charge, and collect from the Named Plaintiffs and the **State Law Class** members property inspection fees or preservation fees related to the **State Law Class** members' secured mortgage loans.

86.     Defendant Rushmore knowingly claimed the right to such fees under the color of law by threatening legal foreclosure based in part on the illegal fees when it knew it had no right to do so.

87.     Rushmore's acts as a debt collector violates COM.LAW § 14-202(8) which prohibits a debt collector from making any "[c]laim, attempt, or threaten to enforce a right with knowledge that the right does not exist."

88.     Rushmore's claim that Named Plaintiffs and the State Law Class members owe sums for property inspection fees or preservation fees also violates COM.LAW § 14-202(8) when the Defendant knows such fees are unlawful in Maryland.

89.     By threatening to commence and commencing foreclosure in the State of Maryland, which involves Maryland court proceedings, and indicating that it has a right to collect

inspectfion fees from the Named Plaintiffs and the State Law Class members based in whole or in part on property inspection fees, Rushmore has used communication in collecting or attempting to collect a debt which improperly implies that the government or a government agency has authorized the collection effort when the government has not done so in violation of COM. LAW §14-202(9).

90.      The demands by Rushmore for the improper inspection fees related to the Named Plaintiffs and State Law Class members' loans secured by real property concern "real or personal property, services, money, or credit for personal, family, or household purposes." COM. LAW § 201(b).

91.      Rushmore's actions in violation of the MCDCA also constitute a *per se* violation of the MCPA pursuant to COM. LAW § 13-301(14)(iii).

92.      Named Plaintiffs have been damaged as described above.  The **State Law Class** members have suffered similar damages.

WHEREFORE, Named Plaintiffs and **State Law Class** Members pray that this Court:

a.   Certify this case as a class action with the Named Plaintiffs as class representatives and their attorneys as class counsel on behalf of the **State Law Class** members described herein;

b.   Grant a money judgment in favor of the Named Plaintiffs and the **State Law Class** members and against Rushmore for violations of the MCDCA, as described herein, in such amount as to be determined at trial and for purposes of a sum certain directly related to improper assessment of inspection fees and costs by Rushmore against the Named Plaintiffs and State Law Class members' mortgage

loan accounts, subject to further discovery as to the size of the class, the amount sought on behalf of the class is in excess of $75,000.00;

    c.   Award reasonable attorney's fees, litigation expenses and costs pursuant to COM. LAW § 13-408; and

    d.   Provide such other or further relief as the Court deems appropriate.

**COUNT IV**
**(Individual and Class Claim pursuant to COM. LAW § 12-121(a)(1)(ii) on behalf of the Usury Class members and the Named Plaintiffs Against Rushmore and RMAC)**

93.      Named Plaintiffs incorporate the foregoing allegations.  This claim for state statutory damages pursuant to COM. LAW § 12-121(a)(1)(ii) is brought by Named Plaintiffs on behalf of the **Usury Class** against Defendants Rushmore and RMAC.

94.      The OCFR has determined, under its authority as Maryland's regulator implementing Maryland mortgage lender laws, that mortgage servicers like Rushmore may not violate COM. LAW § 12-121(b).

95.      As the owner and assignee of the Named Plaintiffs' and Usury Class members' loans, RMAC stands in the shoes of its assignor(s) (or their predecessors) who made the loans to the Named Plaintiffs and **Usury Class** members and has no greater rights as the assignee than the assignors (including those who made the loans).  RMAC is therefore the maker of the Named Plaintiffs' and the **Usury Class** members' by accepting the assignment of the loans and related deeds of trust.

96.      If the General Assembly had intended to exclude RMAC from liability pursuant to COM. LAW § 12-121(b), it knew how to do so but did not.  *Compare* COM. LAW § 12-

27

1026(b)(5)(i)(1)(exempting certain assignees of mortgage loans like Fannie Mae from other provisions).

97.      COM. LAW § 12-121(b) prohibits a lender from imposing property inspection fees on the Named Plaintiffs and State Law Class members after the origination of the subject loans. COM. LAW § 12-121(b) does not exempt RMAC or Rushmore from its express prohibition.

98.      Neither Rushmore or RMAC was entitled to require any charge to the mortgage loan accounts of the Named Plaintiffs and **Usury Class** members related to property inspections unrelated to the construction to a new home or repairs, alterations, or other work required by them.

99.  At all times relevant and material to this action in the three years before the commencement of this action, Rushmore and RMAC have known or should have known that they were not permitted to require the imposition of unauthorized inspection fees to the mortgage accounts of the Named Plaintiff and the **Usury Class** members since all persons are expected to know the law.

