**IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MARYLAND
(Southern Division)**

| | |
|---|---|
| **KEVIN AND JEIMY FLOURNOY** | |
| And | |
| **TINAEE D. CROWDER** | Case No.  8:19-cv-00407-PX |
| *On their behalf and on behalf of three classes of similarly situated  persons* | |
| Named Plaintiffs, | |
| v. | |
| **RUSHMORE LOAN MANAGEMENT SERVICES LLC** | JURY TRIAL DEMANDED |
| And | |
| **U.S.  BANK NATIONAL ASSOCIATION AS TRUSTEE FOR RMAC TRUST, SERIES 2016-CTT** | |
| **And** | |
| **MTGLQ INVESTORS, LP** | |
| Defendants. | |

**AMENDED CLASS ACTION COMPLAINT[1,2]**

Plaintiffs Kevin and Jeimy Flournoy ("Mr. and Mrs. Flournoy") and Tinaee D. Crowder

("Ms. Crowder")(collectively "Named Plaintiffs"), through their undersigned counsel file this

---

[1]    This Amended Class Action Complaint is filed as a matter of course pursuant to Fed. R. Civ. P. 15(a)(1).

[2]    Attached as **Exhibit 1** hereto is comparison copy of the changes made herein.

Amended Class Action Complaint pursuant to Fed. R. Civ. P. 23, on their individual behalf and on behalf of three classes of similar persons against Defendants Rushmore Loan Management Services, LLC ("Rushmore"), U.S. Bank National Association, As Trustee For The RMAC Trust, Series 2016-CTT ("RMAC"), and MTGLQ Investors, LP ("MTGLQ")(collectively "Defendants") and say in support:

## I.   INTRODUCTION

1.      In an unfair and deceptive scheme, starting in 2016, Rushmore took advantage of Mr. and Mrs. Flournoy when they experienced loss of employment and fell behind on their mortgage. While Mr. and Mrs. Flournoy were attempting in good faith to work with Rushmore to bring their mortgage account current, Rushmore deceptively added dubious and unlawful fees and charges disguised by the category name "corporate advances" as the loan was approaching current status. Despite numerous demands, Rushmore would not identify to Mr. and Mrs. Flournoy the fees and charges included in the corporate advances category of fees and charges imposed against their mortgage account with RMAC.

2.      In addition to the deceptive and unclear corporate charges imposed on their account, Rushmore constantly provided Mr. and Mrs. Flournoy conflicting, monthly statements, blamed Mr. and Mrs. Flournoy for paying the wrong sums at the improper time, filed an unlawful foreclosure action, then charged and collected from Mr. and Mrs. Flournoy fees that were purportedly based on the unlawful foreclosure action. Further, Rushmore disguised the attorney's fees related to the foreclosure as "recoverable corporate advances" or just "corporate advances."

3.      As related to the Class allegations, Rushmore knowingly and improperly imposed and collected certain loan charges—i.e. property inspection fees—against the mortgage loan accounts of the Named Plaintiffs and the putative class members they represent as part of its regular

2

and routine mortgage servicing practices in the State of Maryland. These fees are expressly barred by Maryland law which governs each mortgage contract of the Named Plaintiffs and putative class members.  As part of its customarily practice and pattern, Rushmore conceals any disclosure of these charges to consumers by lumping them into a category of expenses called corporate advances which Rushmore intends for them to rely on its representation that it has a right to collect the sums demanded.  In sworn testimony through its authorized corporate designee in the matter of *Banks v. Rushmore*, Case No. 444995 that is published in the Circuit Court for Montgomery County (Doc. 44), Rushmore admitted that it imposed on the borrowers property inspection fees in a larger category of corporate advances (Ex. 7 to Doc. 44, Dep. of R. Martin at 86:3 to 86:9).  The Circuit Court granted judgment as a matter of law against Rushmore pursuant to the Maryland Consumer Debt Collection Act and Maryland Consumer Protection Act in part based on Rushmore's improper imposition and collection of property inspection fees against the borrowers.  Doc. 72, *Banks v. Rushmore*, Case No. 444995.[3]

4.      As a result, Rushmore's actions have unlawfully and knowingly infected the Named Plaintiffs' and the putative class members' mortgage accounts by wrongfully demanding costs and sums it is not entitled to collect from Mr. and Mrs. Flournoy and Ms. Crowder and the putative class members.

5.      Since these unlawful fees are also included in payoff statements sent by Rushmore, the payoff demands sent by Rushmore to Mr. and Mrs. Flournoy and certain of the putative class

---

[3]      Rushmore knew for a certainty on April 26, 2019 when it moved to dismiss the Plaintiffs initial complaint in this matter (ECF. 7) that the Circuit Court had ruled against it on this issue in the *Banks* litigation just a couple of months ago.  However, Rushmore concealed that fact from its motion.

members are not accurate.  But Rushmore is under a duty at law to provide borrowers with accurate payoff statements.  15 U.S.C.A. § 1639g; 12 C.F.R. § 1026.36(c)(3); MD. CODE REGS. 09.03.06.13. Notwithstanding these duties Rushmore has (i) used false, deceptive, or misleading representations or otherwise has used unfair or unconscionable means in connection with the collection of the FDCPA Class Members and the named Plaintiffs' mortgage debts through payoff statements which contain sums not lawfully due under Maryland law.

6.     Maryland law specifically provides that "a lender may not impose a lender's inspection fee in connection with a loan secured by residential real property."  COM. LAW § 12-121(b). *See also Taylor v. Friedman*, 344 Md. 572, 584 (1997)("For the foregoing reasons we conclude that the legislative history does not so clearly demonstrate a purpose to limit the prohibition of § 12–121 to closing costs as to override the plain language of the statute").[4] In this case as the assignees of maker of the loans of the Named Plaintiffs and putative class members, RMAC and MTGLQ now stands in the shoes of the maker of the lender and  Rushmore is its authorized agent to act on their behalf.

7.     Under Maryland law the inspection fees charged by Rushmore to the mortgage accounts of Named Plaintiffs and the putative class members' constitute "interest" as that term is defined in COM. LAW § 12-101(e) and therefore also constitutes "usury" as that term is defined in COM. LAW § 12-101(k).

---

[4]     It should be noted that the last argument of the Appellees in *Taylor* was that the statute should not apply to a foreclosure by an assignee pursuing collection by foreclosure and should be construed to apply only to real estate closings. Br. of Appellees, *Taylor v. Friedman* (dated June 12, 1996).  The Court of Appeals rejected that argument as too should this Court.

8.      It is also a crime for Rushmore, MTGLQ, and RMAC to impose property inspection fees.  COM. LAW § 12-122.  In a similar instance, the Court of Appeals held a private right of action based on a violation of criminal statute "unmistakably and unambiguously" means a consumer can pursue claims like the Plaintiffs and putative class members here.  *LVNV Funding LLC v. Finch*, No. 46, SEPT.TERM, 2018, 2019 WL 1760468, at *11 (Md. Apr. 22, 2019).

9.      The Office of the Commissioner of Financial Regulation ("OCFR"), as the agency specifically authorized to enforce and regulate Maryland's mortgage lending laws, is entitled to deference for its interpretation of those laws. *LVNV Funding LLC v. Finch*, No. 46, SEPT.TERM, 2018, 2019 WL 1760468, at *8 (Md. Apr. 22, 2019)("*Finch III*"); *Comm'r of Fin. Regulation v. Brown, Brown, & Brown, P.C.*, 144 A.3d 666, 675 (2016).   Over the course of the former and current administration, OCFR's analysis of the core issue has not wavered and supports the position advanced by the Named Plaintiffs in this action (i.e. that RMAC and MTGLQ as a successor assignee stands in the shoes of its assignor(s) and Rushmore as RMAC's and MTGLQ's authorized agent may not impose inspection fees pursuant to COM. LAW § 12-121) as evidence as follows:

    a.   OCFR issued an Industry Advisory on January 7, 2014 informing its licensees, including Rushmore and MTGLQ, that it was not permitted to impose inspection fees on mortgage borrowers.   **Exhibit 2**.

    b.   On April 20, 2017 the OCFR issued a Summary Cease and Desist Order to Ocwen Loan Servicing LLC ("Ocwen") and its affiliates on various issues including Ocwen's unfair and deceptive practice, like the practices of Rushmore subject to this action, which improperly assessed inspection fees against the accounts of borrowers in violation of COM. LAW § 12-121, including accounts of borrowers

5

owned by others.  *See* Ocwen C&D Order at ¶¶ 79-83.  Ocwen recently agreed, on February 23, 2018, to a resolution of the OCFR C&D Order and agreed to reimburse borrowers for the improper assessment and collection of inspection fees by: (i) cash refunds for fees paid, (ii) crediting accounts where the fee was assessed but not paid, and (iii) refunding interest incurred when Ocwen capitalized the illegal inspection fees onto borrowers' accounts as part of a modification that increased the unpaid principal balance.  *See* Ocwen Settlement Agreement at ¶ 26.  **Exhibit 3**.

10.     On May 14, 2018, the Consumer Protection Division in the Office of the Attorney General for the State of Maryland ("CPD") agreed to an Assurance of Discontinuance with Nationstar Mortgage LLC ("Nationstar Assurance").  In the Nationstar Assurance CPD found that the mortgage servicer had violated the bar to the assessment of inspection fees in COM. LAW. § 12-121 and such violations constituted violations of the Maryland Consumer Protection Act, COM. LAW. § 13-101, *et seq.*  **Exhibit 4**.

11.     Finally, as licensed Maryland mortgage servicer/lenders, Rushmore and MTGLQ knowingly agreed to "a duty of good faith and fair dealing in communications, transactions, and course of dealings with a borrower in connection with the advertisement, solicitation, making, servicing, purchase, or sale of any mortgage loan."  MD. CODE REGS. 09.03.06.20.  By charging property inspection fees against the mortgage accounts of the Named Plaintiffs and the putative class members, Rushmore and MTGLQ have violated that duty of good faith—especially since their knowing and willful actions constitute a crime.  COM. LAW § 12-122.

