**IN THE UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF MARYLAND**
**(Southern Division)**

**KEVIN AND JEIMY FLOURNOY**

And

**TINAEE D. CROWDER**                                    Case No.  8:19-cv-00407-PX

  *On their behalf and on behalf of three*
  *classes of similarly situated  persons*

  Named Plaintiffs,

v.

**RUSHMORE LOAN MANAGEMENT**
**SERVICES LLC,** ***et al.***

  Defendants.

---

**PLAINTIFFS' MEMORANDUM IN SUPPORT OF THEIR MOTION TO CERTIFY**
**THREE CLASSES AGAINST DEFENDANTS, APPOINT NAMED PLAINTIFFS AS**
 **CLASS REPRESENTATIVES AND APPOINT CLASS COUNSEL**

Plaintiffs Kevin and Jeimy Flournoy and Tinaee Crowder, by and through counsel, and

pursuant to Fed. R. Civ. P. 23, on behalf of themselves and three proposed classes of persons

similarly situated, submits this Memorandum in support of their Motion to Certify Three

Classes, Appoint Named Plaintiffs as Class Representatives and Appoint Class Counsel. All of

the Counts supporting the Plaintiffs' Motion are taken from the allegations of the Amended

Class Action Complaint, the Declarations of Attorneys Phillip Robinson and Ingmar Goldson,

and a review of various public records by attorney Michael G. Morin.

1

I.      **INTRODUCTION & BACKGROUND**

The putative class claims in this case arises from a course of conduct by Defendant, Rushmore Loan Management Services LLC ("Rushmore"), and its agents and privies including U.S. Bank National Association, As Trustee For The RMAC Trust, Series 2016-CTT ("RMAC"), and MTGLQ Investors, LP ("MTGLQ"), that has led to repeated, knowing violations of federal and state consumer protection laws. *See e.g.* AC at ¶¶ 3-12, 22-33, 44-47, 56-57, 61-67, 69-79, 83-84. Mortgage actors in Maryland, like the Defendants, are barred as a matter of law from imposing upon or even collecting so-called property inspection or preservation fees from borrowers like the Named Plaintiffs and the putative class members represented in this action. COM. LAW § 12-121(b). *See also Taylor v. Friedman*, 344 Md. 572, 584 (1997). The two administrative agencies in Maryland charged with enforcement of Maryland's mortgage lending and consumer protection laws agree with the Named Plaintiffs' legal analysis in this action that the property inspection fee bar in COM. LAW § 12-121(b) applies to mortgage actors like Rushmore. *See e.g.* AC at ¶¶ 9-10. *See also* Exhibits 2-3 to the AC.[1]  It

---

[1]     In candor to the Court it is true that two different judges in the Circuit Court for Montgomery County have applied claims related to COM. LAW § 12-121(b)'s bar on property inspections differently. In one instance, i.e. *Kemp v. Seterus* (ECF. 7-4), the judge applied COM. LAW § 12-121(b) narrowly and without any regard to the administrative agencies positions whatsoever and in the second instance the judge granted summary judgment as to liability against Rushmore based in part on its violation of COM. LAW § 12-121 (AC at ¶ 3). Neither of these decisions are binding on the Court. However, the decision in *Taylor* is binding on the Court until it is reversed by the Court of Appeals. *Fid. Union Tr. Co. v. Field*, 311 U.S. 169, 177 (1940)("The highest state court is the final authority on state law"); *Castillo v. Emergency Med. Assocs., P.A.*, 372 F.3d 643, 648 (4th Cir. 2004)(recognizing that federal courts are bound to the decisions regarding state law "the highest state court"); *Sherby v. Weather Bros. Transfer Co.*, 421 F.2d 1243, 1244 (4th Cir. 1970)(holding that federal courts are bound by a "state statute or a controlling decision directly in point…"); *Holdren v. Legursky*, 16 F.3d 57, 62 (4th Cir. 1994)("We are essentially bound to follow the highest state court's interpretation of legislative intent…").

should be noted that it is a crime for the Defendants to impose property inspection fees and charges onto the accounts of mortgage borrowers (COM. LAW § 12-122) and the Court of Appeals recently held in *LVNV Funding LLC v. Finch*, No. 46, SEPT.TERM, 2018, 2019 WL 1760468, at *11 (Md. Apr. 22, 2019) that violations of a similar criminal statute "unmistakably and unambiguously" means a consumer can pursue claims like the Named Plaintiffs and putative class members are pursing here.

Writing for the Court of Appeals, Judge Rodowsky explained in *Taylor* the scope of the bar in COM. LAW § 12-121 was broad:

> Lender argues that the language in § 12–121, "in connection with a loan," is ambiguous, in that it may deal only with the time of loan closing, or its scope may be broader. This effort to establish an ambiguity is designed to open the door for legislative history. Alternatively, Lender contends that a statute must always be construed in accordance with its purpose. Lender cites *Blaine v. Blaine,* 336 Md. 49, 64, 646 A.2d 413, 420 (1994), for the proposition that "[e]ven where the language of a statute is plain and unambiguous, [the Court] may look elsewhere to divine legislative intent; the plain meaning rule is not rigid and does not require [the Court] to read legislative provisions in rote fashion and in isolation." In accordance with the latter approach to statutory construction, we now turn to the legislative purpose.
>
> There is no question but that the background for the creation of the Commission was concern over real property closing costs. Commission Report at 3. The Commission's recommendations, however, and the statutes that were based thereon, were not limited exclusively to closing costs. Chapter 628 of the Acts of 1986 enacted a prohibition against a Lender's imposing "a collection fee or service charge on the maintenance of an escrow account on a first mortgage or first deed of trust." 1986 Md. Laws at 2206, currently, with amendments, CL § 12–109.2. *See also* CL § 12–1026(e).
>
> The prohibition against charging a service fee to maintain an escrow account is a continuing prohibition, throughout the life of the loan, and is not limited to closing costs. In explaining this recommendation the Commission in its report said, in part: "Most lenders require a borrower to make monthly payments into an escrow account in order to accumulate sufficient funds to pay property taxes, hazard insurance premiums and some other charges (e.g. ground rent) as they become due....

