**IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MARYLAND**

KEVIN FLOURNOY, *et al.*               *

      Plaintiffs,               *

      v.                    *        Civil Action No. 8:19-cv-00407-PX

RUSHMORE LOAN MANAGEMENT    *
SERVICES, LLC, *et al.*
                          *

      Defendants.

                      ***

## <u>MEMORANDUM OPINION</u>

This fair debt collection case presents several questions ready for resolution, to include Plaintiffs' requests to certify a proposed class action and certify questions of law to the Maryland Court of Appeals. ECF Nos. 13, 14. Defendants also move to dismiss the entirety of the Complaint and to seal a document submitted in support of its motion. ECF Nos. 22, 23. Each motion is fully briefed, and the Court finds that no hearing is necessary. *See* Loc. R. 105.6. For the reasons that follow, the motions to certify a federal class action and to certify a question of law to the Court of Appeals are denied. Defendants' motion to dismiss is granted in part and denied in part, and the motion to seal is denied.

### I.    Background[1]

At the center of this case is whether fees and costs associated with two mortgages sold in the secondary mortgage market violate federal and state fair debt collection laws. Named Plaintiffs Kevin and Jeimy Flournoy ("the Flournoys") and Tinaee Crowder ("Crowder") bring a number of claims both individually and on behalf of three putative classes for which they now

---

[1] The Court accepts the facts pleaded in the Amended Complaint as true and construes them most favorably to Plaintiffs. *See Aziz v. Alcolac, Inc.*, 658 F.3d 388, 390 (4th Cir. 2011). Also pending is Defendants' motion to dismiss Plaintiffs' original Complaint (ECF No. 7) which is denied as moot.

seek certification pursuant to Federal Rule of Civil Procedure 23. The Court will address the facts pertinent to each of the named Plaintiffs and as to the putative class allegations.

### A. The Flournoy Mortgage

In August 2006, the Flournoys bought their home in Capital Heights, Maryland, financing their purchase with a $263,000 mortgage held by Bank of America. ECF No. 11 ¶ 29. This mortgage was secured with a Deed of Trust that disallowed imposition of fees prohibited by applicable law. *Id.*

By 2016, the Flournoys had lost their jobs, fell behind on their mortgage payments, and were thus in default. *Id.* ¶¶ 1, 30. Around February 1, 2016, Bank of America transferred the servicing rights on the Flournoys' mortgage to Defendant Rushmore Loan Management Services, LLC ("Rushmore"). *Id.* ¶¶ 30–31. Then, on March 7, 2016, Bank of America "assigned and transferred all its right, title and interest in and to the Deed of Trust" to Defendant RMAC Trust ("RMAC"). *Id.* ¶ 31.

Soon thereafter, Rushmore began collection efforts on the defaulted loan. *Id.* ¶ 35. On May 12, 2016, Rushmore notified the Flournoys in writing that they must pay $10,963.02 to reinstate the mortgage. *Id.* The letter did not explain the $10,963.02 figure; it did not identify what portion of the outstanding amount was past-due interest or whether the total included fees and costs. *Id.* Rushmore sent similar correspondence in January 2017, informing the Flournoys that the cost of reinstatement now climbed to $13,029.63, and again on February 9, 2017, claiming the cost of reinstatement nearly doubled, to $24,013.24. *Id.* ¶ 36.

In February 2017, the Flournoys and Rushmore entered into a "repayment plan" in which the Flournoys agreed to make payments on their outstanding balance. ECF No. 11 ¶¶ 39–41. However, because Rushmore levied a number of "unlawful and otherwise improper fees," the

Flournoys had difficulty bringing their account current. *Id.* ¶ 41. Frustrated with Rushmore's fees and opaque billing practices, the Flournoys complained to the Better Business Bureau and the Consumer Financial Protection Bureau. *Id.* ¶ 42. When Rushmore responded to the complaints on June 9 2017, it again did not disclose the nature of its various fees and costs, but rather claimed it had sent the Flournoys an additional letter on May 25, 2017 which allowed the Flournoys to reinstate their repayment plan—subject, however, to $5,204.82 in "corporate advances." *Id.* ¶¶ 43–45. In the same letter, Rushmore informed the Flournoys that it had "resumed foreclosure proceedings" and thus had incurred "additional foreclosure fees." *Id.* ¶ 46.

The Flournoys allege Rushmore improperly hid unreasonable attorneys' fees as part of the claimed "corporate advances." ECF No. 11 ¶¶ 46, 49. As support, the Flournoys reason that although foreclosure began in November 2016, "little to no activity" had occurred, and thus $5,204.82 in fees could not have been generated. *Id.* ¶ 47. Additionally, the Flournoys contend that Rushmore's claimed "resumption" of foreclosure proceedings is misleading because Rushmore had not taken any steps in foreclose since January 2017. *Id.* ¶ 49. The Flournoys lastly contend that because they had not exhausted all loss mitigation options, foreclosure proceedings were premature. *Id.* ¶ 48.

The Flournoys continued making monthly payments of $720 on their mortgage, as well as monthly payments of $1,752 and $1,963 towards the two Rushmore repayment plans. *Id.* ¶ 51. On October 11, 2017, the Flournoys received a bill from Rushmore claiming that they owed $1,433.74, even though they believed they had already satisfied their debt just days earlier with a $1,963.00 payment. *Id.* ¶ 50. The Flournoys continued payments as normal, apparently without making this additional payment of $1,433.74. *Id.* One month later, the Flournoys again received a statement from Rushmore, this time claiming that they owed $8,503.52 to "reinstate" their

account, $7,069,78 of which constituted "recoverable advances." *Id.* Before they received this statement, the Flournoys thought they were within $2,000 of becoming current on their mortgage and were devastated to see that a fee of over $7,000 had once again set them back. *Id.* ¶ 50.