100.      COM. LAW § 12-114(a)(1)(ii) provides that the Defendants shall forfeit to borrowers like the Named Plaintiff and **Usury Class** Members the sum of $500 for any violation of the subtitle including COM. LAW § 12-121(b).

101.      The Named Plaintiffs and **Usury Class** Members are entitled to the sum of $500 for each instance in which Rushmore on behalf of RMAC has imposed inspection fees against the mortgage loan accounts of the Named Plaintiffs and the **Usury Class** Members pursuant to COM. LAW § 12-121(b) whether the Named Plaintiffs or **Usury Class** members paid the assessment or not.

28

WHEREFORE, Named Plaintiffs and **Usury Class** members pray that this Court:

a.      Certify this case as a class action with the Named Plaintiffs as class representatives and their attorneys as class counsel on behalf of the **Usury Class** members described herein;

b.      Grant a money judgment and order Defendants Rushmore and RMAC to forfeit and pay to the Named Plaintiffs and the **Usury Class** members $500 for each violation of COM. LAW § 12-121(b) and a total sum in excess of $75,000.00;

c.      Award prejudgment interest to the Named Plaintiffs and **Usury Class** members on the statutory damages they are entitled to receive;

d.      Award reasonable attorney's fees, litigation expenses and costs to the extent allowed by law; and

e.      Provide such other or further relief as the Court deems appropriate.

## COUNT V
### (Individual and Class Claim pursuant to the Maryland Mortgage Fraud Protection Act, Real Prop. § 7-401, *et seq.* ("MMFPA") on behalf of the State Law Class members and the Named Plaintiffs Against Rushmore Only)

102.      Named Plaintiffs incorporate the foregoing allegations.  This claim for state statutory claims under the MMFPA is brought by Named Plaintiffs on behalf of the **State Law Class** against Rushmore only.

103.      The MMFPA, REAL PROP. § 7-401, *et. seq.*, governs the relationship between Rushmore on the one hand and the Named Plaintiffs and the **State Law Class** members on the other.

104.    REAL PROP. § 7-401(c) provides: "'Homeowner' means a record owner of residential real property." The Named Plaintiffs and the **State Law Class** members are the record owners of the real properties in question and are therefore Homeowners entitled to the protections of the MMFPA.

105.    REAL PROP. § 7-401(e) provides: "Mortgage lending process… include[s] [t]he solicitation, application, origination, negotiation, servicing, underwriting, signing, closing, and funding of a mortgage loan."

106.    FIN. INST. § 11-501(l) provides: "'Mortgage loan' means any loan or other extension of credit that is: (i) secured, in whole or in part, by any interest in residential real property in Maryland; and (ii) for personal household or family purposes, in any amount."

107.    The MMFPA works to protect the interests of all parties to mortgage transactions in Maryland from misstatements, misrepresentations and omissions. In this instance, the MMFPA works to protect borrowers like the Named Plaintiffs and **State Law Class** members from mortgage companies and so-called professionals like Rushmore to ensure a level, fair playing field between all borrowers and professionals. For example, other mortgage professionals who do not access mortgage borrowers like the Named Plaintiffs and the **State Law Class** members with inspection fees are harmed by Rushmore's violations and false statements and omissions made herein just as the Plaintiffs are harmed. In other words, honest mortgage professionals who follow the law are harmed by Rushmore's improper assessment and collection of fees and costs they are not entitled to under Maryland law.

108.     Named Plaintiffs and the **State Law Class** members are homeowners in the Mortgage Lending Process as defined by the MMFPA since the actions in dispute in this lawsuit involve the negotiation and servicing of residential mortgage loans with Rushmore.

109.     REAL PROP. § 7-401(d) provides: "Mortgage fraud" means any action by a person made with the intent to defraud that involves:

> Knowingly making any deliberate misstatement, misrepresentation or omission during the mortgage lending process with the intent that the misstatement, misrepresentation or omission be relied on by a mortgage lender, borrower or any other party to the mortgage lending process;
>
> Knowingly using or facilitating the use of any deliberate misstatement, misrepresentation, or omission during the mortgage lending process with the intent that the misstatement, misrepresentation, or omission be relied on by a mortgage lender, borrower, or any other party to the mortgage lending process;
>
> Receiving any proceeds or any other funds in connection with a mortgage closing that the person knows resulted from a violation of [§ 7-401(d)(1) or (2)];
>
> Conspiring to violate any provisions of [§ 7-401(d)(1), (2), or (3)]…

110.     Rushmore's knowing conduct and intention to defraud Named Plaintiffs and the **State Law Class** members (and the public) is demonstrated by its dishonest statements and omissions and willful refusal to know the true facts exemplified *supra*.