12.     The Defendants have proximately caused damages and losses to the Named Plaintiffs and the putative class members by assessing and demanding sums from Mr. and Mrs.

Flournoy, Ms. Crowder, and the putative class members which are not lawfully due. Also, Rushmore has been unjustly enriched and it should not be permitted to retain the benefit of its illegal activities. Finally, Mr. and Mrs. Flournoy, Ms. Crowder, and the putative class members are also entitled to statutory damages.

## II.     THE PARTIES

13.     Mr. and Mrs. Flournoy are residents of Capitol Heights, Maryland in Prince George's County. Their loan subject to these proceedings is a consumer loan. It is a loan that was used primarily for personal, family or household purposes.

14.     Ms. Crowder is a resident of Baltimore County, Maryland and previously owned a home and property located at 5003 Hollington Drive., Suite 206, Owings Mills, MD  21117 that she lost to foreclosure based in part to the improper assessment and imposition of property inspection fees by Rushmore onto her mortgage account after July 1, 2016. Ms. Crowder seeks no damages or losses in this action that occurred before July 1, 2016.

15.     Defendant Rushmore Loan Management Services LLC ("Rushmore") is Delaware Limited Liability Company that is registered to do business in Maryland and is licensed as a mortgage lender/servicer by the OCFR. Rushmore also regularly conducts business in Maryland and Prince George's County, Maryland.

16.     Rushmore is a debt collectors pursuant to 15 U.S.C. §1692a(6) because its principal business activity is the collection of debts on behalf of others and it also uses instrumentalities of interstate commerce or the mails related to the enforcement of security interests as described in 15 U.S.C. §1692f(6) which bars certain debt collectors, like the Rushmore, from threatening to take any nonjudicial action to effect dispossession of property when there is no present right to

possession of the property claimed as collateral when the debt collection action is barred as a matter of law.   Rushmore is also a collector as defined by COM. LAW § 14-201(b).

17.     U.S. Bank National Association, as Trustee for the RMAC Trust, Series 2016-CTT ("RMAC") is a trust that was created for the purpose of acquiring defaulted mortgage loans.  U.S. Bank serves as its named trustee but has no control of the day to day activities of RMAC which is instead controlled by another on behalf of a group of investors for distressed, mortgage assets. RMAC is a debt collector pursuant to 15 U.S.C. §1692a(6) because its principal business activity is the collection of defaulted debts.    RMAC is also a debt collector pursuant to 15 U.S.C. §1692a(6) because its principal business activity involves the use instrumentalities of interstate commerce or the mails related to the enforcement of security interests as described in 15 U.S.C. §1692f(6) which bars certain debt collectors, like RMAC, from threatening to take any nonjudicial action to effect dispossession of property when there is no present right to possession of the property claimed as collateral when the debt collection action is barred as a matter of law.

18.     MTGLQ is a limited partnership based in New York that was created for the purpose of acquiring defaulted mortgage loans.  MTGLQ is a debt collector pursuant to 15 U.S.C. §1692a(6) because its principal business activity is the collection of defaulted debts.   MTGLQ is also a debt collector pursuant to 15 U.S.C. §1692a(6) because its principal business activity involves the use instrumentalities of interstate commerce or the mails related to the enforcement of security interests as described in 15 U.S.C. §1692f(6) which bars certain debt collectors, like MTGLQ, from threatening to take any nonjudicial action to effect dispossession of property when there is no present right to possession of the property claimed as collateral when the debt collection action is barred as a matter of law.

**III.     JURISDICTION AND VENUE**

19.     Declaratory and injunctive relief are available pursuant to 28 U.S.C.A. §§ 2201-2202, Cts. & Jud. Proc. § 3-401, *et seq.,* and Fed. R. Civ. P. 23(b)(2).

20.     Venue in this Court is proper in that the Defendants transact business within Prince George's County in relation to Prince George's County residents as part of their debt collection/mortgage servicing practices and includes conduct complained of which occurred in Prince George's County, Maryland.

21.     This Court has jurisdiction of this matter based upon (i) federal question jurisdiction (28 U.S.C. § 1331) and supplemental jurisdiction (28 U.S.C. § 1367(a)).  In addition, the court also jurisdiction based upon the Class Action Fairness Act of 2005  ("CAFA") (28 U.S.C. § 1332(d)).  Upon information and belief based upon the well pled allegations and claims pled herein (1) the aggregate amount placed in controversy by the claims of Plaintiffs and the proposed class members exceeds the sum or value of $5,000,000, exclusive of interest and costs; (2) the putative class action consists of at least 100 proposed class members; and (3) the citizenship of at least one putative class member is different from that of at least one of the Defendants—*i.e.*, in which there is minimal diversity.  28 U.S.C. § 1332(d).  All three requirements are met in this case.  For example, public records show that the putative classes include 100s of Maryland consumers in foreclosure and based on the experiences of the Named Plaintiffs and other admissions and  records identified herein Rushmore appears to impose property inspection fees onto the mortgage accounts on nearly a monthly basis in such instances (meaning, for example, Plaintiffs need only show that Rushmore imposed property inspection fees in 10,000 instances during the class periods to get to the aggregate statutory damages claimed in Count IV).  There are also hundreds if not thousands of putative class members represented in this action based on Rushmore's public disclosures.  In

addition, upon information and belief the Defendants are not citizens of the State of Maryland but most of the class members are currently members of the State of Maryland.

## IV.    FACTS RELATED TO MR. AND MRS. FLOURNOY, MS. CROWDER & FURTHER GENERAL BACKGROUND

22.    All persons, including licensed mortgage lender/servicers in the State of Maryland like Rushmore, are expected to know the law.  Charging and collecting unlawful fees to borrowers' accounts held by RMAC and others including MTGLQ is unreasonable and Rushmore should not be permitted retain the profits from such activities.

23.    The Court of Appeals in 2005 recognized that a real estate professional who had no direct communication with a borrower nevertheless had a duty to a consumer under the Maryland Consumer Protection Act and Maryland common law to make a "reasonable investigation" of the true facts in the real estate transaction on which the borrower (and other parties) would rely in order to complete the transaction.  *Hoffman v. Stamper*, 385 Md. 1, 867 A.2d 276 (2005).  This duty of care applies to RMAC and Rushmore as their work involves secured, consumer mortgage loans subject to Maryland laws including COM. LAW § 12-121.  RMAC and MTGLQ also know as a matter of law that neither obtain any greater rights in the loans each acquires than what their assignors had to give them.  Their assignors were subject to COM. LAW § 12-121 and so too are RMAC and MTGLQ by accepting the assignments to each by the makers or successors to the makers of the loan.

24.    Pursuant to 12 U.S.C.A. § 2605(k)(1)(C)(E), Rushmore has duties to the Plaintiffs to (i) take appropriate steps to avoid foreclosure as part of its standard servicer's duties and (ii) comply with any other obligation(s) found by the Bureau of Consumer Financial Protection, by regulation, to be appropriate to carry out the consumer protection purposes of 12 U.S.C.A. § 2605.

10

25.     Pursuant to 12 C.F.R. § 1024.38(b)(1)(i), Rushmore is required to "[p]rovide accurate and timely disclosures to a borrower as required by [12 C.F.R. § 1024.38] or other applicable law." Pursuant to 12 C.F.R. § 1024.35(b)(5), Rushmore is not permitted to "impos[e]… a fee or charge that the servicer lacks a reasonable basis to impose upon the borrower."  It is unreasonable and a violation of its duties for Rushmore to demand inaccurate sums due to RMAC and others including MTGLQ in the form of inspection fees which are barred by COM. LAW § 12-121.

26.     The Maryland Mortgage Fraud Protection Act, MD. CODE ANN., REAL PROP. § 7-401, *et seq.*, establishes a statutory duty upon Rushmore, MTGLQ, and RMAC to disclose to mortgage borrowers and homeowners the material information with respect to the mortgage lending process which includes those fees and costs which they are permitted to charge borrowers. *Ademiluyi v. PennyMac Mortgage Inv. Trust Holdings I, LLC*, 929 F. Supp. 2d 502, 531 (D. Md. 2013); *Castle v. Capital One, N.A.*, No. CIV.A. WMN-13-1830, 2014 WL 176790, at *5 (D. Md. Jan. 15, 2014; *Stovall v. SunTrust Mortgage, Inc.*, No. CIV.A. RDB-10-2836, 2011 WL 4402680 (D. Md. Sept. 20, 2011).  In this case, Rushmore, RMAC  and MTGLQ have duties to disclose to the Plaintiffs that they were barred by Maryland law from charging property inspection fees but instead of doing so they concealed that fact from the Plaintiffs.

27.     Rushmore's, RMAC's, and MTGLQ's knowledge is also represented by the standard and uniform Deeds of Trust securing RMAC's and MTGLQ's interest in the home and properties of the Named Plaintiffs and putative class members which they claim to be the assignees standing in the shoes of the makers of the loan.

28.     15 U.S.C.A. § 1639g provides: "A creditor or servicer of a home loan shall send an **accurate** payoff balance within a reasonable time, but in no case more than 7 business days, after

the receipt of a written request for such balance from or on behalf of the borrower" (emphasis added).  In addition, 12 C.F.R. § 1026.36(c)(3) provides that: "Payoff statements. In connection with a consumer credit transaction secured by a consumer's dwelling, **a creditor, assignee or servicer, as applicable, must provide an accurate statement of the total outstanding balance that would be required to pay the consumer's obligation in full as of a specified date**. The statement shall be sent within a reasonable time, but in no case more than seven business days, after receiving a written request from the consumer or any person acting on behalf of the consumer. When a creditor, assignee, or servicer, as applicable, is not able to provide the statement within seven business days of such a request because a loan is in bankruptcy or foreclosure, because the loan is a reverse mortgage or shared appreciation mortgage, or because of natural disasters or other similar circumstances, the payoff statement must be provided within a reasonable time" (emphasis added).