> "... The Task Force is concerned, however, about information that some lenders impose a collection fee or service charge on the maintenance of required escrow accounts. Such additional fees, usually $30 to $50 annually, should be prohibited because funds are escrowed as a requirement of, and for the convenience and security of lenders."

Commission Report at 26–27. In originally enacting CL § 12–109.2 the General Assembly had made no change from the statutory language proposed by the Commission.

Further, proposed § 12–121(c)(2), as introduced, would have permitted a fee for a lender's inspection to ascertain completion of "repairs, alterations or other work required by the lender *as a condition to granting the loan.*" 1986 Md. Laws at 2208 (emphasis added). The italicized language indicates that the Commission's focus may well have been on inspection fees associated with a loan closing. But the General Assembly struck the italicized language from the bill in the course of passage.

The effect of this amendment was to expand the exception to the prohibition so that inspection fees could be charged for ascertaining the completion of work that had nothing to do with granting the loan. For example, in the instant matter, Taylor assumed the obligation in ¶ 5 of the deed of trust to "keep the said premises in as good order and condition as they are now ... reasonable wear and tear excepted." If Taylor had violated that covenant, and Lender and Taylor agreed that Lender would not treat the breach as a default if Taylor caused repairs to be made within a stated time, Lender would not be prohibited from charging an inspection fee to determine if those repairs had been made. In terms of the issue before us, the amendment to the Commission's proposed statute concerning inspection fees indicates that the General Assembly did not consider that the prohibition against inspection fees was limited to closing costs. Otherwise, there would have been no need to eliminate from the exception the limitation to conditions of granting the loan. In other words, an exception for an inspection fee to determine if work had been done that was a condition of the loan would have been entirely adequate if the prohibition against inspection fees were limited to those charged as part of closing costs. It is the intent of the General Assembly that we must discern, not that of the Commission.

For the foregoing reasons we conclude that the legislative history does not so clearly demonstrate a purpose to limit the prohibition of § 12–121 to closing costs as to override the plain language of the statute.

*Taylor,* 689 A.2d at 63–64.

In addition, as is apparent in this case, *Taylor* held the express bar in COM. LAW § 12-121

applied to a mortgage assignee. The parties in *Taylor* included: (i) the "entity that held the note at

4

any given time [which the Court referred to] as 'Lender,'" and Taylor who had "acquired the property on October 30, 1987, and assumed his grantor's obligations under the deed of trust." *Taylor*, 689 A.2d at 60.  The lender in *Taylor* did not "make" the loan and Taylor was not the original borrower. *Id.*  Each were assignees of the original lender and borrower of the subject loan. *Id.*

Further, the Court of Appeals recently recognized that the wide range of parties who are responsible for making mortgage loans in today's market place include actors like the Defendants who are part of the secondary market and acquire loans as part of the mortgage lending process.

> This "mortgage marketplace," or "mortgage industry," encompasses a "primary and secondary mortgage market" that requires securitization. Robin Paul Malloy, *Mortgage Market Reform and the Fallacy of Self-Correcting Markets*, 30 Pace L. Rev. 79, 82 (2009). After a typical home loan and mortgage, the mortgage lenders often "wish to sell the mortgages that they originate." *Id.* at 95. The secondary mortgage market serves this exact purpose by creating "a market for primary mortgages[.]" *Id.* at 96.  Specifically, the secondary mortgage market "enhances liquidity, reduces risk by diversifying the primary lender's investment portfolio, and increases the available funds for lending by recharging the assets of the primary lender." *Id.* at 95–96. The secondary mortgage market intermediaries "buy and sell loans and loan participations, as well as package loans into pools for securitization." *Id.* at 96.

*Blackstone v. Sharma*, 191 A.3d 1188, 1217–18 (2018).

The Defendants' systematic and routine practice of imposing and collecting property inspection fees from Maryland mortgage borrowers in violation of Com. Law § 12-121 presents a classic consumer protection issue for class certification.  In isolation the charges imposed are small but in aggregate the sums are substantial and cause damage to Maryland consumers that should not occur.  Justice Ginsburg has explained what the class mechanism is important in these instances:

> [T]he Advisory Committee had dominantly in mind vindication of "the rights of groups of people who individually would be without effective strength to bring their

opponents into court at all." Kaplan, Prefatory Note 497. As concisely recalled in a recent Seventh Circuit opinion:

> "The policy at the very core of the class action mechanism is to overcome the problem that small recoveries do not provide the incentive for any individual to bring a solo action prosecuting his or her rights. A class action solves this problem by aggregating the relatively paltry potential recoveries into something worth someone's (usually an attorney's) labor." *Mace v. Van Ru Credit Corp.,* 109 F.3d 338, 344 (1997).

*Amchem Prod., Inc. v. Windsor*, 521 U.S. 591, 617 (1997).

## II. GENERAL FACTS & NAMED PLAINTIFFS' ALLEGATIONS MATERIAL FOR THE COURT'S CONSIDERATION OF WHETHER TO CERTIFY THE PROPOSED CLASSES

In this case, because there are no disputes of material facts based on Rushmore's sworn admissions in the public records so this early motion would seem to the Plaintiffs to be appropriate under the circumstances presented.[2] The Named Plaintiffs propose three classes to be certified by the Court.[3]

The Named Plaintiffs propose each individual be named representatives of the **State Law Class** and it be defined as follows:

> Those persons in the State of Maryland for whom Rushmore has acted as a mortgage servicer on behalf of another, including RMAC and MTGLQ, within the three years before the commencement of this action, and has charged their mortgage accounts with property inspection fees and costs.

AC at ¶ 80.

---

[2]    In the alternative, if the Court has any concerns with Defendants' theory that they are not subject to COM. LAW § 12-121, the Court may consider denying this motion without prejudice and certify the Plaintiffs' proposed questions of law to Maryland Court of Appeals.

[3]    The Named Plaintiffs proposed three overlapping classes to be named because certain of the class claims presented in the Amended Class Action Complaint have differing statutes of limitation/repose.