The Flournoys attempted to comply with the payment plans, but Rushmore returned these payments. ECF No. 11 ¶ 53. On January 31, 2018, the Flournoys wrote to Rushmore and asked for a payoff statement to which they are entitled and pursuant to 12 C.F.R. § 1026.36(c)(3). *Id.* ¶ 54. The Flournoys additionally asked Rushmore to explain the origin of the $7,069.78 in "corporate advances" from the November 2017 statement. *Id.* Rushmore responded, advising the Flournoys that they were liable for $85 in "Recoverable Corporate Advances," $750 in "Estimated Fcl Fee," and $425 in "Estimated Fcl Cost." *Id.* 56. Rushmore did not, however, explain the other "corporate advances." *Id.* The Flournoys allege that the $85 in "Recoverable Corporate Advances" included what Plaintiffs believe are "unlawful" property inspection fees other baseless fees arbitrarily added to their account. *Id.* ¶¶ 57–58.

On February 23, 2018, the Flournoys convinced a Rushmore agent to accept payment of $3,807.66 to bring their account current. *Id.* ¶ 59. The Flournoys aver that this payment also included property inspection fees. *Id.*

On April 6, 2018 the Flournoys again asked for a payoff statement. *Id.* ¶ 62. The Flournoys attached to their request a January 2017 statement from Rushmore reflecting an $85 property preservation fee and inquired whether they were, in fact, required to pay such a fee. *Id.* ¶ 62. Although the Flournoys only attached one such statement to their request, a June 6, 2017 summary of the Flournoys' account shows additionally that the Flournoys were charged property preservation fees 16 times between February 2016 and February 2017. *Id.* ¶ 66.

Rushmore responded on May 17, 2018, claiming the corporate advance was a "processing fee for property registration because the account was in foreclosure." *Id.* ¶ 64. Rushmore also enclosed a copy of an invoice from Safeguard Properties, Rushmore's contract services provider that performs the inspections. *Id.* ¶¶ 64–65, 67. As of the filing of the Amended Complaint, the Flournoys' loan is not satisfied. *Id.* ¶ 68.

**B. The Crowder Mortgage**

In December 1999, Crowder bought her home located in Baltimore County. *Id.* ¶ 69. In 2008, Crowder refinanced her mortgage subject to a Deed of Trust which, like the Flournoys' Deed of Trust, assured Crowder that the lender would not impose fees prohibited by the applicable law. *Id.*

Rushmore acquired the servicing rights to the Crowder mortgage in February 2013, and in June 2017, the original lender assigned the mortgage to Defendant MTGLQ Investors, LP ("MTGLQ") in its capacity as trustee for RMAC. *Id.* ¶¶ 70–71. At this time, Crowder was in default. *Id.* ¶ 70.

Crowder wrote to Rushmore in October 2017 to pursue alternatives to foreclosure, and in doing so "disputed certain issues related to Rushmore's servicing of her mortgage loan." *Id.* ¶ 73. Rushmore disclosed in response that it had assessed certain property inspection fees. *Id.* ¶ 74. After Crowder requested more information about these fees, Rushmore explained that "[o]nce the account becomes delinquent . . . [Rushmore] may order property inspection" and also that "[t]he charges for these inspections and/or any work requirements we may incur to protect the property . . . may be added to the total debt that you currently owe on your mortgage." *Id.* ¶ 76. By Rushmore's own account, it had charged Crowder property inspection fees on seven occasions between November 14 and June 27, 2017. *Id.* ¶ 77.

Crowder's property was sold in a foreclosure sale on December 7, 2017. *Id.* ¶ 78. The proceeds of this sale went to MTGLQ and satisfied the remainder of Crowder's mortgage. *Id.* ¶ 79.

### C. Class Allegations

According to Plaintiffs, public records as well as Rushmore's own testimony in separate foreclosure cases demonstrate that Rushmore has imposed unlawful inspection fees on hundreds of mortgagees. *Id.* ¶ 84. Additionally, Rushmore's records of correspondence with mortgagees as well as certain standard forms reflect systemic imposition of such property inspection fees. *Id.* ¶ 83. Together, say Plaintiffs, these materials sufficiently demonstrate the propriety of certifying three subclasses based on the same liability theories pertinent to theirs. *Id.* ¶¶ 80–83.

### D. Procedural Background

On February 11, 2019, Plaintiffs filed suit against Rushmore, RMAC, and MTGLQ. *See* ECF No. 1. After Defendants moved to dismiss the Complaint, Plaintiffs filed an Amended Complaint on May 17, 2019, and at the same time, moved to certify a question of law to the Maryland Court of Appeals and separately to certify three classes under Federal Rule of Civil Procedure 23. *See* ECF Nos. 11, 13–14.

The Amended Complaint presents a tangle of averred facts, legal argument, and statutory and common law claims. Often multiple legal theories are alleged in one enumerated "count." For ease of analysis, the claims are best described as follows.