111.     Rushmore's intent to defraud the Named Plaintiffs and the **State Law Class** members is also exemplified by its reckless disregard to the express prohibition of the assessment of property inspection fees under long-standing Maryland law.

112.     As a result of Rushmore's knowingly deceptive and untrue communications and misstatements and omissions, Named Plaintiffs and the **State Law Class** members have suffered economic and noneconomic damages described *supra*.

WHEREFORE, Named Plaintiffs and **State Law Class** Members pray that this Court:

a.  Certify this case as a class action with the Named Plaintiffs as class representatives and their attorneys as class counsel on behalf of the **State Law Class** members described herein;

b.  Grant a money judgment in favor of the Named Plaintiffs and the **State Law Class** members for violations of the MMFPA, as described herein, in such damage amount as to be determined at trial and for purposes of a sum certain directly related to the of a sum certain directly related to improper assessment of inspection fees and costs by Rushmore against the Named Plaintiffs and State Law Class members' mortgage loan accounts by Rushmore against the Named Plaintiffs and State Law Class members, subject to further discovery as to the size of the class, the amount sought on behalf of the class is in excess of $75,000.00;

c.  Grant a further money judgment for statutory damages to the Named Plaintiffs and the State Law Class members pursuant to REAL PROP. § 7-406(c) against Rushmore;

d.  Award reasonable attorney's fees, litigation expenses and costs pursuant to REAL PROP. § 7-406(b); and

e.  Provide such other or further relief as the Court deems appropriate.

### COUNT VI
### (Individual and Class Claim pursuant to the FDCPA, on behalf of the FDCPA Class members and the Named Plaintiffs Against All the Defendants, or in the alternative, solely Rushmore)

113.    Named Plaintiffs incorporate the foregoing allegations.  This claim for federal statutory claims under the FDCPA is brought by Named Plaintiffs on behalf of the **FDCPA Class** against the Defendants jointly.  In the alternative, if the Court finds that the FDCPA

claims presented herein may only be asserted against Rushmore, Named Plaintiffs assert this claim solely against Rushmore.

114.    15 U.S.C.A. § 1692e provides (in pertinent part):

> A debt collector may not use any false, deceptive, or misleading representation or means in connection with the collection of any debt. Without limiting the general application of the foregoing, the following conduct is a violation of this section:
> (2) The false representation of--
> (A) the character, amount, or legal status of any debt; or
> (B) any services rendered or compensation which may be lawfully received by any debt collector for the collection of a debt.
> (10) The use of any false representation or deceptive means to collect or attempt to collect any debt or to obtain information concerning a consumer.

*Id.*

115.    The charge of property inspection fees to the Plaintiffs' and Class' Mortgage Loans is a false representation of the character and amount of fees due and owing.

116.    The deceptive labeling of attorney's fees as "recoverable corporate advances" and "corporate advances" is a false representation of the character of the debt, and a false representation of the services rendered which may be lawfully received by a debt collector for the collection of debt.

117.    Defendants, through their agents, representatives and/or employees acting within this scope of their authority violated 15 U.S.C. §1692e & §1692f.

118.    Charging the unlawful property inspection fees and demanding the money from consumers causes a concrete injury, harming each consumer in the putative class.

WHEREFORE, Named Plaintiffs and **FDCPA Class** Members pray that this Court:

a.  Certify this case as a class action with the Named Plaintiffs as class representative

and their attorneys as class counsel on behalf of the **FDCPA Class** members described herein;

b.  Grant a money judgment in favor of the Named Plaintiffs and the **FDCPA Class** members for violations of FDCPA, as described herein, in such damage amount as to be determined at trial and for purposes of a sum certain directly related to the of a sum certain directly related to improper assessment of inspection fees and costs by Defendants against the Named Plaintiffs and **FDCPA Class** members' mortgage loan accounts by Defendants against the Named Plaintiffs and **FDCPA Class** members, subject to further discovery as to the size of the class, the amount sought on behalf of the class is in excess of $75,000.00;

c.  Grant a further money judgment for statutory damages to the Named Plaintiffs and the FDCPA Class members equal to $500,000.00 or 1% of Defendants' net worth, as provided by 15 U.S.C. § 1692k(a)(2)(B);

d.  Award reasonable attorney's fees, litigation expenses and costs pursuant to 15 U.S.C. § 1692k(a)(3); and

e.  Provide such other or further relief as the Court deems appropriate.

## COUNT VII
**(Individual Claim pursuant to the Maryland Consumer Debt Collection Practices Act, COM. LAW, § 14-201, *et seq.* ("MCDCA") and the Maryland Consumer Protection Act, COM. LAW, § 14-201, *et seq.* ("MCPA") on behalf of the Named Plaintiffs Only Against Rushmore Only Concerning It's Improper Loss Mitigation Practices Concerning the Plaintiffs' Loan)**

119.    Named Plaintiffs incorporate the foregoing allegations.  This claim for state statutory claims under the MCPA and MCDCA is brought by Named Plaintiffs on their behalf individually against the Defendant Rushmore only.