29.     On August 31, 2006, Mr. and Mrs. Flournoy acquired the Property as their home for their family.  To finance the transaction they took out a purchase money mortgage loan ("Loan") in the amount of $263,000.00 with Bank of America, NA ("BANA") that was secured by a Deed of Trust (Book, 26352, Page 248) recorded in the land records for Prince George's County, Maryland.  The recorded and standard Deed of Trust agreed to by BANA and the Plaintiffs agreed that "Lender may not charge fees that are expressly prohibited by this Security Agreement or by Applicable Law."  DOT at ¶ 14.  The standard and uniform definition of the term "Applicable Law" agreed to by BANA and the Plaintiffs was defined to "mean[] all controlling applicable federal, state, and local statutes, regulations, ordinances and administrative rules and orders (that have the effect of law) as well as all applicable final, non-appealable judicial opinions."  DOT at ¶ I of the Definitions Section.

30.     On or about February 1, 2016, the servicing rights of Mr. and Mrs. Flournoy's mortgage, which had been taken out by the Plaintiffs on August 31, 2006, were transferred to Rushmore. At that time, Mr. and Mrs. Flournoy's mortgage loan was already in default due to loss of employment income.

31.     On or about March 7, 2016, ownership of the Flournoy Mortgage was transferred from Bank of America to RMAC. Mr. and Mrs. Flournoy's mortgage loan at that time was already in default due to loss of employment income.  This change in ownership was memorialized in an Assignment of Mortgage/Deed of Trust ("Flournoy Assignment") recorded in the land records for Prince George's County, Maryland (Book 38055, Page 196).   In the Assignment BANA "assign[ed] and transfer[red]…all its right, title and interest in and to the [Deed of Trust]…recorded on November 02, 2006 as Instrument No. ---, in LIBER: 26352, at FLOLIO: 248."

32.     As a result of the recorded Flournoy Assignment to RMAC, RMAC assumed and accepted the duties of the original maker of the Loan—i.e. BANA—and was entitled to no greater rights than BANA had to give it. REAL PROP. § 2-103.   Maryland law has also long recognized that mortgage assignees step into the shoes of their assignors and do not obtain any greater rights than their assignors had to give them. *Thompkins v. Mountaineer Investments, LLC*, 94 A.3d 61, 74 (2014)("Maryland courts have long employed shoe imagery in describing the status of an assignor. *See, e.g., Textor v. Orr,* 38 A. 939 (1897); *Annan v. Houck,* 4 Gill 325, 328, 45 Am. Dec. 133 (1846); *Kemp's Ex'x v. M'Pherson,* 7 H. & J. 320, 336 (1826)").

33.     Finally, just last year the Court of Appeals recognized the importance of mortgage assignees like RMAC and MTGLQ in making mortgage loans:

13

> This "mortgage marketplace," or "mortgage industry," encompasses a "primary and secondary mortgage market" that requires securitization. Robin Paul Malloy, *Mortgage Market Reform and the Fallacy of Self-Correcting Markets*, 30 Pace L. Rev. 79, 82 (2009). After a typical home loan and mortgage, the mortgage lenders often "wish to sell the mortgages that they originate." *Id.* at 95. The secondary mortgage market serves this exact purpose by creating "a market for primary mortgages[.]" *Id.* at 96. Specifically, the secondary mortgage market "enhances liquidity, reduces risk by diversifying the primary lender's investment portfolio, and increases the available funds for lending by recharging the assets of the primary lender." *Id.* at 95–96. The secondary mortgage market intermediaries "buy and sell loans and loan participations, as well as package loans into pools for securitization." *Id.* at 96.

*Blackstone v. Sharma*, 191 A.3d 1188, 1217–18 (2018), <u>reconsideration denied</u> (Oct. 3, 2018).

34.    In March of 2016, Mr. and Mrs. Flournoy's regular monthly payment was $989.40.

35.    On May 12, 2016, Rushmore sent Mr. and Mrs. Flournoy a letter notifying them that their mortgage was in default and offering a reinstatement payment plan. The letter stated that $10,963.02 was needed to reinstate the mortgage, and "This amount includes all delinquent payments, late charges, foreclosure fees, attorney fees and costs, real property taxes, property insurance premiums, and valid liens against the property that we have paid to protect our interest in your property, and other expenses that we have actually paid to protect our interest in your property, which is the collateral for your loan." As part of Rushmore's unfair and deceptive practices, the letter concealed all details of how much of the $10,963.02 was allegedly past-due principal and interest, and how much was for specific various fees and costs.

36.    Mr. and Mrs. Flournoy received a similar unfair and deceptive letter dated February 9, 2017, except the amount to reinstate rose to $24,013.82. The February 9, 2017 letter included the same language about the amount to reinstate including fees and costs, and the letter again concealed how much of the $24,013.24 was past-due principal and interest, and how much was

14

the various fees and costs. The $24,013.24 statement shocked Mr. and Mrs. Flournoy because the January 2017 mortgage statement stated that only $13,029.63 was due, and the February 2017 mortgage statement stated that only $13,746.50 was due.

37.     In or around February of 2017, Mr. and Mrs. Flournoy's household income increased and they asked Rushmore for assistance in redeeming a current status on their mortgage.

38.     On February 9, 2017, Rushmore offered Mr. and Mrs. Flournoy a repayment plan that Mr. and Mrs. Flournoy relied upon and signed the same day. Rushmore also counter-signed the repayment plan on February 9, 2017. This repayment plan stated that $24,013.82 was owed, even though the January 2017 mortgage statement stated that only $13,029.63 was due, and the February 2017 mortgage statement stated that only $13,746.50 was due.

39.     Even though Mr. and Mrs. Flournoy received two mortgage statements from Rushmore in February of 2017 that varied by more than $10,000, in an effort to mitigate the situation, Mr. and Mrs. Flournoy continued to try and work with Rushmore to bring their account current to the best of their ability and made payments to Rushmore to demonstrate their reliance to its representations to them.

40.     Per the February 2017 repayment plan, Mr. and Mrs. Flournoy made a $3,000 down payment on February 24, 2017 and paid an additional $1,752 on March 31, 2017.

41.     Mr. and Mrs. Flournoy continued to make payments pursuant to Rushmore's repayment plan in further reliance to its representations to them, but based on Rushmore's pattern of churning unlawful and otherwise improper fees to the Flournoy's account, Mr. and Mrs. Flournoy struggled to bring their mortgage account current.

42.     Due to frustrations with Rushmore's inconsistent billing and phantom fees, and the fact that Rushmore accused Mr. and Mrs. Flournoy of defaulting on their payment plan, Mrs.

Flournoy filed complaints with the Better Business Bureau (BBB) and Consumer Financial Protection Bureau ("CFPB") on or about May 31, 2017.

43.     Rushmore responded to the BBB and CFPB complaints in a June 9, 2017 letter, which it intended the Flournoys to rely as well as the CFPB, where it completely ignored the inconsistent billing issues and only recited what it purported to be the Flournoys payment history and repayment plans. The only part of the response letter that seemed like it may have addressed the excessive fees and inconsistent billing issues is where it stated: "On May 25, 2017, Rushmore sent you a letter advising that the investor had agreed to reinstate the Repayment Plan, However, the foreclosure process had resumed and additional fees had been added to the loan." Not only did the June 9, 2017 response letter fail to mention how much those foreclosure fees were, it also failed to state the basis for how these were calculated and from where they were authorized to be imposed.

44.     Even though Rushmore refused to inform Mr. and Mrs. Flournoy of any specifics relating to recoverable corporate advances and foreclosure fees and continued to conceal that information from Mr. & Mrs. Flournoy, based on Rushmore's June 9, 2017 response letter, on information and belief and in hindsight based on Rushmore's later admissions to the Plaintiffs and publicly in the *Banks* litigation as discussed herein, a significant portion of recoverable corporate advances is actually disguised attorney's fees that were not reasonably imposed on Mr. & Mrs. Flournoy's account.

45.     Attached to the June 9, 2017 response letter was the May 25, 2017 unsigned repayment plan which stated $5,204.82 in "corporate advances."

46.     Also in Rushmore's June 9, 2017 BBB and CFBP response, Rushmore stated that "Rushmore resumed the foreclosure proceedings which resulted in additional foreclosure fees."

16

Upon information and belief, Rushmore deceptively disguised the foreclosure "fees" and related attorney's fees as "recoverable corporate advances" and "corporate advances" on their statements. This belief is based on Rushmore's recent admissions in the *Banks* litigation as discussed herein

47.     Even though Rushmore did initiate foreclosure proceedings against the Plaintiffs in November of 2016, those proceedings cannot justify the $7,069.78 in "recoverable corporate advances" claimed in Mr. and Mrs. Flournoy's July 2017 mortgage statement (and many other mortgage statements). The relevant foreclosure case had little or no activity and it would be unreasonable to impose fees and costs not permitted under the law or even incurred since little or no activity took place.

48.     In fact, Rushmore had no right to commence the November 2016 foreclosure case since it had not exhausted all loss mitigation options available to Mr. & Mrs. Flournoy before commencing the action and under Federal and State law it therefore had no right to commence the case and therefore it had no right to impose on the Flournoy's mortgage account with attorney fees until it had exhausted its duties under the law to pursue alternatives to foreclosure.  *See e.g.* 12 U.S.C.A. § 2605(k)(1)(C)(E).

49.     Rushmore's statement in its June 9, 2017 BBB and CFBP response that it "resumed the foreclosure proceedings" was also untrue because Rushmore never took any further action in its foreclosure case against Mr. and Mrs. Flournoy after January 23, 2017, further supporting Plaintiffs' contention that the attorneys' fees disguised as recoverable corporate advances are excessive, unearned, unreasonable, and unlawful.

50.     On October 11, 2017, Mr. and Mrs. Flournoy received a statement from Rushmore stating that they owed $1,433.74 on their mortgage account. Because Mr. and Mrs. Flournoy made a payment of $1,963.00 only days prior, they thought that they had finally caught up with their

mortgage. Shortly thereafter, Mr. and Mrs. Flournoy made a payment of $720 which at the time was their "regular" monthly payment amount (of principal and interest). One month later, on November 9, 2017, Mr. and Mrs. Flournoy received a statement from Rushmore stating that they owed $8,503.52 to "reinstate" the mortgage account.  According to the statement, $7,069.78 of the reinstatement was attributable to "Recoverable Advances." The November 9, 2017 statement devasted both plaintiffs and caused them frustration, and anger, and that despite their best efforts Rushmore was simply going to churn its accounting of their loan to impose more penalties and fees on their account.