Named Plaintiffs propose Mr. & Mrs. Flournoy be named representatives of the **FDCPA Class** and it be defined as follows:

> Those persons in the State of Maryland whom Rushmore (on its behalf and on behalf of RMAC, MTGLQ, and others) (i) acquired the mortgage servicing when the loan was in default and (ii) provided a Payoff Statement which sought to collect directly or indirectly property inspection fees in the one year before the commencement of this action.

AC at ¶ 81.

Named Plaintiffs propose each individual be named representatives of the **Usury Class** and it be defined as follows:

> Those persons in the State of Maryland (i) for whom Rushmore has (i) acted as a mortgage servicer on its behalf and on behalf of RMAC, MTGLQ, and others and others, and (ii) has charged their mortgage loan accounts with property inspection fees and costs and (iii) the mortgage loan accounts had not been satisfied more than six months before the commencement of this action.

AC at ¶ 82.

Rushmore and MTGLQ are licensed Maryland lenders and owe borrowers a duty of good faith in their business dealings. AC at ¶¶ 11, 122. MTGLQ and RMAC are also mortgage assignees who stand in the shoes of their predecessors as lenders on the loan. AC at ¶¶ 6, 27, 32, 72. *See also* REAL PROP. § 2-103. The Defendants have directly, or indirectly through Rushmore, imposed property inspection fees onto the accounts of the mortgage borrowers including the Named Plaintiffs and others throughout Maryland. *See e.g.* AC at ¶¶ 3-12, 22-33, 44-47, 56-57, 61-67, 69-79, 83-84. *See also* Ex. 1, Affidavit of M. Morin. Rushmore and its agents have testified under penalties of perjury about this practice. AC at ¶¶ 3, 64, 84.

A review of public records shows that Rushmore routinely charges borrowers facing foreclosure with fees and expenses categorized as recoverable advances in various statements of debt which includes the property inspection fees imposed and collected by Rushmore on behalf of the persons it acts as a mortgage servicer.  Ex. 1, Affidavit of M. Morin at ¶ 4.  *See e.g.* AC at ¶¶ 2, 56-57, 61, 75-76.

Because the violations of law described herein were uniform and consistent (Rushmore used standardized practices and procedures to impose and collect property inspection fees onto mortgage accounts and standard and uniform Deeds of Trust expressly bar the imposition of fees not permitted under Maryland law (AC at ¶¶ 29, 69, 84) and the Defendants engaged in a systematic course of conduct, and illegally imposed upon and collected from more than a hundred Maryland mortgage borrowers property inspection fees not permitted under Maryland law, the Court should certify the proposed classes at this time.  Ex. 1-3, Affidavits of M. Morin, P. Robinson, and I. Goldson; *see generally* Amended Class Action Complaint.

## III.    THE COURT SHOULD CERTIFY THE CLASS IN THIS CASE

### a.    Governing Principles

#### i.    *Rule 23 favors certification*

Many courts interpret Fed. R. Civ. P. to favor the maintenance of class actions.  *See e.g., In re Amerifirst Sec. Litig.,* 139 F.R.D. 423, 427 (S.D. Fla. 1991) ("the interests of justice require that in a doubtful case . . . any error, if there is to be one, should be committed in favor of allowing a class action"); *see also Frost v. Mazda Motors of America, Inc.,* 353 N.C. 188, 193, 540 S.E. 2d 324, 327-328 (N.C. 2000) (same); *Smith v. Behr Process Corp.*, 113 Wash. App 306,

54 P.3d 665 (Wash. App. 2002) (same).  The reason to favor class certification is that class action

lawsuits are **essential**, and often the only practical way, to enforce consumer protection laws.

> In a large and impersonal society, class actions are often the last barricade of
> consumer protection . . . .   To consumerists, the consumer class action is an
> inviting procedural device to cope with frauds causing small damages to large
> groups.  The slight loss to the individual, when aggregated in the coffers of the
> wrongdoer, results in gains which are both handsome and tempting.   The
> alternatives to the class action – private suits or governmental actions – have
> been so often found wanting in controlling consumer frauds that not even the
> ardent critics of class actions seriously contend that they are not  truly effective.
> The consumer class action, when brought by those who have no other avenue
> of legal redress, provides restitution to the injured, and deterrence of the
> wrongdoer.

*Eshaghi v. Hanley Dawson Cadillac Co.*, 574 N.E. 2d 760, 764 (Ill. 1991).

This approach was echoed by this Court in *Arrington v. Colleen*, Inc., 2001 WL 34117734

at *1 (D. Md. Apr. 2, 2001):

> Class certification is a useful tool which can economize and focus judicial
> resources by allowing the court to consolidate similar claims and provide
> consistent and conclusive final judgments. Class certification also allows claims
> that may not otherwise be brought, because the cost of bringing the individual
> claim is prohibitive when the remedy is either injunctive relief or small monetary
> damages.

*Id.*

Straightforward consumer cases such as this one are routinely certified as class actions by

courts in Maryland and elsewhere.   The United States Supreme Court has noted that cases

involving consumer or securities fraud or violations of anti-trust laws are especially appropriate

for class action treatment. *Amchem Product,* 521  U.S. at 625.  *See e.g. Bradshaw v. Hilco*

*Receivables, LLC*, 765 F. Supp. 2d 719, 723 (D. Md. 2011)(case involving a certified consumer

class and involving the defendant's violation of a state statute barring the defendant's conduct); *Benway v. Res. Real Estate Servs., LLC*, 239 F.R.D. 419 (D. Md. 2006) (certified class action claims for violation of RESPA); *Mitchell-Tracey v. United General Title Insurance Company*, 237 F.R.D. 551 (D. Md. 2006) (certifying two consumer classes against title insurance underwriter for agents' overcharges); *Peoples v. Wendover Funding, Inc.*, 179 F.R.D. 492, 497 (D.Md. 1998) (certifying consumer class action against loan servicer).