First, the lion's share of Plaintiffs' claims are premised on the theory that Defendants are "lenders" as defined by the Maryland Usury Statute and, as such, are prohibited from collecting property inspection fees pursuant to Md. Code Ann., Com. Law § 12-121(b). In Count I, Plaintiffs seek declaratory and injunctive relief because, as lenders, Defendants may not impose

property inspection fees under § 12-121(b).  ECF No. 11 ¶¶ 97–101.   Count II, a common law unjust enrichment claim, turns on Rushmore's collection of property inspection fees, made "unlawful" if Rushmore is considered a "lender." *Id.*  ¶¶ 102–08.  Count III avers that Rushmore violated the Maryland Consumer Debt Collection Act ("MCDCA) and the Maryland Consumer Protection Act ("MCPA") by virtue of unlawfully collecting fees prohibited by § 12-121.  ECF No. 11 ¶¶ 109–17. Count IV seeks statutory penalties for Rushmore's violations of the Maryland Usury Statute. *Id.* ¶¶ 118–26.  Count V, alleging violations of Maryland Mortgage Fraud Protection Act ("MMFPA"), avers that by collecting improper inspection fees as lenders, Rushmore committed "mortgage fraud" under Md. Code Ann., Real Prop. § 7-401(d).  ECF No. 11 ¶¶ 127–37.  Similarly, the Fair Debt Collection Act ("FDCPA") claim (Count VI) is premised on Rushmore's imposition of inspection fees as lenders as amounting to a "false representation of the character and amount of fees due."  ECF No. 11 ¶¶ 138–43.

Second, Plaintiffs base their claims under the MMFPA (Count V) and FDCPA (Count VI), MDCPA (Count VII) on the alternative theory that Rushmore engaged in deceptive collection of unreasonable attorneys' fees in a manner independent of its status as putative "lender" under the Usury Statute.  ECF No. 11 ¶¶ 135, 138–43, 153–54.  Relatedly, as to the Flournoys only, Plaintiffs allege in Count VII that Rushmore engaged in "unfair or deceptive trade practices" in violation of the MCPA by "failing to disclose the identity of 'corporate advances.'"  ECF No. 11 ¶¶ 144–57.

Third, and perhaps most inscrutably, Plaintiffs allege in Count III that Defendants violated the MCPA by improperly implying to Plaintiffs that the government authorized Defendants' collection efforts via foreclosure proceedings. *Id.* ¶¶ 109–17 (citing Md. Code Ann., Com. Law § 14-202(9)).

Plaintiffs have moved for class certification and Defendants have moved to dismiss almost the entirety of the Amended Complaint. ECF No. 22; *but see infra* at 15 n.6. Defendants also move to seal one related exhibit found at ECF No. 24. ECF No. 23. The Court addresses each motion separately.

## II.     Motion to Seal

Rushmore contends that the Court should seal its "property preservations-conventional procedures" manual—which consists of a one-sentence policy statement regarding property inspection costs—on the ground that it "contains Rushmore's confidential and proprietary company policy." ECF No. 23 at 2. Because Rushmore has failed to establish that the need to seal outweighs the public's right to access court filings, the request is denied.

"It is well settled that the public and press have a qualified right of access to judicial documents and records filed in civil and criminal proceedings." *Doe v. Pub. Citizen*, 749 F.3d 246, 265 (4th Cir. 2014). This right "derives from two independent sources: the common law and the First Amendment." *Va. Dep't of State Police v. Wash. Post.*, 386 F.3d 567, 575 (4th Cir. 2004). Accordingly, the Court begins with the presumption that the public enjoys blanket right to access all judicial documents, rebutted only upon a showing that "countervailing interests heavily outweigh the public interests in access." *Doe*, 749 F.3d at 265–66 (quoting *Rushford v. New Yorker Magazine, Inc.*, 846 F.2d 249, 253 (4th Cir. 1988)); *Va. Dept. of State Police*, 386 F.3d at 757.

To overcome the presumption of public access to Court documents, the movant must show that sealing "serves an important governmental interest and that there is no less restrictive way to serve that governmental interest." *Rushford*, 846 F.2d at 253. If such a showing is made, the Court must "give the public adequate notice" of sealing and an opportunity to object. *Id.* If

the Court grants the motion to seal, it must then "state its reasons on the record supported by specific findings." *Id.* at 253–54; *accord Werner-Masuda*, 390 F. Supp. 2d at 484–85; *Padco Advisors, Inc. v. Omdahl*, 179 F. Supp. 2d 600, 614 (D. Md. 2002).

Although the Defendants here must show that sealing serves an "important governmental interest," *Rushford*, 846 F.2d at 253, they instead simply invoke insufficient "boilerplate recitations" of claims to confidentiality. *Vogel v. Albert*, No. DKC 15-3300, 2015 WL 7424321, at *1 (D. Md. Nov. 23, 2015); *see also Visual Mining, Inc. v. Ziegler*, No. PWG 12-3227, 2014 WL 690905, at *5 (D. Md. Feb. 21, 2014); *Under Armour, Inc. v. Body Armor Nutrition*, LLC, No. JKB-12-1283, 2013 WL 5375444, at *9 (D. Md. Aug. 23, 2013). Nor does the document itself—which states only that Rushmore does not, as a matter of policy, impose property inspection fees—reflect any obvious need for sealing. The Court, therefore, finds that Rushmore has failed to justify the need to seal the document from public view. The motion is denied.

### III.    Motion to Dismiss

### A.  Standard of Review

A motion to dismiss brought pursuant to Rule 12(b)(6) tests the sufficiency of the complaint. *Presley v. City of Charlottesville*, 464 F.3d 480, 483 (4th Cir. 2006). The Court accepts "the well-pled allegations of the complaint as true," and construes all facts and reasonable inferences most favorably to the plaintiff. *See Ibarra v. United States*, 120 F.3d 472, 474 (4th Cir. 1997). To survive a motion to dismiss, a complaint's factual allegations "must be enough to raise a right to relief above the speculative level on the assumption that all the allegations in the complaint are true (even if doubtful in fact)." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007) (citations omitted).