34

120.     The mortgage servicing and foreclosure practices as set forth herein of Rushmore against the Plaintiffs are governed by the Maryland Consumer Protection Act, COM. LAW § 13-101 *et. seq.* ("MCPA").

121.     Section 13-303 prohibits unfair or deceptive trade practices in the extension of consumer credit or collection of consumer debts.  The servicing of a mortgage loan and transfer of a mortgage loan to another based upon false and otherwise unfair and deceptive statements, representations, and omissions discussed herein involves both the extension of credit and the collection of debts.

122.     The MCPA defines unfair or deceptive trade practices to include, inter alia, the following: (a) False, falsely disparaging, or misleading oral or written statement, visual description, or other representation of any kind which has the capacity, tendency, or effect of deceiving or misleading consumers; and (b) Failure to state a material fact if the failure deceives or tends to deceive.

123.     By engaging in the acts and omissions set forth above as concerning, by making the misrepresentations set forth above, and by failing to disclose the identity of "corporate advances," Rushmore has committed unlawful or deceptive trade practices in violation of the MCPA.  Sec. 13-301(1) and (3) and Sec. 13-303(4).

124.     Rushmore's conduct, as set forth above, had the capacity, tendency or effect of deceiving Plaintiffs, who in fact was deceived and misled, causing injury and loss through the unfair and deceptive acts and omissions discussed above which caused injury and losses.

125.     Rushmore's conduct, as set forth above, caused emotional distress and mental anguish in the forms of undue stress, anger, and frustration to both Plaintiffs, and arguments

between both Plaintiffs. In addition to the stress, anger, frustration, and arguments, Plaintiff Jeimy Flournoy experienced anxiety, loss of sleep, and headaches due to Rushmore's conduct. But for Rushmore's unfair and deceptive conduct as set forth above, the Plaintiffs would not have experienced the emotional distress described herein.

126.    Plaintiffs' individual damages as alleged herein were proximately caused by Rushmore's actions including damages for emotional distress and mental anguish suffered with or without accompanying physical injury as well as those damages described in ¶¶ 38, 125 above.

127.    Rushmore also acted as a collector under the MCDCA by attempting to collect upon an alleged, Plaintiffs' mortgage debt arising out of a consumer transaction—their mortgage loan used to acquire and improve their home and Property.  COM. LAW §14-201(b).

128.    Rushmore's attempt to collect against Plaintiffs in a manner in which it knew it did not have the right to do by knowingly assessing excessive and unearned fees on the Flournoys' mortgage account for foreclosure attorney fees.

129.    By violating Maryland laws and the Defendant's duties under Maryland law and by utilizing methods and means of collection not permitted by law or the relationship governing the parties, Rushmore also violated the MCDCA.  By such acts and omissions Rushmore has claimed, attempted, or threatened to enforce a right with knowledge that the right does not exist, in violation of the MCDCA.  COMM. LAW §14- 202(8).

130.    Plaintiffs are therefore entitled to their damages and losses described *supra* which have proximately resulted from Rushmore's actions in violation of the MCDCA.  MD. CODE ANN., COM. LAW, § 14-203.

131.     Rushmore's violations of the MCDCA, described herein, are also *per se* violations of the MCPA pursuant to § 13-301(14)(iii) of the Commercial Law Article.

132.     Plaintiffs reasonably relied upon the material acts and actions of Rushmore as described *supra*.

WHEREFORE, Plaintiffs respectfully requests the Court enter judgment pursuant to the MCPA and MCDCA in favor of Plaintiffs individually and against Rushmore as follows:

a.     Grant a money judgment in favor of the Named Plaintiffs against Rushmore for violations of the MCDCA and MCPA, as described herein, in such amount as to be determined at trial and for purposes of a sum certain directly related to improper loss mitigation and threats of foreclosure by Rushmore against the Named Plaintiffs in the sum of $17,000 for each Plaintiff;

b.     Award reasonable attorney's fees, litigation expenses and costs pursuant to COM. LAW § 13-408; and

c.     Provide such other or further relief as the Court deems appropriate.

Respectfully Submitted,


  //s//Ingmar Goldson
Ingmar Goldson, Esq.  (#19024)
The Goldson Law Office
1734 Elton Rd. Suite 210
Silver Spring, MD 20903
240-780-8829
igoldson@goldsonlawoffice.com


*Counsel for the Plaintiffs and State Law Class, Usury Class & FDCPA Class Members*

37