51.     In 2017, even though their regular monthly payment was less than a thousand dollars, Mr. and Mrs. Flournoy made monthly payments of $1,752 and $1,963 pursuant to two different Rushmore payment plans. On February 24, 2017 Mr. and Mrs. Flournoy paid $3,000 as a "down payment" on one payment plan, then on May 30, 2017, Mr. and Mrs. Flournoy paid another $3,000 for another "down payment" on the next payment plan. Mr. and Mrs. Flournoy struggled to make these extra payments, but they trusted that Rushmore was dealing with them in good faith. In October of 2017, with Mr. and Mrs. Flournoy saw that they owed under $2,000, they believed that all their hard work was paying off, only to be crushed by another large, unexplained, and unlawful "fee" which increased their November 2017 payment to a staggering $8,503.52.

52.     On January 12, 2018, Mr. and Mrs. Flournoy sent a payment of $1,706.27 to Rushmore. That payment was returned by Rushmore.

53.     After January 12, 2018, Mr. and Mrs. Flournoy received a statement dated January 11, 2018 from Rushmore stating that $3,685.07 was due by February 1, 2019. In reliance to the representation, Mr. and Mrs. Flournoy paid $3,685.07 on February 1, 2019, but that payment was returned by Rushmore.

18

54.     On or about January 31, 2018, in an effort to utilize the protections afforded to consumers by Congress, Mr. and Mrs. Flournoy wrote to Rushmore pursuant to 12 CFR §1026.36(c)(3) requesting a payoff statement. Included in this request, Mr. and Mrs. Flournoy also requested an explanation of the $7,069.78 of "corporate advances" Rushmore claimed was due from them.

55.     Rushmore received that correspondence by certified mail at the address it designated to Mr. and Mrs. Flournoy and other borrowers to receive such correspondence.

56.     On or about February 12, 2018, Rushmore provided an incomplete response to Mr. and Mrs. Flournoy's January 31, 2018 correspondence indicating that it had not performed a reasonable investigation. Rushmore did not address the "corporate advances" at all in their responses.  Further, the February 12, 2018 response letter represented a right to collect from Mr. & Mrs. Flournoy the following fees:

- Recoverable Corporate Advances: 85.00

- Estimated Fcl Fee: 750.00

- Estimated Fcl Cost: 425.00

57.     The sums sought in the previous paragraph were not authorized fees and charges to Mr. and Mrs. Flournoy's mortgage account by Rushmore.  Further, these fees included $85.00 in property inspection fees imposed by Rushmore in violation Maryland law but Rushmore labeled those fees as "recoverable corporate advances."

58.      Upon information and belief based on the foregoing and the inconsistent statements provided by Rushmore to Mr. and Mrs. Flournoy, Rushmore has charged and represented to Mr. and Mrs. Flournoy that they owe for expenses and costs that Rushmore never incurred, and further, Rushmore inflated the costs that Rushmore actually did incur.

59.     On February 23, 2018, Mr. and Mrs. Flournoy called Rushmore in an attempt to bring their account current. A Rushmore agent finally accepted a payment of $3,807.66 to bring the Flournoys' account current.  Included in this payment were sums Rushmore allocated to property inspection fees which it was not entitled to impose or collect under Maryland law.

60.     Rushmore is the current mortgage servicer for Mr. and Mrs. Flournoy's mortgage loan which is owned by RMAC.  Rushmore became the mortgage servicer of Mr. and Mrs. Flournoy's loan on or about February 1, 2016 was the loan was in default.  As the authorized servicer for RMAC, Rushmore acts consistent with its agreements with other mortgage loan owners in all respects as it did with Mr. and Mrs. Flournoy.

61.     Rushmore's February 12, 2018 response to Mr. and Mrs. Flournoy's  January 31, 2018 payoff request included a $85.00 fee for "Recoverable Corporate Advances." Mr. and Mrs. Flournoy were confused and concerned because they saw that fee total thousands of dollars before, and they don't know how much of it they paid, nor what the fee was for.

62.     On April 6, 2018, Mr. and Mrs. Flournoy send a Request for Information pursuant to 12 CFR § 1026.36(c)(3), which asked what the $85.00 property preservation fee was for. Mr. and Mrs. Flournoy's attached a mortgage statement from January 20, 2017 which had a $85.00 fee for "Prop Preservation," and the Request for Information asked whether they have to pay property preservation fees.

63.     Pursuant to 12 C.F.R. § 1024.36(d), Rushmore was obligated to provide a written response to Mr. and Mrs. Flournoy's April 6, 2018 Information Request within 30 business days, or May 7, 2018.

64.     On May 17, 2018, Rushmore sent an untimely response to Mr. and Mrs. Flournoy's April 6, 2018 Request for Information, which stated that the $85.00 corporate advance "is a

processing fee for property registration because the account was in foreclosure." Rushmore attached a copy of an invoice from Safeguard Properties, a company that has a contract with Rushmore to provide inspection services upon Rushmore's request.

65.     Upon Rushmore's request, Safeguard Properties inspects properties and follows a script provided by Rushmore, reporting back to Rushmore information like grass length, yard debris, and other information reflecting the general condition of the property.

66.     In addition to the January 20, 2017 mortgage statement that clearly states an $85.00 was for "Prop Preservation," Mr. and Mrs. Flournoy also have a June 6, 2017 Customer Account Activity Statement that includes at least 16 "property preservation" fees that range from $1.50 to $90.00. Each of these fees is a property inspection fee charged in violation of Maryland law.  These fees were charged, imposed, and collected on a variety of dates including May 22, 2017, February 24, 2017, February 17, 2017, January 24, 2017, December 29, 2016, November 30, 2016, May 10, 2016, April 11, 2016, and February 29, 2016.

67.     In the *Banks* litigation, Safeguard provided sworn testimony concerning the fees and charges related to property inspections it performs on behalf of Rushmore.  *See e.g.* Exhibit 23 to Doc. 44 in *Banks v. Rushmore*, Case No. 444995 that is published in the Circuit Court for Montgomery County.  Specifically, Safeguard's corporate designee admitted as follows:

  a.  Rushmore has a contractual relationship with Safeguard to conduct visual and contact inspections of the borrower's properties on behalf of Rushmore.

  b.  Safeguard's inspectors answer scripts on a mobile device which create work order updates.

  c.  The inspection scripts utilized by Safeguard on behalf of Rushmore ask the inspector to look and visual determine if the property being inspected has any

broken glass, determine if any of the doors or windows are broken, observe if there is any debris on the property being inspected, take visual pictures of the property being inspected

d. The inspection scripts utilized by Safeguard on behalf of Rushmore do not determine if any repairs or alternations of the property need to occur.

e. The inspections performed by Safeguard on behalf of Rushmore do not involve licensed professionals (i.e. appraisers, etc.).

f. The inspections are not performed for appraisal purposes.

g. When Rushmore desires for Safeguard to perform an inspection on its behalf it requests the inspection electronically by sending Safeguard a standard, electronic file which identifies the specific type of inspection Rushmore is requesting such as a delinquent inspection.

h. Safeguard maintains a website in the normal course of its business which Rushmore can access records about the inspections Safeguards perform on behalf of Rushmore.

i. Safeguard's records are able to identify the loan numbers and property addresses where it has conducted inspections on behalf of Rushmore.

68.    Mr. and Mrs. Flournoy's mortgage account is not satisfied.

69.    On December 23, 1999, Ms. Crowder acquired her former home and property in Baltimore County commonly known as 5003 Hollington Drive, Unite 206, Owings Mills, Maryland 21117 where she resided until shortly before the commencement of this action.   On January 10, 2008 Ms. Crowder refinanced the mortgage loan associated with the Property into a new mortgage loan for personal, consumer purposes.   That refinance loan was secured by a Deed

of Trust (Book, 26601, Page 509) recorded in the land records for Baltimore County, Maryland. The recorded and standard Deed of Trust agreed to by the original maker of Ms. Crowder's loan and Ms. Crowder agreed that "Lender may not charge fees that are expressly prohibited by this Security Agreement or by Applicable Law."  DOT at ¶ 14.  The standard and uniform definition of the term "Applicable Law" agreed to by in the Crowder DOT was defined to "mean[] all controlling applicable federal, state, and local statutes, regulations, ordinances and administrative rules and orders (that have the effect of law) as well as all applicable final, non-appealable judicial opinions."  DOT at ¶ I of the Definitions Section.

70.     On or about February 1, 2013, the servicing rights of Ms. Crowder's mortgage were transferred to Rushmore. At that time, Ms. Crowder's mortgage loan was in default at that time due to loss of income.

71.     On or about June 15, 2017, ownership of the Crowder Mortgage was transferred to MTGLQ from U.S. Bank, National Association, not in its individual capacity, but solely as trust for the RMAC Trust, Series 2012-5T when the loan was already in default due to loss of employment income.  This change in ownership was memorialized in an Assignment of Deed of Trust ("Crowder Assignment") recorded in the land records for Baltimore County, Maryland (Book 39323, Page 164).  In the Crowder Assignment RMAC Trust, Series 2012-5T "assign[ed] and transfer[red]…all its right, title and all beneficial interest in and to the [Crowder DOT] and Note…bearing the January 10, 2008."

72.     As a result of the recorded Crowder Assignment to MTGLQ, MTGLQ assumed and accepted the duties of the original maker of the Loan—i.e. EquiFirst Corporation—and was entitled to no greater rights than RMAC Trust, Series 2012-5T had to give it. REAL PROP. § 2-103. Maryland law has also long recognized that mortgage assignees step into the shoes of their

assignors and do not obtain any greater rights than their assignors had to give them. *Thompkins*, 94 A.3d at 74.