### ii.    *This is the very type of case for which the Class action mechanism was established*

This Court should find that the allegations against the Defendants – namely, that the Defendants conducted debt collection activities by imposing and collecting property inspection fees under Maryland law without the right to do so – raises questions which have previously been resolved against Rushmore (AC at ¶ 3) and therefore should be resolved, once and for all, in this class action. The legal and factual issues that will control resolution of this case for the Named Plaintiffs and for all Class members are relatively simple and straightforward. Indeed, this case does not present nearly the complexity of anti-trust or other types of cases, which are commonly certified as class actions. *See, e.g., In Re A. H. Robbins Co., Inc.*, 880 F.2d 709 (4th Cir.), *cert. denied*, 493 U.S. 959 (1989) (mass tort); *In Re Carbon Dioxide Anti-Trust Litigation*, 149 F.R.D. 229 (M.D. Fl. 1993); *Phillips Petroleum Company v. Shutts*, 472 U.S. 797 (1985) (securities fraud).

### iii.    *This Circuit Has Certified Other Consumer Class Actions*

Lawsuits challenging other violations of consumer protection statutes have been approved for class action treatment by courts in the Fourth Circuit and elsewhere. *See Chisolm v. TranSouth Financial Corp.*, 184 F.R.D. 556, 562-63 (E.D. Va. 1999) (certifying consumer class

action alleging violations of RICO), *certification upheld*, 194 F.R.D. 538 (E.D. Va. 2000); *In re American Honda Motor Co., Inc. Dealers Relations Litigation*, 979 F. Supp. 365 (D. Md. 1997) (certifying civil RICO claims).

### b.      Legal Requirements for Certification

"At an early practicable time after a person sues or is sued as a class representative, the court must determine by order whether to certify the action as a class action." Fed. R. Civ. P. 23(c)(1)(A). Four requirements for class certification are set forth in Fed. R. Civ. P. 23(a). If all four requirements are satisfied, the Court then looks to Fed. R. Civ. P. 23(b) to determine whether any of three additional criteria is present.

The four requirements of Fed. R. Civ. P. 23(a) are:

> (1)     The class is so numerous that joinder of all members is impracticable,
>
> (2)     There are questions of law or fact common to the class,
>
> (3)     The claims or defenses of the representative parties are typical of the claims or defenses of the class, and,
>
> (4)     The representative parties will fairly and adequately protect the interests of the class.

*Id.*

All four requirements of part (a) are met in this case.

### Fed. R. Civ. P. 23(a)(1) – <u>Numerosity</u>

The focus of the numerosity requirement of Fed. R. Civ. P. 23 is judicial economy. "The rule does not set out a precise numerical standard, but presents an impracticability of joinder requirement, of which class size is an inherent consideration." 1 H. Newberg and A. Conte,

*Newberg on Class Actions*, § 3:5 (4th ed. 2003).  *Peoples v. Wendover Funding, Inc.*, 179 F.R.D. 492, 497 (D.Md. 1998).

Thus, class sizes of 30-40 members usually raise a presumption that the numerosity requirement is satisfied:

> Certainly, when the class is very large – for example, numbering in the hundreds – joinder will be impracticable; but in most cases the number that will, in itself, satisfy the Rule 23(a)(1) prerequisite should be much lower... In light of prevailing precedent, the difficulty inherent in joining as few as 40 class members should raise a presumption that joinder is impracticable, and the plaintiff whose class is that large or larger should meet the test of Rule 23 (a)(1) on that Fact alone.

1 H. Newberg and A. Conte, *Newberg on Class Actions*, § 3:5 (4th ed. 2003).  *See also Peoples v. Wendover Funding*, 179 F.R.D. 492, 497 (D.Md. 1998) (noting that "[i]mpracticability refers only to difficulty, not impossibility"); *Dameron v. Sinai Hospital of Baltimore, Inc.*, 595 F. Supp. 1404, 1408 (D. Md. 1984). Classes with as few as 18 members have been certified.  *See e.g. Cypress v. Newport News Gen. & Nonsectarian Hosp. Ass'n.*, 375 F.2d 648 (4th Cir. 1967).

Plaintiffs need not show the precise number of members in the class,  *Evans v. U.S. Pipe & Foundry Co.*, 696 F.2d 925, 930 (11th Cir. 1983); *Folsum v. Blum*, 87 F.R.D. 443, 445 (S.D.N.Y. 1980), because "a contrary rule would foreclose most class litigation . . . ." 1 Newberg and A. Conte, *Newberg on Class Actions*, § 3:5 (4th ed. 2003).

As noted in Exhibit 1 and in the Amended Complaint, a brief search of public records shows that Defendant Rushmore has attempted collection activities including impermissible property inspection fees upon hundreds of Maryland consumers throughout the State of

Maryland.   Plaintiff's Exhibit 1, Affidavit of M. Morin; AC at ¶¶ 21, 84.  This is more than sufficient to meet the numerosity requirement.

In this circumstance, the numerosity prong of Fed. R. Civ. P. 23 is satisfied.  As Professor Newberg notes:

> The numerosity requirement is met when plaintiffs demonstrate that the number of potential class members is large, even if plaintiffs do not know the exact figure. Where the exact size of the class is unknown but general knowledge and common sense indicate that it is large, the numerosity requirement is satisfied.

1 *Newberg on Class Actions* § 3:3 (4th ed. 2004).

### Fed. R. Civ. P. 23(a)(2) – <u>Commonality of Issues</u>

Fed. R. Civ. P. 23(a)(2) requires only that there be a single common question of law *or* fact in order for the court to certify the class action.