"Threadbare recitals of the elements of a cause of action, supported by mere conclusory

statements, do not suffice." *Ashcroft v. Iqbal,* 556 U.S. 662, 678 (2009) (citing *Twombly*, 550 U.S. at 555) ("[A] plaintiff's obligation to provide the 'grounds' of his 'entitle[ment] to relief' requires more than labels and conclusions, and a formulaic recitation of a cause of action's elements will not do."). Likewise, the Court need not accept unsupported legal allegations, *see Revene v. Charles Cty. Com'rs*, 882 F.2d 870, 873 (4th Cir. 1989), legal conclusions couched as factual allegations, *Papasan v. Allain*, 478 U.S. 265, 286 (1986), or conclusory factual allegations devoid of any reference to actual events, *United Black Firefighters of Norfolk v. Hirst*, 604 F.2d 844, 847 (4th Cir. 1979).

If a complaint allegation sounds in fraud, it must meet the heightened pleading requirements of Federal Rule of Civil Procedure 9(b). *See Haley v. Corcoran*, 659 F. Supp. 2d 714, 721 (D. Md. 2009). The rule requires the plaintiff to "state with particularity the circumstances constituting fraud or mistake." Fed. R. Civ. P. 9(b). To satisfy this standard, plaintiffs "must, at a minimum, describe the time, place, and contents of the false representations, as well as the identity of the person making the misrepresentation and what he obtained thereby." *United States ex rel. Wilson v. Kellogg Brown & Root, Inc.*, 525 F.3d 370, 379 (4th Cir. 2008) (quotation marks and citation omitted). Fraud allegations that fail to comply with Rule 9(b) warrant dismissal under Rule 12(b)(6). *See Harrison v. Westinghouse Savannah River Co.*, 176 F.3d 776, 783 (4th Cir. 1999).

### B. Analysis

Defendants lodge three primary attacks as to the sufficiency of the Amended Complaint. First, Defendants contend that they are not, as a matter of law, "lenders" as defined by the Maryland Usury Statute, and thus all claims dependent on this liability theory must be dismissed. Second, Defendants press that Plaintiffs fail to allege plausibly that they levied unreasonable or

deceptive attorneys' fees or that, under the MCPA, they otherwise engaged in deceptive trade practices. Third, Defendants maintain Plaintiffs have pleaded insufficiently their MCPA claim as to implicit government authorization of collection efforts. The Court addresses each argument in turn.

### 1. Property Inspection Fee Claims

Several claims turn on whether Defendants are "lenders" subject to the Usury Statute's prohibition of property inspection fees. *See* Md. Code Ann., Com. Law § 12-121. The Usury Statute, as its name suggests, regulates excessive interest rates. *Dupreez v. GMAC, Inc.*, No. 02086, 2017 WL 6016592, at *3 (Md. App. Dec. 5, 2017). Additionally, because lenders sometimes employ fees and charges to "extract of a debtor . . . a sum in addition to the lawful interest," *Plitt v. Kaufman*, 188 Md. 606, 611–12 (1947), the Usury Statute reaches fees and costs that lenders could use to inflate indirectly otherwise cabined interest rates, *see, e.g.*, Md. Code Ann., Com. Law §§ 12-105, 12-120, 12-121. Particularly relevant here, § 12-121(b) prohibits a "lender" from imposing "a lender's inspection fee in connection with a loan secured by residential real property." *Id.* § 12-121(b).

"Lender" is defined as "a person who makes a loan under [the Usury Statute]." *See id.* § 12-101(f) (2010).[2] Defendants argue simply that they cannot be viewed as "lenders" when they do not "make[] . . . loan[s]" in the first instance, but rather acquire them in the secondary mortgage market. ECF No. 22-1 at 15–18. Based on fundamental principles of statutory construction, the Court must agree with Defendants.

---

[2] Effective January 1, 2019, the general assembly expanded the definition of "lender" to include "a licensee." Md. Code. Ann., Com. Law § 12-101(f) (2018); *see Roos v. Seterus, Inc.*, No. RDB-18-3970-2019 WL 4750418, at *4 n.6 (D. Md. Sept. 30, 2019). A "licensee" is "a person that is required to be licensed to make loans subject to the [Usury Statute], regardless of whether the person is actually licensed." Md. Code Ann., Com. Law § 12-101(g) (2018). Neither party contends the amended definition applies here.

"The paramount object of statutory construction is the ascertainment and effectuation of the real intention of the Legislature." *Whiting-Turner Contracting Co. v. Fitzpatrick*, 366 Md. 295, 301 (2001). This analysis begins "by first looking to the normal, plain meaning of the language of the statute, reading the statute as a whole to ensure that 'no word, clause, sentence or phrase is rendered surplusage, superfluous, meaningless or nugatory.'" *Ray v. State*, 410 Md. 384, 404 (2009) (quoting *Barbe v. Pope*, 402 Md. 157, 172 (2007). When a definition "includes" a list of terms, this list is non-exhaustive; by contrast, when the legislature wishes to make a list exhaustive, it uses the word "means." *See Tribbit v. State*, 403 Md. 638, 647 (2008); *Pepsi Bottling Grp. v. Plummer*, 226 Md. App. 460, 471 (2016).