73.    Because she was trying to pursue alternatives to foreclosure, Ms. Crowder wrote to Rushmore on or about October 23, 2017 pursuant to 12 U.S.C.A. § 2605, 12 C.F.R. § 1024.41, 12 CFR §1024.35, and 12 CFR §1024.36.  In that correspondence she requested certain information and disputed certain issues related to Rushmore's servicing of her mortgage loan on behalf of MTGLQ.

74.    Rushmore partially responded to Ms. Crowder's October 23, 2017 correspondence on December 4, 2017.  In that partial response, Rushmore disclosed to Ms. Crowder for the first time that it has imposed property inspection fees onto her mortgage account.

75.    In furtherance of her hopes to avoid foreclosure and also to understand what fees and charge's Rushmore was imposing onto her mortgage account and also in reliance to its representations to her in its December 4, 2017 correspondence, Ms. Crowder wrote to Rushmore again in correspondence dated December 14, 2017 asking for more information related to the previously concealed property inspection fees.

76.    Rushmore partially responded to Ms. Crowder's December 14, 2017 correspondence on February 8, 2018.  In that partial response, Rushmore disclosed to Ms. Crowder its uniform and standard policy of imposing inspection fees onto the account of mortgage borrowers like her as follows:

> Once the account becomes delinquent, to protect our interest in the property, we may order property inspections to assure ourselves that you have complied with the terms outlined in the Security Instrument. The charges for these inspections and/or any work requirements we may incur to protect the property, as provided in your Security Instrument, may be added to the total debt that you currently owe on your mortgage.

77.    According to its December 4, 2017 correspondence, to Ms. Crowder which Rushmore intended for her to rely, from June 15, 2017, Rushmore imposed upon Ms. Crowder's mortgage account property inspection fees on at least the following occasions according to its own written correspondence dated December 4, 2017: November 14, 2017, November 2, 2017, November 1, 2017, September 27, 2017, August 25, 2017, July 26, 2017, and June 27, 2017.

78.    By virtue of the foreclosure sale of the Crowder Property on December 7, 2017, Rushmore and/or MTGLQ received all or part of the fees in the previous paragraph from the proceeds conveyed for the sale.

79.    Ms. Crowder's loan was satisfied less than six months before the commencement of this action when the foreclosure proceeds were conveyed to MTGLQ by the foreclosure trustees as authorized by the state court's judgment affirming the audit of Ms. Crowder's loan.

## CLASS ALLEGATIONS

80.    This action is properly brought on behalf of a **State Law Class** under FED. R. CIV. P. 23. Named Plaintiffs propose each individually be named representatives of the **State Law Class** and it be defined as follows:

> Those persons in the State of Maryland for whom Rushmore has acted as a mortgage servicer on behalf of another, including RMAC and MTGLQ, within the three years before the commencement of this action, and has charged their mortgage accounts with property inspection fees and costs.

81.    This action is also properly brought on behalf of a **FDCPA Class** under FED. R. CIV. P. 23. Named Plaintiffs propose Mr. & Mrs. Flournoy be named representatives of the **FDCPA Class** and it be defined as follows:

> Those persons in the State of Maryland whom Rushmore (on its behalf and on behalf of RMAC, MTGLQ, and others) (i) acquired the mortgage servicing

when the loan was in default and (ii) provided a Payoff Statement which sought to collect directly or indirectly property inspection fees in the one year before the commencement of this action.

82.     This action is also properly brought on behalf of a **Usury Class** under FED. R. CIV. P. 23. Named Plaintiffs propose each individually be named representatives of the **Usury Class** and it be defined as follows:

> Those persons in the State of Maryland (i) for whom Rushmore has (i) acted as a mortgage servicer on its behalf and on behalf of RMAC, MTGLQ, and others and others, and (ii) has charged their mortgage loan accounts with property inspection fees and costs and (iii) the mortgage loan accounts had not been satisfied more than six months before the commencement of this action.

83.     The members of the **State Law Class**, **FDCPA Class, and Usury Class** are capable of being identified without difficult managerial or administrative problems.  Rushmore tracks all information about correspondence sent to borrowers electronically and is able to identify particular categories of borrowers from its electronic systems.  In addition, RMAC, MTGLQ, and other mortgage owners also tracks certain records related to borrowers electronically and is able to identify particular categories of borrowers from its electronic systems.  RMAC, MTGLQ, and other mortgage owners also require Rushmore (and Rushmore utilizes) standard forms and procedures related to the assessment of property preservation expenses.  Safeguard also has electronic data available to it to identify all members of the putative classes for who it has conducted property inspections on behalf of Rushmore.   In addition, Rushmore's electronic systems are able to also identify all sums imposed upon mortgage borrowers related to property inspection fees and also the amounts collected from borrowers.

84.     The **State Law Class**, **FDCPA Class, and Usury Class** members are sufficiently numerous that individual joinder of all members is impractical.   According to public records, Rushmore has reported to the Office of the Commissioner of Financial Regulation that it is the servicer for hundreds of mortgage loans throughout the State of Maryland in the last three years preceding the commencement of this action.  A review of hundreds of public records in the various state courts throughout Maryland and otherwise available to the Named Plaintiffs through informal discovery demonstrates that routine practice of Rushmore to impose improper inspection fees is readily available and not in dispute.   In addition to the facts detailed above, this conclusion is exemplified by:

a.   Rushmore's sworn affidavits in state court foreclosure cases where it has attested under penalties of perjury that it routinely imposes property inspection fees onto the mortgage accounts of borrowers.  *See e.g. Nadel v. Geiselman*, Circuit Court for Worchester County, MD, Case No.  C-23-cv-19-000074 (filed 3/4/2019); *Nadel v. Brown*, Circuit Court for Baltimore County, MD, Case No.  C-15-12242 (filed 11/6/2015).

b.   Rushmore has confirmed in writing to other putative class members that its practice of imposing and collecting property inspection fees as described herein is consistent and uniform practice.  *See e.g.* Rushmore Payoff Statement to Nathaniel Daughtry (dated 3/18/2018 demanding excessive corporate advance fees that include property inspection fees on behalf of MTGLQ); Rushmore Correspondence to Joseph Harris (dated July 9, 2018 which included a breakdown of corporate advances demanded by Rushmore from the borrowers and included sums for property inspection fees).

27

85.     There are questions of law and fact common to the **State Law Class**, **FDCPA Class, and Usury Class** which predominate over any questions affecting only individual members of the **State Law Class**, **FDCPA Class, and Usury Class** and, in fact, the wrongs alleged against Rushmore by the **State Law Class**, **FDCPA Class, and Usury Class**  members and the remedies sought by **State Law Class**, **FDCPA Class, and Usury Class** members against Rushmore are identical, the only difference being the exact monetary sum to which each **State Law Class**, **FDCPA Class, and Usury Class** member is entitled to receive from Rushmore and/or RMAC. Further, the deeds of trust governing the relationship of the each **State Law Class**, **FDCPA Class, and Usury Class** member and the Defendants expressly provide that the lender and its assignees claiming a right of successor ownership of the deeds of trust are prohibited from imposing fees barred by Maryland law including those barred by COM. LAW § 12-121.

86.     The common issues related to the **State Law Class** members include, but are certainly not limited to:

a.   Whether Rushmore is entitled to demand property preservation and/or inspection fees on the mortgage accounts of the **State Law Class**;

b.   Whether this Court may declare that Rushmore's practices and policies concerning the assessment of property preservation fees against the mortgage accounts of the **State Law Class** members violate COM. LAW § 12-121(b) and *Taylor v. Friedman*, 344 Md. 572, 584 (1997).

c.   Whether Rushmore threatened or took actions against the **State Law Class** members, including actions under the color of law or which were otherwise unfair and deceptive, that it had no right to take under state law;

    d.  Whether Rushmore intended to defraud the **State Law Class** members by knowingly misrepresenting that it was entitled to assess property preservation fees against the mortgage accounts of the **State Law Class** members;

    e.  Do the inspection fees charges by Rushmore on behalf of RMAC on the Named Plaintiffs' and **State Law Class** members' accounts constitute "interest" as that term is defined in COM. LAW § 12-101(e) and therefore also constitute "usury" as that term is defined in COM. LAW § 12-101(k);

    f.  Whether by knowingly and willfully violating COM. LAW § 12-122, Rushmore is liable for the relief requested herein as exemplified by *Finch III*; and

    g.  Whether Rushmore should be ordered to disgorge money and profits that it has wrongfully collected based upon the improper assessment of property preservation and/or inspection costs on the mortgage accounts of the **State Law Class** members since such fees are not permitted in Maryland.

87.    The common issues related to the **FDCPA Class** include, but are certainly not limited to:

    a.  Whether Rushmore's inclusion of property/inspection preservation fees against the mortgage accounts on payoff statements made by it on behalf of RMAC and MTGLQ made the **FDCPA Class** members' payoff statements inaccurate.

    b.  Whether Rushmore, MTGLQ, and/or RMAC may be liable to **FDCPA Class** members pursuant to 15 U.S.C.A. § 1692e by providing inaccurate payoff statements which included sums claimed to be due from the **FDCPA Class** members for property inspection fees which are not lawful under Maryland law.

c. Whether Rushmore, MTGLQ, and/or RMAC may be liable to **FDCPA Class** members pursuant to 15 U.S.C.A. § 1692f by providing payoff statements that deceptively labeled attorney's fees as "corporate advances."

d. What is the net worth of Rushmore, MTGLQ, and RMAC for the purpose of determining statutory damages owed to the RMAC Class members.