This case raises numerous questions of both law and fact that are common to the proposed State Law Class including the following:

a.  Whether Rushmore is entitled to demand property preservation and/or inspection fees on the mortgage accounts of the State Law Class;

b.  Whether this Court may declare that Rushmore's practices and policies concerning the assessment of property preservation fees against the mortgage accounts of the State Law Class members violate COM. LAW § 12-121(b) and *Taylor v. Friedman*, 344 Md. 572, 584 (1997).

c.  Whether Rushmore threatened or took actions against the State Law Class members, including actions under the color of law or which were otherwise unfair and deceptive, that it had no right to take under state law;

13

d.   Whether Rushmore intended to defraud the State Law Class members by knowingly misrepresenting that it was entitled to assess property preservation fees against the mortgage accounts of the State Law Class members;

e.   Do the inspection fees charged by Rushmore on behalf of RMAC and MTGLQ on the Named Plaintiffs' and State Law Class members' accounts constitute "interest" as that term is defined in COM. LAW § 12-101(e) and therefore also constitute "usury" as that term is defined in COM. LAW § 12-101(k);

f.   Whether by knowingly and willfully violating COM. LAW § 12-122, Rushmore is liable for the relief requested herein as exemplified by *Finch III*; and

g.   Whether Rushmore should be ordered to disgorge money and profits that it has wrongfully collected based upon the improper assessment of property preservation and/or inspection costs on the mortgage accounts of the State Law Class members since such fees are not permitted in Maryland.

This case also raises numerous questions of both law and fact that are common to the proposed FDCPA Class including the following:

a.   Whether Rushmore's inclusion of property/inspection preservation fees against the mortgage accounts on payoff statements made by it on behalf of RMAC and MTGLQ made the FDCPA Class members' payoff statements inaccurate.

b.   Whether Rushmore, MTGLQ, and/or RMAC may be liable to FDCPA Class members pursuant to 15 U.S.C.A. § 1692e by providing inaccurate payoff statements which included sums claimed to be due from the FDCPA Class members for property inspection fees which are not lawful under Maryland law.

14

c. Whether Rushmore, MTGLQ, and/or RMAC may be liable to FDCPA Class members pursuant to 15 U.S.C.A. § 1692f by providing payoff statements that deceptively labeled attorney's fees as "corporate advances."

d. What is the net worth of Rushmore, MTGLQ, and RMAC for the purpose of determining statutory damages owed to the RMAC Class members.

Finally, this case also raises numerous questions of both law and fact that are common to the proposed Usury Class including the following:

a. Whether Rushmore is entitled to demand property preservation and/or inspection fees on the mortgage loan accounts of the Usury Class;

b. Whether Rushmore is entitled to demand property preservation and/or inspection fees on the mortgage loan accounts of the Usury Class on behalf of RMAC, MTGLQ, and others;

c. Whether this Court may declare that Rushmore's practices and policies concerning the assessment of property preservation fees against the mortgage loan accounts of the Usury Class members violate Com. Law § 12-121(b) and *Taylor v. Friedman*, 344 Md. 572, 584 (1997);

d. Whether the inspection fees charged by Rushmore on behalf of RMAC, MTGLQ, and others on the Named Plaintiffs and Usury Class members' accounts constitute "interest" as that term is defined in Com. Law § 12-101(e) and therefore also constitute "usury" as that term is defined in Com. Law § 12-101(k); and

e. Whether Rushmore, MTGLQ, and/or RMAC are liable for statutory damages pursuant to the Usury Class members pursuant to Com. Law § 12-121(a)(1)(ii) for each instance in which Rushmore has imposed upon the Usury Class members.

15

"It is important to note that [RULE 23(a)(2)] does not require that all questions of law and fact raised by the dispute be common . . . ."  C. Wright and A. Miller, *Federal Practice and Procedures*, §1763 at 12681 (West 1994); *Arrington v. Colleen, Inc.*, 2001 WL 34117734, *3 (D. Md. Apr. 2, 2001). In fact, a **single** common question has been deemed sufficient to satisfy the commonality requirement. *Peoples v. Wendover Funding*, 179 F.R.D. 492, 498 (D. Md. 1998) (holding that a single common issue is sufficient to satisfy commonality); *German v. Federal Home Loan Mortgage Corp.*, 885 F. Supp. 537, 553 (S.D.N.Y. 1995)(citing *Trief v. Dun & Bradstreet Corp.*, 144 F.R.D. 193, 198 (S.D.N.Y. 1992)). "***Thus, factual differences among class members' cases will not preclude certification if the class members share the same legal theory***." *Peoples,* 179 F.R.D. at 498 (*citing Brown v. Eckerd Drugs, Inc.,*663 F.2d 1268, 1275 (4th Cir. 1981), *vacated on other grounds,* 457 U.S. 1128 (1982)) (emphasis added).

The pertinent factual and legal issues in this case clearly are common to the proposed classes.  Here, the scope of the central question pertinent to the putative class members – whether the Defendants performed illegal debt collection activities by imposing and collecting illegal property inspection fees onto Maryland mortgage borrowers – is identical in all material respects. After all, Named Plaintiffs assert that imposing and collecting property inspection fees from Maryland mortgage borrowers by the Defendants was a standardized and organized business decision committed uniformly throughout the state.  The inquiry in this case will focus in large part on standardized forms and the same pattern of behavior that are uniform with respect to Defendants' actions.

Finally, Named Plaintiffs note that the assessment of damages in this case is a straightforward mathematical calculation.  In addition to injunctive relief, Defendants must pay

statutory and out of pocket monetary damages to those class members who have already paid directly or indirectly the illegal property inspection fees. *Compare Robinson v. Fountainhead Title Grp. Corp.*, 447 F. Supp. 2d 478, 489 (D. Md. 2006); *Benway*, 239 F.R.D. at 425; *Yates v. All American Abstract Co.*, 487 F. Supp. 2d 579, 582 (E.D. Pa. 2007); *Kahrer v. Ameriquest Mortgage Co.*, 418 F.Supp.2d 748 (W.D. Pa. 2006).

Legal and factual questions will be viewed as commonly shared so long as "their resolution does not depend on the facts of any class member's particular claims, but depends rather on the evidence presented taken as a whole." *Chapelle v. E.I. DuPont DeNemours & Co.*, 75 F.R. D. 74, 77 (E.D. Va. 1977).   The illegal practices alleged in this case were uniform because for each consumer class member, the Defendants attempted to collect or did in fact collect property inspection fees they were precluded by law from collecting.