The plain language of the Usury Statute's specifically, and unambiguously, announces that "lender *means* a person who makes a loan under this subtitle." Md. Code Ann., Com. Law § 12-101(f) (emphasis added). The meaning of "makes a loan" is clear: a person who "makes" a loan creates the loan itself. Viewing the complaint facts as true and most favorably to Plaintiffs, Defendants certainly *acquire* the loan once made, and thereafter *service*, and *maintain* the loan, but they do not play any role in *making* the loan. Thus, all theories of liability predicated on Defendants' status as lender must be dismissed. Predictably, this Court is not alone in reaching this conclusion. *See Roos v. Seterus, Inc.*, No. RDB-18-3970, 2019 WL 4750418, at *4–5 (D. Md. Sept. 30, 2019); *Robinson v. Fay Serv., LLC*, No. RDB-18-2710, 2019 WL 4735431, at *9 (D. Md. Sept. 27, 2019); *Suazo v. U.S. Bank Trust*, No. RDB-18-1451, 2019 WL 4673450, at *10 (D. Md. Sept. 25, 2019); *Kemp v. Seterus, Inc.*, No. 441428-V, 2018 WL 7080178, at *3–4 (Md. Cir. Ct. Oct. 19, 2018).

Plaintiffs attempt to circumvent this clear statutory language, arguing that Defendants, as assignees of the initial lender, stepped into the initial lenders' shoes and inherited their statutory

12

obligation to refrain from imposing property inspection fees.  ECF No. 33 at 13, 16–19.  The Court is not persuaded.  Defendants correctly point out that as a practical matter, an assignee does not function identically to that of the assignor.  The mortgage assignee, for example, inherits the contractual *rights* of the assignor, *see* Md. Code Ann., Real Prop. § 2-103, but not the obligations unless the contractual terms of the specific assignment provide otherwise, *Pines Plaza Ltd. P'ship v. Berkley Trace, LLC*, 431 Md. 652, 656 (2013).  Plaintiffs provide no support for this Court to find, as a matter of law, that assignees inherit the *statutory* obligations of the original lender, when such laws regulate the initial maker of the loan regardless of any contractual terms to the contrary.

Plaintiffs next argue that had the Maryland General Assembly intended to "exempt" mortgage assignees like Defendants from § 12-121(b)'s ambit, it would have done so explicitly as it has with respect to Fannie Mae and Freddie Mac in other instances.  ECF No. 33 at 19 (citing Md. Code Ann., Com. Law § 12-1026(b)(5)(i)(1) and Md. Code Ann., Fin. Inst. § 11-502(b)(3)).  This argument is circular.  To say that Defendants must be expressly "exempted" from the definition of "lender" assumes that they fall within this definition in the first place.  More to the point, § 12-121(b) is clear and unambiguous, thus obviating the need to engage in attenuated comparisons with other statutes.  *Doe v. Montgomery Cty. Bd. of Elections*, 406 Md. 697, 712 (2008) ("If the language of the statute is clear and unambiguous, we need not look beyond the statute's provisions and our analysis ends.")

Nor can the Court credit any of Plaintiffs' other myriad dissociative arguments.  ECF No. 33 at 13–14 & n.2, 16–19.  Most emphatically, Plaintiffs cast *Taylor v. Friedman*, 344 Md. 572 (1997) as binding precedent—indeed, "the law of the land"— for the proposition that "lenders" under the Usury Statute includes mortgage assignees.  ECF No. 33 at 16.  Putting to the side the

inherent inconsistency in Plaintiffs' having also separately requested *certification* of this very question because it has "not been directly addressed by Maryland appellate Courts," ECF No. 14 at 8, the argument fails because even a cursory reading of *Taylor* reveals that the Court of Appeals never addressed whether a "lender" includes mortgage assignees.

In *Taylor*, the plaintiff, a subsequent property owner, contended that unlawful property inspection fees in the context of a foreclosure proceeding violated § 12-121(b). 344 Md. at 574–75. It is true that the loan at issue had been reacquired by a subsequent mortgagee. *Id.* However, Court of Appeals was only called upon to decide whether § 12-121(b)'s prohibition on inspection fees extended for the life of the loan or instead only regulated closing costs. *Id.* at 581–84. Thus, the Court merely assumed without deciding that the mortgage holder was a "lender." *Taylor* simply does not reach whether a secondary mortgage holder is a "lender," and again the Court is not alone in concluding as much. *See Roos*, 2019 WL 4750418, at *4–5; *Robinson*, 2019 WL 4735431, at *9; *Suazo*, 2019 WL 4673450, at *10; *Kemp*, 2018 WL 7080178, at *4.[3]

Plaintiffs also contend that *Blackstone v. Sharma*, 461 Md. 87 (2018) stands for the proposition that "secondary mortgage actors . . . play a vital role in making mortgage loans." ECF No. 33 at 16. But *Blackstone* does not permit this Court to find that Defendants are lenders as defined in the Usury Statute. *Blackstone* dealt with whether foreign statutory trusts fell within a different statute's definition of the term "collection agency." 461 Md. at 109–10. At most, this decision recognizes the noncontroversial fact that persons who acquire secondary mortgages play a role in the mortgage market. *See id.* at 136–38. But never once does the *Blackstone* court state

---

[3] The Court also rejects the applicability of several administrative materials from the Maryland Office of The Commissioner of Financial Regulation and Maryland Attorney General Consumer Protection Division. ECF Nos. 11-2, 11-3, 11-4. None are pertinent to whether the Usury Statute's definition of "lender" extends to those in the secondary mortgage market.

or imply that secondary mortgage holders "make" loans or otherwise fall within the Usury Statute's definition of "lender."[4]

Plaintiffs are at their most persuasive when they contend that the Usury Statute would be "functionally toothless" if it did not apply to mortgage assignees in the secondary market. ECF No. 33 at 13–14. This is a fair point, but it is also one founded in policy considerations and not reasonable interpretations of the statute. To the extent the Maryland General Assembly wishes to address this point, it may. Indeed, as recently as January 1, 2019, the legislature reaffirmed that a "lender" includes "a person that is required to be licensed to make loans subject to the [Usury Statute], regardless of whether the person is actually licensed." *Id.* § 12-101(f), (g) (2018). The definition of lender as relevant here remains unchanged.