88.    The common issues related to the **Usury Class** members include, but are certainly not limited to:

a. Whether Rushmore is entitled to demand property preservation and/or inspection fees on the mortgage loan accounts of the **Usury Class**;

b. Whether Rushmore is entitled to demand property preservation and/or inspection fees on the mortgage loan accounts of the **Usury Class** on behalf of RMAC, MTGLQ, and others;

c. Whether this Court may declare that Rushmore's practices and policies concerning the assessment of property preservation fees against the mortgage loan accounts of the **Usury Class** members violate COM. LAW § 12-121(b) and *Taylor v. Friedman*, 344 Md. 572, 584 (1997);

d. Do the inspection fees charges by Rushmore on behalf of RMAC, MTGLQ, and others on the Named Plaintiffs and **Usury Class** members' accounts constitute "interest" as that term is defined in COM. LAW § 12-101(e) and therefore also constitute "usury" as that term is defined in COM. LAW § 12-101(k); and

e. Whether Rushmore, MTGLQ, and/or RMAC are liable for statutory damages pursuant to the **Usury Class** members pursuant to COM. LAW § 12-121(a)(1)(ii) for each instance in which Rushmore has imposed upon the **Usury Class** members.

89.     Named Plaintiffs' legal and equitable claims are typical and the same or identical for each of the member of the **State Law Class**, **FDCPA Class, and Usury Class** and will be based on the same legal and factual theories identified *supra*.

90.     Rushmore's and RMAC's defenses (which defenses are denied) would be typical and the same or identical for each of the member of the **State Law Class**, **FDCPA Class, and Usury Class** and will be based on the same legal and factual theories.

91.     The Named Plaintiffs will also fairly and adequately represent and protect the interests of the **State Law Class**, **FDCPA Class, and Usury Class** members.  Named Plaintiffs have retained counsel experienced in consumer class actions including actions involving unlawful collection and mortgage servicing practices.  Named Plaintiffs do not have any interests which might cause them not to vigorously prosecute this action or are otherwise adverse to the interests of the members of the **State Law Class**, **FDCPA Class, and Usury Class**.

92.     Certification of the **State Law Class**, **FDCPA Class, and Usury Class** under FED. R. CIV. P. 23(b)(2) for the injunctive and declaratory relief sought and under (b)(3) for the damages claims  in that common questions predominate over any individual questions and a class action is superior for the fair and efficient adjudication of this controversy.  A class action will cause an orderly and expeditious administration of claims by the **State Law Class**, **FDCPA Class, and Usury Class** members, and economies of time, effort and expenses will be fostered and uniformity of decisions will be insured.

93.     The only individual questions concern the identification of the **State Law Class**, **FDCPA Class, and Usury Class** members who are entitled to any sums and profits that Rushmore is ordered to disgorge as the fruit of its unlawful activities or share in any statutory and actual damages permitted by law against Rushmore and/or RMAC. This information can be determined

31

by a ministerial examination of the Defendants' business records or other sources, which are admissible as an exception to the hearsay rule and as a statement by a party.

94.     Named Plaintiffs' claims are typical of the claims of the **State Law Class**, **FDCPA Class, and Usury Class** members.

95.     Plaintiffs will fairly and adequately protect the interests of all **State Law Class**, **FDCPA Class, and Usury Class** members in the prosecution of this action. The Named Plaintiffs are similarly situated with, and has suffered similar injuries as, the members of the **State Law Class**, **FDCPA Class, and Usury Class** they seek to represent. The Named Plaintiffs (i) feels that they has been wronged, (ii) wish to obtain redress of the wrong, and (iii) wants Defendants stopped from enriching themselves from illegal fees or otherwise perpetrating similar wrongs on others.

96.     The **State Law Class**, **FDCPA Class, and Usury Class** members have suffered damages, losses, and harm similar those sustained by the Named Plaintiffs and described above.

## COUNT I

### (Individual and Class Declaratory Judgment and Injunctive Related to the Named Plaintiffs' and State Law Class Members' Mortgage Accounts)

97.     Named Plaintiffs incorporate the foregoing allegations.

98.     Named Plaintiffs seek a declaration on their individual behalf and on behalf of the **State Law Class** members that the Defendants Rushmore and RMAC are not entitled to charge and/or collect lender's inspection fees in connection with the loans of the **State Law Class** members and Named Plaintiffs which are secured by residential real property. Com. Law § 12-121(b). *See also Taylor v. Friedman*, 344 Md. 572, 584 (1997).

99.     Defendants Rushmore, MTGLQ, and RMAC should also be enjoined from attempting to charge, demanding and/or collecting lender's inspection fees in connection with the

loans of the **State Law Class** members and Named Plaintiffs which are secured by residential real property.

100.    A declaration of law should issue ordering Defendants Rushmore, MTGLQ, and RMAC to disgorge all sums collected from the loans of the **State Law Class** members and Named Plaintiffs which are secured by residential real property as well as the profits realized therefrom.

101.    Alternatively to the proceeding two paragraphs, Named Plaintiffs seek a declaration that Defendants Rushmore, MTGLQ, and RMAC are not entitled to the assistance of any Maryland court to enforce any claim lender's inspection fees in connection with the loans of the **State Law Class** members and Named Plaintiffs which are secured by residential real property.

WHEREFORE, Named Plaintiff and **State Law Class** pray that this Court:

a.      Certify this case as a class action with the Named Plaintiffs as class representatives and their attorneys as class counsel on behalf of the **State Law Class** members described herein;

b.      Order and enter a declaratory judgment that Defendants Rushmore, MTGLQ, and RMAC are not entitled to demand, charge and/or collect lender's inspection fees in connection with the loans of the **State Law Class** members and Named Plaintiffs which are secured by residential real property.

c.      Order appropriate injunctive relief against Defendants Rushmore and RMAC to prevent further violations of law or providing benefits to each from their illegal assessments of inspection fees upon the Named Plaintiffs and **State Law Class** members, including a preliminary and permanent injunction;

c.      Order the Defendant Rushmore to disgorge all inspection costs and fees

it has collected from the Named Plaintiffs and **State Law Class** members along with prejudgment interest on any amounts awarded to **State Law Class** members in addition to its profits;

d.      Alternatively, Order and enter a declaratory judgment that Defendants Rushmore, MTGLQ, and RMAC are not entitled to the assistance of any Maryland court to enforce any claim lender's inspection fees in connection with the loans of the **State Law Class** members and Named Plaintiffs which are secured by residential real property;

e.      Award reasonable attorney's fees, litigation expenses and costs;

f.      Order appropriate declaratory relief; and

g.      Provide such other or further relief as the Court deems appropriate.

## COUNT II
### (Individual and Class Claim for Unjust Enrichment on behalf of the State Law Class and Named Plaintiffs Against Rushmore)

102.    Named Plaintiffs incorporate the foregoing allegations.  This claim for common law unjust enrichment is brought by Named Plaintiffs on behalf of the **State Law Class** against Defendant Rushmore only.

103.    Defendant Rushmore was not entitled to receive any benefit (including profits) or payments from the Named Plaintiffs and **State Law Class** members because of any so-called property inspection fees or preservation fees assessed to or capitalized to the accounts of the Named Plaintiffs and the **State Law Class** members.  Notwithstanding this prohibition, Rushmore has knowingly and willfully received and demanded benefits from its illegal and improper

34

assessment and collection of such fees which is a crime under Maryland law.  COM. LAW § 12-122.

104.     Maryland law recognizes that a claim for unjust enrichment is permitted in instances like this one where even though a claim may be covered by a contract between the parties where (i) one party breaches the contract (by charging sums now lawfully charged), (ii) the contract does not fully address a subject matter such as one party's illegal, criminal activity or (iii) there is evidence of fraud or bad faith when a party acts contrary to the law.  *Cty. Comm'rs of Caroline Cty. v. J. Roland Dashiell & Sons, Inc.*, 358 Md. 83, 100 (2000).

105.     At all times relevant and material to this action in the three years before the commencement of this action, Rushmore has known or should have known that is was not permitted to claim it was entitled to access or collect inspection fees from the Named Plaintiffs and the **State Law Class** members since the class is clearly stated on this point and its own regulator has so instructed it.

106.     Due to its knowledge, as described above, Rushmore had an appreciation that it was not entitled to receive the benefits it was collecting from the Named Plaintiffs and **State Law Class** members that flow from the property inspection fees it assessed on their accounts and sought reimbursement from RMAC, MTGLQ, and other mortgage owners for the expense.

107.     The acceptance and retention by Rushmore of any sums received as a result of the illegal property inspection fees charged by it against the Named Plaintiffs' and **State Law Class** member accounts under such circumstances is inequitable since Rushmore did not have the legal right to even demand or collect such payments in the first instance in the manner it sought to collect them—this conclusion is just and proper even though Rushmore might have otherwise collected the alleged fees in any other state since Maryland has for nearly two decades not permitted the

35

assessment of such fees and Rushmore was notified more than three years ago by its regulator that it was not entitled to charge such fees.

108.     The amounts accepted and charged by Rushmore from the Named Plaintiffs and the **State Law Class** members are liquidated amounts.

WHEREFORE, Named Plaintiffs and **State Law Class** members pray that this Court:

a.     Certify this case as a class action with the Named Plaintiffs as class representatives and their attorneys as class counsel on behalf of the **State Law Class** members described herein;

b.     Grant a money judgment and order Defendant Rushmore to disgorge and pay to the **State Law Class** members all amounts it has collected from the State Law Class members and the benefits it has realized as a result of collecting illegal fees in a sum in excess of $75,000.00;

c.     Award prejudgment interest on the amounts collected by Defendant Rushmore;

d.     Award reasonable attorney's fees, litigation expenses and costs to the extent allowed by law; and

e.     Provide such other or further relief as the Court deems appropriate.

## COUNT III
**(Individual and Class Claim pursuant to the Maryland Consumer Debt Collection Practices Act, COM. LAW, § 14-201, *et seq.* ("MCDCA") and the Maryland Consumer Protection Act, COM. LAW, § 14-201, *et seq.* ("MCPA") on behalf of the State Law Class members and the Named Plaintiffs Against Rushmore Only Concerning Rushmore's Assessment of Illegal Inspection Fees)**

109.    Named Plaintiffs incorporate the foregoing allegations.   This claim for state statutory claims under the MCPA and MCDCA is brought by Named Plaintiffs on behalf of the **State Law Class** against the Defendant Rushmore only.

110.    Defendant Rushmore is engaged in the business of collecting consumer debts secured by real property.   In furtherance of that business Rushmore claimed, directly and indirectly, that they were entitled to assess, charge, and collect from the Named Plaintiffs and the **State Law Class** members property inspection fees or preservation fees related to the **State Law Class** members' secured mortgage loans.