The questions of law linking the proposed classes are substantially related to the resolution of the litigation (*i.e.* all Class members' rights were violated and relief should be awarded).   *Himmler v. Weinberger*, 422 F. Supp. 196, 199 (E.D. Mich. 1976), *rev'd on other grounds*, 611 F.2d 137 (6th Cir. 1979) (*citing American Finance System, Inc. v. Harlow*, 65 F.R.D. 94, 107 (D. Md. 1974)); *Harris v. Palm Springs Alpine Estates*, 329 F.2d 909 (9th Cir. 1964). In *American Finance System*, for example, several different subclasses, with widely varied factual circumstances in relation to an illegal employment contract and period of employment, brought a Title VII suit.   Because the resolution of all claims depended on the resolution of unified legal questions, however, the requirement of commonality was satisfied. *Id.* at 107-8.

In the present case, not only are factual differences, if any, slight and irrelevant to the claims, uniform questions of law determine whether relief will be granted.   The requirement of commonality is satisfied.

### Fed. R. Civ. P. 23(a)(3) – <u>Typicality of Claims</u>

The Named Plaintiffs' class claims are typical of each class member's claim. As explained by one court:

> [T]he typicality prerequisite of Rule 23(a) has been construed to require that the relief sought will benefit all class members and that no individual claim within the class be so unique as to impair the necessary alignment of interest. *Eisen v. Carlisle & Jacquelin*, 417 U.S. 156 (1974)) . . . [A] general course of conduct by the opposing party which affects the entire class to a same or similar degree, will substantiate the appropriateness of class action status. *Kaufman v. Lawrence*, 76 F.R.D. 397 (S.D.N.Y. 1977).

*Ramirez v. Webb*, 102 F.R.D. 968, 971 (W.D. Mich. 1984).

The facts underlying the Named Plaintiffs' claims are as straightforward as they are typical. Like all putative class members, the Named Plaintiffs were subjected to unlawful consumer debt collection activities of the Defendants related to the imposition and collection of property inspection fees barred by Maryland law.   Like all of the class members, Defendants acted in violation of Maryland law when they had no legal right to do so.

As stressed in *Peoples*, 179 F.R.D. at 498, "[t]he test for determining typicality is whether the claim or defense arises from the same course of conduct leading to the class claims, and whether the same legal theory underlies the claims or defenses."   "Thus, while the claims of particular individuals may vary in detail from one to another, the collective claims focus on particular policies applicable to each class member thereby satisfying the typicality requirement

of Rule 23(a)." *Briggs v. Brown & Williamson Tobacco Corp., Inc.*, 414 F. Supp. 371, 375 (E.D. Va. 1976).

In this case, Named Plaintiffs' class claims present virtually identical fact patterns and legal theories which each putative class member would have to present if he or she filed an individual suit. The claim of every class member is based upon the same conduct by the Defendants. The Named Plaintiffs' claims are, therefore, not only typical of the claims of the putative classes, they are virtually identical to them. *See Kohl v. Assoc. of Trial Lawyers of America*, 183 F.R.D. 475, 484 (D. Md. 1998); *Benway*, 239 F.R.D. at 424.

### Fed. R. Civ. P. 23(a)(4) – <u>Adequacy of Representation</u>

The standards of Fed. R. Civ. P. 23(a)(4) are met if it appears that the named plaintiffs' interests are not antagonistic to those of other class members and that the plaintiffs' attorneys are qualified, experienced, and generally able to conduct the litigation. *See e.g., Peoples,* 179 F.R.D. at 499; *Bogosian v. Golf Oil Corp.*, 561 F.2d 434, 449 (3d Cir. 1977), *cert. denied*, 434 U.S. 1086 (1978); *Wetzel v. Liberty Mut. Ins. Co.*, 508 F.2d 239, 247 (3d Cir.), *cert. denied*, 421 U.S. 1011 (1975); *Brown v. Cameron-Brown*, 92 F.R.D. 32, 40-41 (D.C. Va. 1981).

The requirement of adequate representation is not a search for a perfect plaintiff with an unassailable claim. The requirement merely assures that absent class members, who will be bound by the result, are protected by a vigorous and competent prosecution of the case by someone who shares their interests. *See* 1 Newberg and A. Conte, *Newberg on Class Actions*, § 3:21 (4th ed. 2004); *see also George v. Baltimore City Public Schools*, 117 F.R.D. 368, 371 (D. Md. 1987). The Court needs to ensure "that the relationship of the representative parties'

interests to those of the class are such that there is not likely to be divergence in viewpoint or goals in the conduct of the suit." *Bogosian*, 561 F.2d at 449.

The Named Plaintiffs in this case have no claim or interest that conflicts with those of the putative classes. Named Plaintiffs have followed the pre-investigation phase of this litigation and have agreed to follow the case diligently and are prepared to answer discovery and testify at trial. Ex. 2-3, Affidavits of P. Robinson and I. Goldson

Appointment of class counsel is now governed by Fed. R. Civ. P. 23(g), which provides:

> (1) *Appointing Class Counsel.* Unless a statute provides otherwise, a court that certifies a class must appoint class counsel. In appointing class counsel, the court:
> (A) must consider:
> (i) the work counsel has done in identifying or investigating potential claims in the action;
> (ii) counsel's experience in handling class actions, other complex litigation, and the types of claims asserted in the action;
> (iii) counsel's knowledge of the applicable law; and
> (iv) the resources that counsel will commit to representing the class;
> (B) may consider any other matter pertinent to counsel's ability to fairly and adequately represent the interests of the class;
> (C) may order potential class counsel to provide information on any subject pertinent to the appointment and to propose terms for attorney's fees and nontaxable costs;
> (D) may include in the appointing order provisions about the award of attorney's fees or nontaxable costs under Rule 23(h); and
> (E) may make further orders in connection with the appointment.
>
> (2) *Standard for Appointing Class Counsel.* When one applicant seeks appointment as class counsel, the court may appoint that applicant only if the applicant is adequate under Rule 23(g)(1) and (4). If more than one adequate applicant seeks appointment, the court must appoint the applicant best able to represent the interests of the class.
>
> (3) *Interim Counsel.* The court may designate interim counsel to act on behalf of a putative class before determining whether to certify the action as a class action.
>
> (4) *Duty of Class Counsel.* Class counsel must fairly and adequately represent the interests of the class.