Accordingly, the Court finds that Defendants are not "lenders" subject to the strictures of the Usury Statute. All Counts dependent on this preliminary finding as to the propriety of charging property inspection fees thus fail as a matter of law. Counts I through VI are dismissed on this liability theory.[5]

### 2. Attorneys' Fees Claims

The Court next turn to Plaintiffs' attorneys' fees claims. Defendants seek dismissal of the FDCPA (Count V) MPCA (Count VII) and MCDCA (Count VII) claims to the extent that they depend on alleged unlawful practices in charging attorneys' fees. The Court first addresses the FDCPA and its companion state claim under the MPCA then turns to the MCDCA claim.[6]

---

[4] Plaintiffs' reliance upon two Circuit Court decisions in which no opinion issued is of no help to this Court. ECF No. 33 at 13 n.2.

[5] Because Crowder's claims were all premised on unlawful inspection fees that were dismissed as a matter of law, the Court refrains from reaching Defendants' alternative argument that the claims are barred pursuant to the *Rooker-Feldman* doctrine. *See* ECF No. 22-1 at 39–40.

[6] Although Defendants challenge the attorneys' fees allegations under Count V and Count VII, neither their motion to dismiss nor the reply mentions Count VI's supposed attorneys' fees theory under the MMFPA. The Court

### a. FDCPA (Count V) and MCPA (Count VII)

"The FDCPA protects consumers from abusive and deceptive practices by debt collectors, and protects non-abusive debt collectors from competitive disadvantage." *United States v. Nat'l Fin. Servs., Inc.*, 98 F.3d 131, 135 (4th Cir. 1996). In service of this goal, 15 U.S.C. § 1692e prohibits debt collectors from using "false, deceptive, or misleading representation or means in connection with the collection of any debt." This prohibition includes "[t]he false representation of . . . the character, amount, or legal status of any debt." *Id.* § 1692e(2)(A). "The Fourth Circuit has adopted the 'least sophisticated consumer' standard to" adjudge violations of §1692e. *Stewart v. Bierman*, 859 F. Supp. 2d 754, 761 (D. Md. 2012), *aff'd sub nom.*, *Lembach v. Bierman*, 528 F. App'x 297 (4th Cir. 2013). Under this standard, "a misrepresentation is actionable so long as it would mislead the 'least sophisticated consumer.'" *Long v. Pendrick Capital Partners II, LLC*, 374 F. Supp. 3d 515, 532 (D. Md. 2019).

"[A]s a general matter, 'litigation activity is subject to the FDCPA.'" *Elyazidi v. SunTrust Bank*, 780 F.3d 227, 234 (4th Cir. 2015) (quoting *Sayyed v. Wolpoff & Abramson,* 485 F.3d 226, 231 (4th Cir.2007)). Thus, improper efforts to collect attorneys' fees fall within the ambit of the statute. *See Jackson v. Sagal*, 370 F. Supp. 3d 592, 601 (D. Md. 2019).

The Complaint avers that Defendants violated the FDCPA by disguising legal fees as "corporate advances." ECF No. 11 ¶ 141. Defendants respond that the claim fails as a matter of law because they are not required to itemize such fees. ECF No. 22 at 35–36. Defendants' argument does not defeat the claim.

---

has reservations about the specificity with which this particular count is pleaded. *See* ECF No. 11 ¶ 136 (alleging vaguely that Rushmore knowingly imparted in "deceptive and untrue communications and misstatements and omissions . . . described *supra*"). The Court will not, however, dismiss this claim *sua sponte*.

According to the Complaint, Defendants disguised thousands of dollars in attorneys' fees as "recoverable corporate advances." ECF No. 11 ¶¶ 44, 46, 49. Defendants in this regard, have obfuscated "the true character of the debt, thereby impairing [the consumer's] ability to knowledgably assess the validity of the debt." *Fields v. Wilber Law Firm, P.C.*, 383 F.3d 562, 566 (7th Cir. 2004). On this basis, the Court joins several other courts in allowing a § 1692e claim to proceed on the theory that Defendants disguised attorneys' fees as "corporate advances." *Meyer v. Fay Serv., LLC*, 385 F. Supp. 3d 1235, 1243–45 (M.D. Fla. 2019); *Wilson v. Trott Law, P.C.*, 118 F. Supp. 3d 953, 961–964 (E.D. Mich. 2015); *Dougherty v. Wells Fargo Home Loans, Inc.*, 425 F. Supp. 2d 599, 608 (E.D. Pa. 2006); *Porter v. Fairbanks Capital Corp.*, No. 01-C-9106, 2003 WL 21210115, at *5 (N.D. Ill. May 21, 2003). Plaintiffs have pleaded a plausible claim under the FDCPA and thus dismissal is denied as to Count V on this liability theory.