111.    Defendant Rushmore knowingly claimed the right to such fees under the color of law by threatening legal foreclosure based in part on the illegal fees when it knew it had no right to do so.

112.    Rushmore's acts as a debt collector violates COM. LAW § 14-202(8) which prohibits a debt collector from making any "[c]laim, attempt, or threaten to enforce a right with knowledge that the right does not exist."

113.    Rushmore's claim that Named Plaintiffs and the State Law Class members owe sums for property inspection fees or preservation fees also violates COM. LAW § 14-202(8) when the Defendant knows such fees are unlawful in Maryland.

114.    By threatening to commence and commencing foreclosure in the State of Maryland, which involves Maryland court proceedings, and indicating that it has a right to collect inspectfion fees from the Named Plaintiffs and the State Law Class members based in whole or in part on property inspection fees, Rushmore has used communication in collecting or attempting to collect a debt which improperly implies that the government or a government agency has authorized the collection effort when the government has not done so in violation of COM. LAW §14-202(9).

115. The demands by Rushmore for the improper inspection fees related to the Named Plaintiffs and State Law Class members' loans secured by real property concern "real or personal property, services, money, or credit for personal, family, or household purposes." COM. LAW § 201(b).

116. Rushmore's actions in violation of the MCDCA also constitute a *per se* violation of the MCPA pursuant to COM. LAW § 13-301(14)(iii).

117. Named Plaintiffs have been damaged as described above. The **State Law Class** members have suffered similar damages.

WHEREFORE, Named Plaintiffs and **State Law Class** Members pray that this Court:

a. Certify this case as a class action with the Named Plaintiffs as class representatives and their attorneys as class counsel on behalf of the **State Law Class** members described herein;

b. Grant a money judgment in favor of the Named Plaintiffs and the **State Law Class** members and against Rushmore for violations of the MCDCA, as described herein, in such amount as to be determined at trial and for purposes of a sum certain directly related to improper assessment of inspection fees and costs by Rushmore against the Named Plaintiffs and State Law Class members' mortgage loan accounts, subject to further discovery as to the size of the class, the amount sought on behalf of the class is in excess of $75,000.00;

c. Award reasonable attorney's fees, litigation expenses and costs pursuant to COM. LAW § 13-408; and

d. Provide such other or further relief as the Court deems appropriate.

### COUNT IV
### (Individual and Class Claim pursuant to COM. LAW § 12-121(a)(1)(ii) on behalf of the Usury Class members and the Named Plaintiffs Against Rushmore, MTGLQ, and RMAC)

118.    Named Plaintiffs incorporate the foregoing allegations.  This claim for state statutory damages pursuant to COM. LAW § 12-121(a)(1)(ii) is brought by Named Plaintiffs on behalf of the **Usury Class** against Defendants Rushmore, MTGLQ, and RMAC.

119.    The OCFR has determined, under its authority as Maryland's regulator implementing Maryland mortgage lender laws, that mortgage servicers like Rushmore may not violate COM. LAW § 12-121(b).

120.    As the owner and assignee of the Named Plaintiffs' and Usury Class members' loans, RMAC and MTGLQ stand in the shoes of its assignor(s) (or their predecessors) who made the loans to the Named Plaintiffs and **Usury Class** members and has no greater rights as the assignee than the assignors (including those who made the loans).  RMAC and MTGLQ are therefore the maker of the Named Plaintiffs' and the **Usury Class** members' by accepting the assignment of the loans and related deeds of trust.  RMAC and MTGLQ are also the makers of the loans at issue because without their participation in the marketplace no mortgage loans would be given to borrowers and their role is integral to the marketplace.  *Blackstone v. Sharma*, 191 A.3d at 1217–18.

121.    If the General Assembly had intended to exclude RMAC or MTGLQ from liability pursuant to COM. LAW § 12-121(b), it knew how to do so but did not.  *Compare* COM. LAW § 12-1026(b)(5)(i)(1)(exempting certain assignees of mortgage loans like Fannie Mae from other provisions).

122.    COM. LAW § 12-121(b) prohibits a lender from imposing property inspection fees on the Named Plaintiffs and State Law Class members after the origination of the subject loans. COM. LAW § 12-121(b) does not exempt RMAC, MTGLQ or Rushmore from its express prohibition.  Rushmore and MTGLQ are licensed Maryland mortgage lenders.

123.    Neither Rushmore, MTGLQ, or RMAC was entitled to require any charge to the mortgage loan accounts of the Named Plaintiffs and **Usury Class** members related to property inspections unrelated to the construction to a new home or repairs, alterations, or other work required by them.  Rushmore's agent Safeguard who performs the inspections subject to this action does not perform inspections related to the construction to a new home or repairs, alterations, or other work required by Rushmore related to real property.

124.    At all times relevant and material to this action in the three years before the commencement of this action, Rushmore, MTGLQ, and RMAC have known or should have known that they were not permitted to require the imposition of unauthorized inspection fees to the mortgage accounts of the Named Plaintiff and the **Usury Class** members since all persons are expected to know the law.

125.    COM. LAW § 12-114(a)(1)(ii) provides that the Defendants shall forfeit to borrowers like the Named Plaintiffs and **Usury Class** Members the sum of $500 for any violation of the subtitle including COM. LAW § 12-121(b).

126.    The Named Plaintiffs and **Usury Class** Members are entitled to the sum of $500 for each instance in which Rushmore on behalf of RMAC, MTGLQ, or any other person has imposed inspection fees against the mortgage loan accounts of the Named Plaintiffs and the **Usury Class** Members pursuant to COM. LAW § 12-121(b) whether the Named Plaintiffs or **Usury Class** members paid the assessment or not.

WHEREFORE, Named Plaintiffs and **Usury Class** members pray that this Court:

a.      Certify this case as a class action with the Named Plaintiffs as class representatives and their attorneys as class counsel on behalf of the **Usury Class** members described herein;

b.      Grant a money judgment and order Defendants Rushmore and RMAC to forfeit and pay to the Named Plaintiffs and the **Usury Class** members $500 for each violation of COM. LAW § 12-121(b) and a total sum in excess of $75,000.00;

c.      Award prejudgment interest to the Named Plaintiffs and **Usury Class** members on the statutory damages they are entitled to receive;

d.      Award reasonable attorney's fees, litigation expenses and costs to the extent allowed by law; and

e.      Provide such other or further relief as the Court deems appropriate.

### COUNT V
### (Individual and Class Claim pursuant to the Maryland Mortgage Fraud Protection Act, Real Prop. § 7-401, *et seq.* ("MMFPA") on behalf of the State Law Class members and the Named Plaintiffs Against Rushmore Only)

127.    Named Plaintiffs incorporate the foregoing allegations.  This claim for state statutory claims under the MMFPA is brought by Named Plaintiffs on behalf of the **State Law Class** against Rushmore only.

128.    The MMFPA, REAL PROP. § 7-401, *et. seq.*, governs the relationship between Rushmore on the one hand and the Named Plaintiffs and the **State Law Class** members on the other.

41

129.    REAL PROP. § 7-401(c) provides: "'Homeowner' means a record owner of residential real property." The Named Plaintiffs and the **State Law Class** members are the record owners of the real properties in question and are therefore Homeowners entitled to the protections of the MMFPA.

130.    REAL PROP. § 7-401(e) provides: "Mortgage lending process… include[s] [t]he solicitation, application, origination, negotiation, servicing, underwriting, signing, closing, and funding of a mortgage loan."

131.    FIN. INST. § 11-501(l) provides: "'Mortgage loan' means any loan or other extension of credit that is: (i) secured, in whole or in part, by any interest in residential real property in Maryland; and (ii) for personal household or family purposes, in any amount."

132.    The MMFPA works to protect the interests of all parties to mortgage transactions in Maryland from misstatements, misrepresentations and omissions. In this instance, the MMFPA works to protect borrowers like the Named Plaintiffs and **State Law Class** members from mortgage companies and so-called professionals like Rushmore to ensure a level, fair playing field between all borrowers and professionals.  For example, other mortgage professionals who do not access mortgage borrowers like the Named Plaintiffs and the **State Law Class** members with inspection fees are harmed by Rushmore's violations and false statements and omissions made herein just as the Plaintiffs are harmed.  In other words, honest mortgage professionals who follow the law are harmed by Rushmore's improper assessment and collection of fees and costs they are not entitled to under Maryland law.

133.    Named Plaintiffs and the **State Law Class** members are homeowners in the Mortgage Lending Process as defined by the MMFPA since the actions in dispute in this lawsuit involve the negotiation and servicing of residential mortgage loans with Rushmore.

42

134.   REAL PROP. § 7-401(d) provides: "Mortgage fraud" means any action by a person made with the intent to defraud that involves:

> Knowingly making any deliberate misstatement, misrepresentation or omission during the mortgage lending process with the intent that the misstatement, misrepresentation or omission be relied on by a mortgage lender, borrower or any other party to the mortgage lending process;

> Knowingly using or facilitating the use of any deliberate misstatement, misrepresentation, or omission during the mortgage lending process with the intent that the misstatement, misrepresentation, or omission be relied on by a mortgage lender, borrower, or any other party to the mortgage lending process;

> Receiving any proceeds or any other funds in connection with a mortgage closing that the person knows resulted from a violation of [§ 7-401(d)(1) or (2)];

> Conspiring to violate any provisions of [§ 7-401(d)(1), (2), or (3)]…

135.   Rushmore's knowing conduct and intention to defraud Named Plaintiffs and the **State Law Class** members (and the public) is demonstrated by its dishonest statements and omissions and willful refusal to know the true facts exemplified *supra.*

136.   Rushmore's intent to defraud the Named Plaintiffs and the **State Law Class** members is also exemplified by its reckless disregard to the express prohibition of the assessment of property inspection fees under long-standing Maryland law.