*Id.*

Consideration of each the mandatory factors warrants appointment of the Named Plaintiffs' counsel as class counsel in this matter. The claims were identified because the practices of the Named Plaintiffs' counsel are devoted to advocating for and representing consumers.[4] Plaintiffs' counsel stay well educated on current issues in the consumer law area by participating in legislative matters, litigating cases as well as speaking on the law related to the claims.  Identifying Plaintiffs' claims was possible because of counsels' active  involvement in the consumer law issues. Prior to and since filing this lawsuit and the Amended Class Action Complaint, Plaintiffs' counsel have investigated the Defendants and their practices. Plaintiffs' counsel has and will commit sufficient resources to prosecute the case.

Plaintiffs' counsel is very experienced in class actions as well as consumer law. Plaintiffs' counsel has previously been found to be adequate class counsel and have served as lead class counsel in numerous cases involving consumer frauds and other legal violations.  As set forth in the attached Affidavit of Counsel Phillip Robinson has served as class counsel in many class actions, including cases in this Court. Ex. 2, Affidavit of P. Robinson.  Similarly, attorney Ingmar Goldson has also served as class counsel.  Ex. 3, Affidavit of I. Goldson. Both are experienced consumer attorneys, each having represented literally scores of consumers, many

---

[4]     Phillip Robinson is currently counsel for the Plaintiff in the matter of *Grayson v. Freedom Mortgage Corp.* that involves the identical class issues at issue in this case that has reached a settlement that has been proposed to the Circuit Court for Montgomery County for approval and will return more than 100% of the inspection fees imposed on a class or mortgage borrowers.   Ex. 2, Affidavit of P. Robinson at ¶ 11.

of which have involved consumer debt collection.   A list of Class Counsel's class action cases

are set forth in the accompanying affidavits.  Ex. 2-3, Affidavits of P. Robinson and I. Goldson.

### c.   A Class Action Is Appropriate Because the Criteria of Fed. R. Civ. P. 23(b) Are Satisfied

After finding that all four requirements of Fed. R. Civ. P. 23(a) have been met, the

Court should certify the case as a class action *if any* one of three criteria in part (b) of Fed. R.

Civ. P. 23 is satisfied.  Fed. R. Civ. P. 23(b)(2)&(b)(3) criteria are satisfied in this case.

### Fed. R. Civ. P. 23(b)(2)

Fed. R. Civ. P. 23(b)(2) class certification is proper where the following standard is met:

> the party opposing the class has acted or refused to act on grounds generally
> applicable to the class, thereby making appropriate final injunctive relief or
> corresponding declaratory relief with respect to the class as a whole.

*Mitchell-Tracey*, 237 F.R.D. at 559. As Judge Davis held, the standard is met where "the

challenged conduct by the defendant be premised on a ground generally applicable to the entire

class" and "[i]f plaintiffs were to prevail, final injunctive relief precluding Defendants from

continuing to do business in this matter would be appropriately applicable to the class as a whole."

*Id.* at 559. Fed. R. Civ. P. 23(b)(2) certification is appropriate where injunctive relief can be

obtained, even if monetary relief is sought. *See id*.

Newberg has also explained:

The Supreme Court has written that:

> The key to the (b)(2) class is "the indivisible nature of the injunctive or
> declaratory remedy warranted — the notion that the conduct is such that it
> can be enjoined or declared unlawful only as to all of the class members or
> as to none of them." In other words, Rule 23(b)(2) applies only when a

single injunction or declaratory judgment would provide relief to each member of the class. It does not authorize class certification when each individual class member would be entitled to a different injunction or declaratory judgment against the defendant. Similarly, it does not authorize class certification when each class member would be entitled to an individualized award of monetary damages.

…Moreover, as Rule 23(b)(2) authorizes certification in situations affecting the class as a whole, when 23(b)(2) circumstances are present, unitary adjudication is not only preferable, but it is also essential.

§ 4:26.Overview of Rule 23(b)(2) class actions, 2 Newberg on Class Actions § 4:26 (5th ed.).

Here, Named Plaintiffs' Amended Class Action Complaint has identified that class certification was warranted to seek declaratory or injunctive relief on behalf of the State Law Class. *See* AC at ¶ 19, 97-101. Because the Defendants have acted consistently against the putative class members by imposing and collecting property inspections fees on the same grounds applicable to the putative class members, final declaratory and injunctive relief is appropriate and should be granted pursuant to Fed. R. Civ. P. 23(b)(2). *Compare Finch III*, 2018, 2019 WL 1760468, at *11 ("…declaratory and injunctive relief precluding LVNV from taking any action to enforce those judgments and for *any* damages incurred by the plaintiffs as the result of LVNV's collection efforts" on behalf of the class members).

### Fed. R. Civ. P. 23(b)(3)

Class certification is also appropriate under FED. R. CIV. P. 23(b)(3) because the most important issues in this case, both factually and legally, are predominantly common to the putative classes.   For individuals who are denied their statutory protections, there is little to gain by way of individual suits for damages, making class action adjudication the only practical way in which the homeowners can obtain relief against the Defendant.   This is the situation addressed by FED. R. CIV. P. 23(b)(3) which states that a class action is maintainable where:

The court finds that questions of law or Fact common to the members of the class dominate over any questions affecting only individual members and that a class action is superior to the other available methods for the fair and efficient adjudication of the controversy.

It is black-letter law that in determining whether common issues predominate, the Court's inquiry should be directed primarily toward the issue of liability. *See Bogosian*, 561 F.2d at 456; *see also, Snider v. Upjohn*, 115 F.R.D. at 541; *In re Sugar Industry Antitrust Litigation*, 73 F.R.D. 322, 345 (E.D. Pa. 1976).