Similarly, Defendants move to dismiss the MCPA claims premised on the same theory. ECF No. 22-1 at 29–31. Like its federal counterpart, the MCPA prohibits "any unfair, abusive, or deceptive trade practice . . . in . . . [t]he extension of consumer credit [and] . . . [t]he collection of consumer debts." Md. Code Ann., Com. Law § 13-303(4)–(5). "The gravamen of an unfair or deceptive trade practice . . . is whether the false or misleading statements or representations have the capacity, tendency, or effect of deceiving or misleading consumers." *White v. Kennedy Krieger Inst., Inc.*, 221 Md. App. 601, 652–53, 110 A.3d 724, 754 (2015) (internal quotation marks omitted). Thus, this provision covers a broad range of statements which may mislead consumers. *See generally* Md. Code Ann., Com. Law § 13-301. Because the Complaint plausibly avers that Defendants disguised attorneys' fees as generic "corporate advances," the MCPA claim survives. Defendants' motion to dismiss is denied.

### b.    MCDCA (Count VII)

Plaintiffs' MCDCA claim turns on the theory that Rushmore sought to collect unreasonable attorneys' fees to which they had no legal right.  ECF No. 11 ¶¶ 153–54.  Under the MCDCA, a debt collector may not "[c]laim, attempt, or threaten to enforce a right with knowledge that the right does not exist."  Md. Code Ann., Com. Law § 14-202(8).  Thus, "[t]o plead a claim under the MCDCA, Plaintiff must set forth factual allegations tending to establish two elements: (1) that Defendants did not possess the right to collect the amount of debt sought; and (2) that Defendants attempted to collect the debt knowing that they lacked the right to do so."  *Lewis v. McCabe, Weisberg & Conway, LLC*, No. DKC 13-1561, 2014 WL 3845833, at *6 (D. Md. Aug. 4, 2014); *see also Price v. Murdy*, No. GLR-17-736, 2018 WL 1583551, at *12 (D. Md. Mar. 30, 2018).

"Maryland courts have consistently interpreted the MCDCA to require plaintiffs to allege that defendants acted with knowledge that the "debt was invalid, or acted with reckless disregard as to its validity."  *Lembach v. Bierman*, 528 F. App'x 297, 304 (4th Cir. 2013) (quoting *Shah v. Collecto, Inc.,* No. DKC 2004–4059, 2005 WL 2216242, at *11 (D. Md. Sept. 12, 2005)).  Plaintiffs may show that a debt is invalid by demonstrating that a debt collector inflated the amount due through "inclusion of an unauthorized type of charge."  *Conteh v. Shamrock Cmty. Ass'n, Inc.*, 648 F. App'x 377, 381 (4th Cir. 2016).  MCDCPA claims are subject to the heightened pleading standards of Rule 9(b).  *Price*, 2018 WL 1583551, at *12.

Defendants argue that any imposition of attorneys' fees cannot give rise to a claim under MCDCA because their contracts with Plaintiffs explicitly permitted the charges.  ECF No. 22-1 at 27–29.  Defendants misapprehend the crux of Plaintiffs' allegations.  Plaintiffs do not claim that Defendants were prohibited from charging attorneys' fees at all, but rather that Defendants

inflated their attorneys' fees beyond that which was needed under the circumstances and then disguised the fees as "corporate advances."  ECF No. 11 ¶¶ 2, 44, 46, 49.  Plaintiffs also allege that because Defendants had no right to commence foreclosure proceedings in the first place, *any* attorneys' fees would be unreasonable.  *Id.* ¶ 48.  Defendants may have their own opinions about whether any legal work was warranted.  *See* ECF No. 37 at 22–23.  However, at the pleading stage, the Court must view Plaintiffs' allegations as true and most favorably to Plaintiffs.  Given this presumption, the Court finds that Plaintiffs have sufficiently stated a claim under the MCDCA, even applying the more exacting pleading standard of Rule 9(b).  Defendants motion to dismiss Count VII with respect to imposition of attorneys' fees is denied.

### 3.  MCDCA "Implied Authorization" Claim (Count III)

The Court lastly turns to Plaintiffs' allegation that Defendants improperly implied that the government had authorized their efforts to collect inspection fees.  The MCDCA forbids debt collectors from using "a communication which simulates a legal or judicial process or gives the appearance of being authorized, issued, or approved" by the government.  Md. Code Ann., Com. Law § 14-202(9).  Defendants argue that this claim fails to allege even the "basic elements" of such a claim.  The Court wholeheartedly agrees.

Candidly, the Court fails to understand the basis for this claim.  The Amended Complaint avers that Rushmore threatened foreclosure "based in part on illegal [property inspection] fees" and in doing so "improperly implie[d] that the government or a government agency has authorized the collection effort."  ECF No. 11 ¶¶ 111, 114.  The Amended Complaint provides no basis to infer that any aspect of the foreclosure proceedings resulted in judicial or governmental authorization of unlawful fees.  Simply because the imposition of supposedly unlawful fees led to foreclosure does not make the foreclosure court a co-conspirator in such

alleged illegality. The claim fails to meet even minimal pleading standards and must be dismissed without prejudice. To the extent the Plaintiffs can articulate a *plausible* theory of relief after targeted discovery, the Court will entertain a motion to amend the Complaint as to this liability theory.

## IV. Motion to Certify Questions of Law

Turning to Plaintiffs' motions, they first ask the Court to certify the following questions to the Maryland Court of Appeals:

1. Does a mortgage assignee and/or its mortgage servicer qualify as a "lender" subject to the property inspection fee bar stated in Com. Law § 12-121 and *Taylor v. Friedman*, 344 Md. 572, 689 A.2d 59 (1997)?