137.   As a result of Rushmore's knowingly deceptive and untrue communications and misstatements and omissions, Named Plaintiffs and the **State Law Class** members have suffered economic and noneconomic damages described *supra.*

WHEREFORE, Named Plaintiffs and **State Law Class** Members pray that this Court:

a.   Certify this case as a class action with the Named Plaintiffs as class representatives

and their attorneys as class counsel on behalf of the **State Law Class** members described herein;

b. Grant a money judgment in favor of the Named Plaintiffs and the **State Law Class** members for violations of the MMFPA, as described herein, in such damage amount as to be determined at trial and for purposes of a sum certain directly related to the of a sum certain directly related to improper assessment of inspection fees and costs by Rushmore against the Named Plaintiffs and State Law Class members' mortgage loan accounts by Rushmore against the Named Plaintiffs and State Law Class members, subject to further discovery as to the size of the class, the amount sought on behalf of the class is in excess of $75,000.00;

c. Grant a further money judgment for statutory damages to the Named Plaintiffs and the State Law Class members pursuant to REAL PROP. § 7-406(c) against Rushmore;

d. Award reasonable attorney's fees, litigation expenses and costs pursuant to REAL PROP. § 7-406(b); and

e. Provide such other or further relief as the Court deems appropriate.

### COUNT VI
**(Individual and Class Claim pursuant to the FDCPA, on behalf of the FDCPA Class members and the Named Plaintiffs Against All the Defendants, or in the alternative, solely Rushmore)**

138.     Named Plaintiffs incorporate the foregoing allegations.  This claim for federal statutory claims under the FDCPA is brought by Named Plaintiffs on behalf of the **FDCPA Class** against the Defendants jointly.   In the alternative, if the Court finds that the FDCPA claims presented herein may only be asserted against Rushmore, Named Plaintiffs assert this claim solely against Rushmore.

139.    15 U.S.C.A. § 1692e provides (in pertinent part):

> A debt collector may not use any false, deceptive, or misleading representation or means in connection with the collection of any debt. Without limiting the general application of the foregoing, the following conduct is a violation of this section:
>    (2) The false representation of--
>    (A) the character, amount, or legal status of any debt; or
>    (B) any services rendered or compensation which may be lawfully received by any debt collector for the collection of a debt.
>    (10) The use of any false representation or deceptive means to collect or attempt to collect any debt or to obtain information concerning a consumer.

*Id*.

140.    The charge of property inspection fees to the Plaintiffs' and Class' Mortgage Loans is a false representation of the character and amount of fees due and owing.

141.    The deceptive labeling of attorney's fees as "recoverable corporate advances" and "corporate advances" is a false representation of the character of the debt, and a false representation of the services rendered which may be lawfully received by a debt collector for the collection of debt.

142.    Defendants, through their agents, representatives and/or employees acting within this scope of their authority violated 15 U.S.C. §1692e & §1692f.

143.    Charging the unlawful property inspection fees and demanding the money from consumers causes a concrete injury, harming each consumer in the putative class.

WHEREFORE, Named Plaintiffs and **FDCPA Class** Members pray that this Court:

a.    Certify this case as a class action with the Named Plaintiffs as class representative and their attorneys as class counsel on behalf of the **FDCPA Class** members described herein;

45

b. Grant a money judgment in favor of the Named Plaintiffs and the **FDCPA Class** members for violations of FDCPA, as described herein, in such damage amount as to be determined at trial and for purposes of a sum certain directly related to the of a sum certain directly related to improper assessment of inspection fees and costs by Defendants against the Named Plaintiffs and **FDCPA Class** members' mortgage loan accounts by Defendants against the Named Plaintiffs and **FDCPA Class** members, subject to further discovery as to the size of the class, the amount sought on behalf of the class is in excess of $75,000.00;

c. Grant a further money judgment for statutory damages to the Named Plaintiffs and the FDCPA Class members equal to $500,000.00 or 1% of Defendants' net worth, as provided by 15 U.S.C. § 1692k(a)(2)(B);

d. Award reasonable attorney's fees, litigation expenses and costs pursuant to 15 U.S.C. § 1692k(a)(3); and

e. Provide such other or further relief as the Court deems appropriate.

## COUNT VII
**(Individual Claim pursuant to the Maryland Consumer Debt Collection Practices Act, COM. LAW, § 14-201, *et seq.* ("MCDCA") and the Maryland Consumer Protection Act, COM. LAW, § 14-201, *et seq.* ("MCPA") on behalf of the Named Plaintiffs Only Against Rushmore Only Concerning It's Improper Loss Mitigation Practices Concerning Mr. & Mrs. Flournoy's Loan)**

144.   Named Plaintiffs incorporate the foregoing allegations.   This claim for state statutory claims under the MCPA and MCDCA is brought by Mr. & Mrs. Flournoy on their behalf individually against the Defendant Rushmore only.

145.    The mortgage servicing and foreclosure practices as set forth herein of Rushmore against Mr. & Mrs. Flournoy are governed by the Maryland Consumer Protection Act, COM. LAW § 13-101 *et. seq.* ("MCPA").

146.    Section 13-303 prohibits unfair or deceptive trade practices in the extension of consumer credit or collection of consumer debts.  The servicing of a mortgage loan and transfer of a mortgage loan to another based upon false and otherwise unfair and deceptive statements, representations, and omissions discussed herein involves both the extension of credit and the collection of debts.

147.    The MCPA defines unfair or deceptive trade practices to include, inter alia, the following: (a) False, falsely disparaging, or misleading oral or written statement, visual description, or other representation of any kind which has the capacity, tendency, or effect of deceiving or misleading consumers; and (b) Failure to state a material fact if the failure deceives or tends to deceive.

148.    By engaging in the acts and omissions set forth above as concerning, by making the misrepresentations set forth above, and by failing to disclose the identity of "corporate advances," Rushmore has committed unlawful or deceptive trade practices in violation of the MCPA.  Sec. 13-301(1) and (3) and Sec. 13-303(4).

149.    Rushmore's conduct, as set forth above, had the capacity, tendency or effect of deceiving Mr. & Mrs. Flournoy, who in fact was deceived and misled, causing injury and loss through the unfair and deceptive acts and omissions discussed above which caused injury and losses.

150.    Rushmore's conduct, as set forth above, caused emotional distress and mental anguish in the forms of undue stress, anger, and frustration to both Mr. & Mrs. Flournoy, and

arguments between both Mr. & Mrs. Flournoy. In addition to the stress, anger, frustration, and arguments, Plaintiff Jeimy Flournoy experienced anxiety, loss of sleep, and headaches due to Rushmore's conduct. But for Rushmore's unfair and deceptive conduct as set forth above, Mr. & Mrs. Flournoy would not have experienced the emotional distress described herein.

151.    Mr. & Mrs. Flournoy's' individual damages as alleged herein were proximately caused by Rushmore's actions including damages for emotional distress and mental anguish suffered with or without accompanying physical injury as well as those damages described *supra*.

152.    Rushmore also acted as a collector under the MCDCA by attempting to collect upon an alleged, Mr. & Mrs. Flournoy's mortgage debt arising out of a consumer transaction—their mortgage loan used to acquire and improve their home and Property.  COM. LAW §14-201(b).

153.    Rushmore's attempt to collect against Mr. & Mrs. Flournoy in a manner in which it knew it did not have the right to do by knowingly assessing excessive and unearned fees on the Flournoys' mortgage account for foreclosure attorney fees.

154.    By violating Maryland laws and its own duties under Maryland law and by utilizing methods and means of collection not permitted by law or the relationship governing the parties, Rushmore also violated the MCDCA.  By such acts and omissions Rushmore has claimed, attempted, or threatened to enforce a right with knowledge that the right does not exist, in violation of the MCDCA.  COMM. LAW §14- 202(8).

155.    Mr. & Mrs. Flournoy are therefore entitled to their damages and losses described *supra* which have proximately resulted from Rushmore's actions in violation of the MCDCA.  MD. CODE ANN., COM. LAW, § 14-203.

156.    Rushmore's violations of the MCDCA, described herein, are also *per se* violations of the MCPA pursuant to § 13-301(14)(iii) of the Commercial Law Article.

157.    Mr. & Mrs. Flournoy reasonably relied upon the material acts and actions of Rushmore as described *supra*.

WHEREFORE, Mr. & Mrs. Flournoy respectfully requests the Court enter judgment pursuant to the MCPA and MCDCA in favor of Mr. & Mrs. Flournoy individually and against Rushmore as follows:

a.      Grant a money judgment in favor of Mr. & Mrs. Flournoy against Rushmore for violations of the MCDCA and MCPA, as described herein, in such amount as to be determined at trial and for purposes of a sum certain directly related to improper loss mitigation and threats of foreclosure by Rushmore against the Named Plaintiffs in the sum of $17,000 for Mr. Flournoy and $17,000 for Mrs. Flournoy;

b.      Award reasonable attorney's fees, litigation expenses and costs pursuant to COM. LAW § 13-408; and

c.      Provide such other or further relief as the Court deems appropriate.

[SIGNATURES ON THE NEXT PAGE]

Respectfully Submitted,

 _//s//Ingmar Goldson_
Ingmar Goldson, Esq.  (Bar No. 19024)
The Goldson Law Office
1734 Elton Rd. Suite 210
Silver Spring, MD 20903
Phone (240) 780-8829
igoldson@goldsonlawoffice.com

_//s//Phillip R. Robinson_
Phillip R. Robinson (Bar No. 27824)
Consumer Law Center LLC
8737 Colesville Road, Suite 308
Silver Spring, MD  20910
Phone (301) 448-1304
phillip@marylandconsumer.com

*Counsel for the Plaintiffs and State Law Class, Usury Class & FDCPA Class Members*

## CERTIFICATE OF SERVICE

I hereby certify a copy of the foregoing and attached exhibits were sent to all counsel of record through the Court's CM/ECF system when filed with the Court.  Courtesy copies will also be delivered to the Court within 48 business hours of this filing.

A copy of the foregoing and attached exhibits will also be delivered along with a writ of summons from and the documents previously filed in this action to Defendant MTGLQ Investors LP through its resident agent.

_//s//Phillip R. Robinson_
Phillip R. Robinson