This case focuses on the uniform and consistent practice of Defendants in violating Maryland law. These practices give rise to common issues of law and fact, which predominate over any possible individual issues in this case. As this Court has stressed: "Generally, certification under this Rule is appropriate when settling the parties' differences in a single proceeding serves their interests by achieving 'economies of time, effort, and expense,' and by promoting uniformity of decisions as to similarly situated class members without sacrificing fairness." *Peoples,* 179 F.R.D. at 501 (quoting *Amchem Product, Inc. v. Windsor,* 521 U.S. 591, 615 (1997)).   As the United States Supreme Court recognized in *Amchem Product, Inc.,* 521 U.S. at 625 (emphasis added):

> ***Predominance is a test readily met in certain cases alleging consumer or securities fraud or violations of the antitrust laws.***

In fact, as noted above, the common questions of law and fact are virtually the ***only*** *class* issues in this case. In *Arrington v. Colleen, Inc.*, 2001 WL 34117734 *8 (D. Md. Apr. 2, 2001),* this Court, in certifying a consumer class alleging TILA violations, wrote that:

In determining whether a class satisfies the requirement of Rule 23(b)(3), a court should consider: (A) the interest of members of the class in individually controlling the prosecution or defense of separate actions; (B) the extent and nature of any litigation concerning the controversy already commenced by or against members of the class; (C) the desirability or undesirability of concentrating the litigation of the claims in the particular forum; and (D) the difficulties likely to be encountered in the management of a class action.

*Id.*

Based upon this analysis, it is clear that certification is appropriate. First, it is unlikely that an individual plaintiff would have the resources to pursue their claims on the property inspection fee issue only – many of the putative class members, but not all, are in foreclosure or all being pursued for outstanding debts and all are likely facing other financial problems as well. Thus, they currently have little or no resources to hire attorneys or to otherwise protect themselves.

Additionally, judicial resources are economized and focused by handling this case as a class action. *Arrington*, 2001 WL 34117734 at *8. Indeed, unless the Class members obtain relief through this class action, most of the Class will not obtain any relief at all, since they have no resources to hire an attorney. There simply is no other practical means for this Class to challenge a practice that stands in clear violation of controlling law. "The desirability of providing recourse for the injured consumer who would otherwise be financially incapable of bringing suit and the deterrent value of class litigation clearly render the class action a viable and important mechanism in challenging fraud on the public." 6 H. Newberg and A. Conte, *Newberg on Class Actions* § 21:30 (4th ed. 2003).

Finally, there are no manageability issues that would preclude certification. The issue of "manageability" was discussed in *In Re: Visa Check/Master Money Antitrust Litigation*, 280

F.3d. 124 (2nd Cir. 2001), *cert. denied*, 122 U.S. 2382 (2002), where the Second Circuit affirmed the certification of a class which consisted of every business in the United States, large and small, that accepted Visa and/or MasterCard credit cards.  The class literally consisted of millions of businesses in all fifty states ranging in size from Wal-Mart to the local dry cleaner.  The defendants' major challenge on appeal was on the issue of manageability.   The Second Circuit first disposed of defendants' argument that individualized proof of damages should preclude certification, saying that "the fact that there may have to be individual examinations on the issue of damages has never been held[] a bar to class actions . . . ." *Id.* at 139.  On the general issue of manageability, the Court stated:

> [F]ailure to certify an action under Rule 23(b)(3) on the sole ground that it would be unmanageable is disfavored, and should be the exception rather than the rule.

*Id*. at 140 (citations omitted).

In this case, there are no management issues with respect to the Class defined above.  The Class can be identified from public records and the Defendants' own records.  The Defendants used computer systems and programs that can compile comprehensive and detailed information for each and every borrower, including the names and addresses of all potential class members.  As a result, delivery of any notice under RULE 23(c)(2) will not be unduly difficult; nor are there other manageability issues that will hamper the management of this case as a class action.

Recognizing that consumer class actions in general are easy to manage, and understanding that in the absence of a class action, a failure of justice will result, numerous courts have found the class action approach superior in similar cases involving claims under consumer protection

statutes. *See, e.g., Proctor v. Metropolitan Money Store Corp.*, 645 F.Supp.2d 464 (D.Md.,2009) (certified RICO, RESPA, state statutory claims related to a mortgage scheme, and gross negligence).

In fact, courts have long recognized that "[c]lass action certifications to enforce compliance with consumer protection laws are 'desirable and should be encouraged.'" *Watkins v. Simmons and Clark, Inc.*, 618 F.2d 398, 404 (6th Cir. 1980). Not only does class certification enable class members to share in a financial recovery which they might otherwise never pursue on their own behalf, but it also "provides an opportunity to educate a segment of the public, those included in the class, of the obligations which creditors owe to them as credit consumers." *Id.* Accordingly, a class action is both manageable and far superior to that of individual claims.

## IV.    CONCLUSION

This case raises important factual and legal issues for hundreds of Maryland of consumers, issues which are common to all. The Named Plaintiffs share all of these class claims with the putative class members and are committed to bringing them forward to a resolution on behalf of all class members. The only practical method for adjudicating the class claims is through class certification. The Court should certify the proposed classes.

[signatures on next page]

27

Respectfully Submitted,

  //s//Ingmar Goldson
Ingmar Goldson, Esq.  (#19024)
The Goldson Law Office
1734 Elton Rd. Suite 210
Silver Spring, MD 20903
240-780-8829
igoldson@goldsonlawoffice.com

*//s//Phillip R. Robinson*
Phillip R. Robinson
Bar No. 27824
Consumer Law Center LLC
8737 Colesville Road, Suite 308
Silver Spring, MD  20910
Phone (301) 448-1304

*Counsel for the Plaintiffs and State Law Class, Usury Class & FDCPA Class Members*

## CERTIFICATE OF SERVICE

I hereby certify a copy of the foregoing and attached exhibits were sent to all counsel of record through the Court's CM/ECF system when filed with the Court.  Courtesy copies will also be delivered to the Court within 48 business hours of this filing.

A copy of the foregoing and attached exhibits will also be delivered along with a writ of summons from and the documents previously filed in this action to Defendant MTGLQ Investors LP through its resident agent.

*//s//Phillip R. Robinson*
Phillip R. Robinson

28