2. In applying the property inspection fee bar stated in Com. Law § 12-121 and *Taylor v. Friedman*, 344 Md. 572, 689 A.2d 59 (1997) to a mortgage assignee and/or its mortgage servicer, what weight should be given, if any, to the administrative agency position(s) that a Maryland licensed mortgage servicer may not collect or attempt to collect property inspection fees from mortgage borrowers?

ECF No. 14 at 1.

The Maryland Court of Appeals "may answer a question of law certified to it by a court of the United States . . . if the answer may be determinative of an issue in pending litigation . . . and there is no controlling appellate decision, constitutional provision, or statute." Md. Code Ann., Cts. & Jud. Proc. § 12-603. That said, the decision to certify a question to the Court of Appeals rests within the discretion of the reviewing court. *See Boyter v. C.I.R.*, 668 F.2d 1382, 1385 (4th Cir. 1981); *accord Marshall v. James B. Nutter & Co.*, No. RDB–10–3596, 2013 WL 3353475, at *7 (D. Md. July 2, 2013); *Hafford v. Equity One, Inc.*, AW–07–1633, AW–06–0975, 2008 WL 906015, at *4 (D. Md. Mar.31, 2008). "In exercising such discretion, federal courts may decide not to certify a question to a state court where the federal court can reach a 'reasoned and principled conclusion.'" *Marshall*, 2013 WL 3353475, at *7 (quoting *Hafford*, 2008 WL

906015, at *4). Accordingly, "[c]ertification should not be invoked 'absent genuinely unsettled matters of state law.'" *Lynn v. Monarch Recovery Mgmt.*, 953 F. Supp. 2d 612, 621 (D. Md. 2013) (quoting *Arrington v. Colleen, Inc.*, Nos. AMD 00–191, AMD 00–421, AMD 00–1374, 2001 WL 34117735, at *5 (D. Md. Mar. 29, 2001)); *see also Swearingen v. Owens–Corning Fiberglas Corp.*, 968 F.2d 559, 564 (5th Cir. 1992) ("Certification [is] not . . . a panacea for resolution of those complex or difficult state law questions which have not been answered by the highest court of the state." (internal quotation marks omitted)).

Plaintiffs emphasize that no binding decision has addressed its two questions of law as grounds for certification. While the Court agrees that the Court of Appeals has not yet spoken on this point, certification is not warranted. At bottom, the Usury Statute is clear and unambiguous and other courts presented with this identical question have similarly held that secondary mortgage holders are not lenders. Because this Court can reach a "reasoned and principled conclusion" without resort to certification, *Marshall*, 2013 WL 3353475, at *7, Plaintiffs' motion is denied.

## V.      Motion to Certify Class

Plaintiffs next move to certify three potential classes brought pursuant to Federal Rule of Civil Procedure 23. The classes are defined as follows:

1. Those persons in the State of Maryland for whom Rushmore has acted as a mortgage servicer on behalf of another, including RMAC and MTGLQ, within the three years before the commencement of this action*, and has charged their mortgage accounts with property inspection fees and costs*;

2. Those persons in the State of Maryland whom Rushmore (on its behalf and on behalf of RMAC, MTGLQ, and others) (i) acquired the mortgage servicing when the loan was in default and (ii) provided a Payoff Statement *which sought to collect directly or indirectly property inspection fees* in the one year before the commencement of this action;

3. Those persons in the State of Maryland (i) for whom Rushmore has (i) acted as a mortgage servicer on its behalf and on behalf of RMAC, MTGLQ, and others and others, and (ii) *has*

*charged their mortgage loan accounts with property inspection fees and costs* and (iii) the mortgage loan accounts had not been satisfied more than six months before the commencement of this action.

ECF No. 13 at 2 (emphasis added).

Each requested class is defined by the type of alleged wrongful property fees imposed. However, this Court has determined as a matter of law that each liability theory fails with respect to the named Plaintiffs. Dismissal of the named Plaintiffs' claims extinguishes any possible class wide relief. *Collins v. Village of Palatine*, 875 F.3d 839 (7th Cir. 2017) ("When the plaintiff's own claim is dismissed, he 'can no longer be the class representative. At that point, either another class representative must be found of the suit is kaput." (quoting *Hardy v. City Optical, Inc.*, 39 F.3d 765, 770 (7th Cir. 1994)). To the extent Plaintiffs intended to bring class claims based on legal theories that survived challenge as to the named Plaintiffs,[7] they certainly have not defined a class accordingly, and the Court cannot redefine Plaintiffs' class for them. *Cf. Rosedale v. CarChex, LLC*, No. SAG-19-2780, 2020 WL 998740, at *4–5 (D. Md. Mar. 2 2020) (denying without prejudice motion to certify "grossly overbroad" class). The Motion for certification is thus denied.

## VI.     Conclusion

For the foregoing reasons, Plaintiffs' motion to certify questions of law and separately to certify a class pursuant to Federal Rule of Civil Procedure 23 is denied. Defendants' motion to dismiss is granted in part and the motion to seal is denied. A separate Order follows.

 3/17/2020                                                                         /s/
Date                                                                    Paula Xinis
                                                                        United States District Judge

---

[7] Plaintiffs do not expressly seek to certify a class based on Rushmore's hidden attorneys' fees, but rather identify this as a common question of law applicable to the "FDCPA class." ECF No. 11 ¶ 87. It is not at all clear how Defendants' alleged practice of hiding attorneys' fees presents a common question of law pertinent to the transparent charging of unlawful property inspection fees.